

U.S. Department of Justice

United States Attorney
Eastern District of New York

MKM:TH/MKP
F. #2017R01840

271 Cadman Plaza East
Brooklyn, New York 11201

November 19, 2018

By Hand and ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

   Re: United States v. Keith Raniere, et al.
     Criminal Docket No. 18-204 (NGG)

Dear Judge Garaufis:

   The government respectfully submits this letter in opposition to the defendant Keith Raniere's second motion for bail.  (Motion for Bail, ECF Docket No. 191.)  As the Court is aware, the defendant previously sought pretrial release over the government's objection, proposing an unsecured bond of $10 million, with home detention to be supervised by a private team of 24-hour armed guards.  (See Raniere First Motion for Bail, ECF Docket No. 43.)  The Court denied the defendant's motion, finding, among other things, that the defendant posed a substantial risk of flight and that there was some risk that if the defendant were released, he may "unlawfully exploit women or obstruct justice."  (Memorandum & Order, ECF Docket No. 46, at 16.)

   Since the Court's order denying bail, the defendant has been charged by superseding indictment with participating in a long-running racketeering conspiracy, including predicate acts of identity theft, encouraging aliens to enter the United States illegally, forced labor, document servitude, state law extortion and sex trafficking.  The defendant was also charged with substantive counts of forced labor conspiracy, wire fraud conspiracy, sex trafficking conspiracy, sex trafficking, attempted sex trafficking and conspiracy to commit identity theft for the purpose of tax evasion.

   The defendant now offers a bail proposal that is significantly weaker than the one already rejected by the Court.  The defendant proposes pretrial release on a bond secured by less than $180,000, co-signed by individuals who do not appear to exercise any moral suasion over the defendant, with conditions of home detention and electronic monitoring.

This proposal lacks any meaningful security. For this reason, the government respectfully requests that the Court deny the defendant's motion without further hearing.

The government incorporates its prior submissions seeking the defendant's detention, see ECF Docket Nos. 4, 44 and appended as Exhibit 1, and does not repeat those arguments here. The government respectfully submits that the Court should continue the permanent order of detention because there is no combination of conditions that would adequately protect the safety of the community, mitigate the risk that the defendant will obstruct justice or reasonably assure his continued appearance.

I.   The Defendant's Second Motion for Bail

The majority of the defendant's thirteen-page motion for bail consists of arguments that have already been advanced and rejected by the Court or do not merit a response. For example, the first three pages of the defendant's motion for bail consists of a description of the defendant's "teachings" punctuated by footnoted quotations from Bertrand Russell, Søren Kierkegaard and Friedrich Nietzsche that bear no relation to the substance of the defendant's motion for bond. The twenty-four-minute promotional video posted to YouTube and submitted to the Court is also entirely irrelevant.[1]

The defendant also reiterates his claim that he and his supporters have been the target of "blatant false statements" and that certain individuals "deleted data, stole ESP student profiles and documentation" and "cancelled credit card payments" by Nxivm clients. (Mot. at 8.) In fact, Nxivm and Clare Bronfman sought to have criminal charges brought against these individuals, but the Vancouver Police Department declined to recommend that any charges be brought.

The defendant's motion does not persuasively challenge the core facts that render him a risk of flight and a risk of danger to the community.

---

[1]   A number of the individuals who appear in the video, including several of the participants in the defendant's supposed Tourette's "study," have since left the organization and have indicated that their experiences in Nxivm were traumatic. The defendant's inclusion of video footage of them in his motion for pretrial release is misleading at best.

2

II.     The Defendant Presents A Risk of Flight[2]

In denying the defendant's prior application for bail, the Court found that his history and characteristics "strongly support the conclusion" that the defendant posed a risk of flight. (Order at 10.) The Court found particularly persuasive the defendant's abrupt relocation to Mexico prior to his arrest, his "lack of an ordinary job or personal financial resources that could secure a meaningful bond, and his apparent access to extensive financial resources supplied by anonymous third parties." (Order at 10.)

The defendant concedes that he enjoys the "support of people with substantial means," including what he describes as an "unknown contingent interest" in a multi-million dollar estate.[3] (Mot. at 10 & n.12.) It is not disputed that some of these supporters with "substantial means" reside in Mexico. The government has also obtained evidence that, notwithstanding his purported lack of any financial assets, the defendant receives a percentage of the profits of many, if not all, Nxivm-affiliated companies, which he does not keep in his name.[4] And nothing in the defendant's second motion for bail addresses the Court's findings that the defendant is accused of "running an organization with a number of devoted adherents, faces strong incentives to flee, and may have access to substantial financial resources." (Order at 15.)

III.    The Charges Are Serious and Government's Case Against the Defendant is Strong

The Court has already found that the charges in this case are serious and subject the defendant to "extremely lengthy sentences," weighing heavily in favor of continued detention. (Order at 8.) Since the superseding indictment was returned, the defendant now faces charges of criminal conduct spanning many years, including racketeering conspiracy, which also weighs in favor of detention. In addition, the defendant is now charged with multiple crimes of deceit, including identity theft and alteration of records in an official proceeding, which courts have held is relevant to an assessment of risk of flight. See United States v. Williams, 654 F. App'x 3, 4 (2d Cir. 2016) (summary order) (finding district court did not commit clear error in finding defendant posed a risk of flight where, among other things, the district court had noted that it was "struck by the fact that a

---

[2]     The government is entitled to proceed by proffer in a detention hearing. See United States v. Abuhamra, 389 F.3d 309, 320 n.7 (2d Cir. 2004); United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986).

[3]     The defendant fails to note that he voluntarily relinquished executorship of the estate to a person, who, according to information obtained by the government, is a "first-line" DOS "slave" who is herself a person of significant wealth.

[4]     For example, emails dated from August 2015, including an email sent to the defendant, reflect an anticipated payment of a nearly $190,000 fee for the defendant in connection with an Anima, Inc. project in Mexico.

number of [the charges] involve deceit"); United States v. Dimora, No. 1:10CR387, 2012 U.S. Dist. LEXIS 86457, at *8 (N.D. Ohio June 21, 2012) (considering a defendant's ability to use the same "skills of deceit and evasion" that he used to commit crimes to "elude capture"); United States v. Saani, 557 F. Supp. 2d 97, 98-99 (D.D.C. 2008) (defendant's "alleged purposeful and illegal concealment of . . . access" to funds in foreign bank accounts was "directly relevant to [his] flight risk").

As the Court noted in its Order, the merits of the government's case are not ultimately a matter to be determined on a bail application. But even when viewing the government's evidence in the context of a bail determination pursuant to 18 U.S.C. § 3142, the weight of the evidence against the defendant favors detention. The evidence against the defendant includes, among other things, testimony from numerous witnesses, including members of the charged conspiracies; emails and other electronic communications, video and audio recordings, and bank records.

The defendant claims that the weight of the evidence against the defendant does not favor detention because the "overwhelming majority of women in DOS did not, were not asked to, and certainly were not required to, have sex with Mr. Raniere." (Def. Mot. at 6.) The government has alleged that women who joined DOS provided "collateral," such as sexually explicit photographs and letters making damaging accusations against their loved ones, on the false premise that they were joining a women's empowerment group and that it consisted solely of women. The collateral was meant to ensure compliance and prevent DOS "slaves" from leaving the organization or speaking about it publicly. Multiple witnesses have indicated that they would not have provided collateral had they known the truth of the defendant's involvement and that they remained in DOS because they had provided collateral. Having provided this collateral, a number of DOS "slaves" were tasked with engaging in sexual activity with the defendant and providing him with additional collateral, such as sexually explicit photographs, with the understanding that their collateral could be released if they did not do so. The fact that not all DOS "slaves" had direct sexual interactions with the defendant says nothing about the strength of the evidence against him.

The defendant also ignores that the crimes he is charged with in connection with his role as the head of DOS include not only sex trafficking, but also wire fraud conspiracy and forced labor conspiracy. Indeed, in a December 25, 2016 email sent to his "first-line" DOS "slaves", the defendant explained eight "slave to master objectives" underpinning DOS. Among these "objectives" were the following:

> Your greatest joy is to surrender completely all things, in all
> ways, without reservation, completely exposed, to your Master
> and Master's will. The best slave derives the highest pleasure
> from being her Master's ultimate tool, independent of use: by
> joyously offering all your decisions to be made, or used, by your
> Master, you surrender your life, mind, body and possessions for
> unconditional use.

4

> That your Master has your time and labor allows for more production; that your Master has your vote allows for more potency. By recruiting others within your power you honor and increase your Master's power.
>
> Always make your Master look good and be powerful and capable. Intelligently utilize the secrecy of your relationship with your Master to be a confederate and move your Master forward.

Since December 2016, in the wake of public and law enforcement scrutiny of DOS, the defendant has also publicly denied his involvement in DOS, stating repeatedly—and falsely—that the so-called "sorority" had no affiliation or association with him or with Nxivm.

IV.   The Defendant Poses a Serious Danger to the Community

The defendant also poses a serious risk of danger to the community.  As the Court has already found, the defendant is "charged with serious felonies based on his alleged role in running a secretive, cult-like organization in which 'slaves' are allegedly branded with his initials and tasked with serving him and other senior members of the organization." (Order at 15.)

The defendant's creation of DOS was the culmination of a long history of abusing women and girls through manipulation and coercion.  The government has obtained evidence that the defendant began having a sex with a "first-line" DOS "slave" when she was fifteen years old and he was forty-six.[5]  Among other sources of evidence, journal entries written by the DOS slave before her eighteenth birthday reflect an ongoing sexual relationship with the defendant.

The defendant's claim that he does not pose a danger because there are no allegations of "violence, guns, knives, or weapons of any time," Def. Mot. at 10-11, ignores the very real and significant consequences of psychological abuse, economic abuse, and sexual abuse.  For example, it was on the defendant's orders that Jane Doe 4 remained in a bedroom for nearly two years.  The defendant ordered her confined to the room not because she had stolen "from people in the community," Def. Mot. at 12, but specifically in order to exercise power and control over her.  For instance, in an email dated November 9, 2010, Lauren Salzman emailed the defendant to inform him that Jane Doe 4 had written a letter that begged to be "let out" of the room because she was "coming undone."  Salzman also told the

---

[5]   In the defendant's reply in support of his previous motion for bond, see ECF Docket No. 45, the defendant characterized this individual as "someone very close to him" whose communications with the defendant did not relate to DOS and were taken "out of context."

defendant that Jane Doe 4's letter had been intercepted and was not shown to Jane Doe 4's parents because they were "so reactionary."  The defendant wrote back:  "You might try asking [Jane Doe 4] the difference between being in the room for a day…or as long as she has."  Jane Doe 4 remained confined to the bedroom for another fifteen months after she wrote the letter stating that she was "coming undone."  The defendant's claim that Jane Doe 4 stayed in the room "entirely of her own volition," Def. Mot. at 12, is belied by the fact that the day she left the room, she was punished—as she had been threatened she would be—by being driven to Mexico and left without any identification.

     V.     <u>The Defendant's New Proposed Bail Package Is Insufficient to Address These Concerns</u>

The seriousness of the offenses charged against the defendant, the weight of the evidence in support of those charges, the potential sentence that could result from a conviction, the defendant's access to vast financial resources and connections to Mexico, make him a flight risk and a danger that is incurable by any combination of conditions—let alone the feeble package that he proposes.

The defendant proposes a $1,000,000 bond secured by three properties owned by three different individuals whose relation to him is not clear.  The defendant has not provided the Court or the government with any information regarding the owners of these properties and what, if any, relationship he has with them.  Although the defendant has not yet provided the government with complete information regarding the value of the properties to be posted, two of the properties appear to be almost entirely mortgaged (97.6% and 95%) and the third has equity of approximately $100,000.  The total secured portion of the bond, therefore, appears to be approximately $170,000.  The defendant acknowledges that the proposed bond is "significantly less than for other defendants in this case." (Motion for Bail at 5.)

The defendant notes that the owners of the properties will sign on to the bond as well as "several" unidentified others. (<u>Id.</u> at 4.)  The owners of the properties appear to be Nxivm clients with no personal relationship to the defendant, and one of them is not a United States citizen.

V.        <u>Conclusion</u>

The defendant poses a considerable flight risk and danger, and his proposed bail package is weaker than that already considered and rejected by the Court. Under these circumstances, the government respectfully submits that the defendant's motion for bail should be denied without further hearing.

                                        Respectfully submitted,

                                        RICHARD P. DONOGHUE
                                        United States Attorney

By:     /s/
           Moira Kim Penza
           Tanya Hajjar
           Assistant U.S. Attorneys
           (718) 254-7000

cc:     Clerk of Court (NGG) (by ECF)
        Defense Counsel (by ECF)