UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-----------------------------X Docket#
UNITED STATES OF AMERICA,    : 18-cr-00204-NGG-VMS
                             :
     - versus -              : U.S. Courthouse
                             : Brooklyn, New York
RANIERE, et al.,             :
               Defendant     : December 6, 2018
-----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE VERA M. SCANLON
UNITED STATES MAGISTRATE JUDGE

A   P   P   E   A   R   A   N   C   E   S:


**For the Government:**          **Richard P. Donoghue, Esq.**
                                 United States Attorney

                          BY:    **Moira Kim Penza, Esq.**
                                 **Tanya Hajjar, Esq.**
                                 **Shannon Jones, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York  11201

**For Defendants**:
N. Salzman:                      **Robert Soloway, Esq.**
K. Raniere:                      **Teny Geragos, Esq.**
                                 **Paul DerOhannesian, Esq.**
L. Salzman:                      **Hector Diaz, Esq.**
                                 **Andrea Tazioli, Esq.**
A. Mack:                         **William F. McGovern, Esq.**
                                 **Sean Buckley, Esq.**
K. Russell:                      **Justine Harris, Esq.**
C. Bronfman:                     **Kathleen Cassidy, Esq.**


**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11795
                                 laferrara44@gmail.com



Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1         THE CLERK:  Criminal Cause for a Status
2  Conference, case number 18-cr-204, United States v. Keith
3  Raniere, Allison Mack, Clare Bronfman, Kathy Russell,
4  Lauren Salzman, Nancy Salzman.
5         Counsel, can you state your appearance starting
6  with the government, please?
7         MS. PENZA:  Moira Kim Penza, Tanya Hajjar and
8  Shannon Jones for the United States.
9         Good morning, your Honor.
10         THE COURT:  Good morning.
11         MR. SOLOWAY:  Good morning, your Honor.
12         Robert Soloway representing Nancy Salzman who
13  is excused today and we waive her appearance.
14         MS. GERAGOS:  Good morning, your Honor.
15         Teny Geragos and Paul DerOhannesian for Keith
16  Raniere, who waives his appearance today.
17         MR. DIAZ:  Good morning, your Honor.
18         Hector Diaz and Andrea Tazioli for Lauren
19  Salzman, who is present, seated in the back.
20         THE COURT:  Okay.
21         MR. MCGOVERN:  Good morning, your Honor.
22         Bill McGovern and Sean Buckley here today for
23  -- representing Allison Mack, who is also seated in the
24  back.
25         MS. HARRIS:  Good morning, your Honor.

3

Proceedings

1          Justine Harris for Cathy Russell.  We waive her

2    appearance today.  She's actually checking in with

3    pretrial --

4                THE COURT:  Okay.

5                MS. HARRIS:  -- during the court conference.

6    Thank you.

7                THE COURT:  Okay.

8                MS. CASSIDY:  Good morning, your Honor.

9                Kathleen Cassidy and Caroline Grossands (ph.)

10   on behalf of Ms. Bronfman.  Ms. Grossands is seated here

11   with your permission if that's all right, your Honor.

12   She's not yet admitted in this district but she is an

13   attorney in my office who has been assisting me.

14               THE COURT:  That's fine.

15               MS. CASSIDY:  And Ms. Bronfman waives her

16   appearance today.

17               THE COURT:  Okay.  All right.  And then on the

18   phone?  Can you hear me?

19               MR. SULLIVAN:  On the phone is -- yes, I can.

20   On the phone is Michael Sullivan on behalf of NXIVM, your

21   Honor.

22               THE COURT:  Okay.  So we're having this

23   conference to touch on a couple of issues.  There may be

24   some scheduling issues or other items that you end up

25   discussing with the district judge and you have a

4

Proceedings

1  conference with him after this, so we will have a working

2  plan and then adjust accordingly.

3          So the issue that prompted scheduling this is

4  the government's letter that there may be some confusion

5  about particular privileges.  That's why I asked Mr.

6  Sullivan to be on the phone and the approach that should

7  be taken for briefing the privilege issues which need to

8  get going in short.  It seems a question of who is going

9  to do that work on the government's side.

10          But let me check in with you all and see if any

11  progress on any of the issues that have been identified

12  in your letter and any further production of materials?

13          MS. PENZA:  Good morning, your Honor.

14          THE COURT:  Good morning.

15          MS. PENZA:  So since the government submitted

16  its letter to your Honor, we have received an updated

17  privilege log from counsel for NXIVM which did remove

18  certain items that had appeared obvious, they're not

19  privileged to the government and we -- so we understand

20  that there may be some movement on NXIVM's part.

21          However, there are still significant areas of

22  inconsistency between what NXIVM has asserted regarding

23  privilege and what we are hearing from the defendants.

24          Additionally, we are -- one significant area of

25  -- that has impeded progress is that Nancy Salzman, who

5

Proceedings

1   is president of NXIVM or was president of NXIVM, did not

2   assert any privileges on behalf of NXIVM over the devices

3   seized from her home.

4           At current estimate, your Honor, there are

5   about a million documents, maybe more on those devices.

6   We have -- the government was confused, based on the fact

7   that she was not asserting any privileges on behalf of

8   NXIVM, whereas defendants Clare Bronfman and Keith

9   Raniere, as to their own email account, did assert

10  certain privileges on behalf of NXIVM, so the government

11  found it unusual and difficult to understand Nancy

12  Salzman's nonassertion of any privilege on behalf of

13  NXIVM.

14          That being said, we have now been in

15  communication with counsel for NXIVM, attempting to

16  ascertain what attorneys they are claiming privileges

17  over.  We had discussions with them.  We sent a letter on

18  November 21st, 2018, asking for a list of attorneys.  We

19  still have not received that list.  And so that has now

20  stalled the review process.

21          The government has now asked to segregate NXIVM

22  materials from the trial team's view until we can

23  establish which attorneys NXIVM is asserting a privilege

24  over as to the materials in Nancy Salzman's house.

25          As it stands, there are already tens of

6

Proceedings

1  thousands of documents, I believe, on the privilege side

2  of the wall.  We anticipate there will be more, given a

3  review of -- once there are -- once NXIVM asserts any

4  privileges over Nancy Salzman's devices, which I

5  understand they intend to do.

6            So we are talking about a significant quantity

7  of potentially privileged material.  However, the

8  government believes based on its review of nonprivileged

9  material that a significant portion of what is being

10 asserted as potentially privileged will not be privilege,

11 either because there is third-party waiver or some other

12 exception.

13           And the government's position now is that there

14 are large categories of these tens of thousands of

15 documents that can be dealt with wholesale, without doing

16 a document by document analysis.  And the model that the

17 government seeks to implement is the same that was set

18 forth in FIFA where there are categories of documents

19 where there can be a discussion with the trial team who

20 has knowledge of many facts out that are not privileged

21 and where we can litigate those issues.

22           We believe that will be the most efficient way

23 to hopefully deal with large categories of the documents

24 over which the defendants are claiming there is a

25 potential privilege.

7

Proceedings

1          To the -- the same way that it was done in FIFA

2     is that where that litigation does not require a document

3     by document analysis, it will be handled by the trial

4     team.

5          If there needs to be supplemental briefing or

6     the Court needs to hear separately regarding individual

7     documents, then our firewall team will be in a position

8     to discuss that with your Honor.  But if there is no need

9     for a document by document analysis, the most efficient

10    way for this to happen is to have the trial team engage

11    in the litigation.

12          THE COURT:  Okay.  So is that plan outlined in

13    that transcript that you cited in your letter, before

14    Judge Levy or is there an order from FIFA -- the FIFA

15    case that memorializes that process?

16          MS. PENZA:  I don't believe so, your Honor.

17          THE COURT:  Okay.

18          MS. PENZA:  Because it was not -- I don't --

19    Judge Levy set that as the manner in which he intended to

20    proceed.

21          THE COURT:  Okay.

22          MS. PENZA:  And so there were two rounds of

23    briefing and a hearing; one with the prosecution team and

24    one with the firewall team.

25          THE COURT:  Okay. All right.  Does anybody want

Transcriptions Plus II, Inc.

8

Proceedings

1  to say anything just about the NXIVM or is it just Mr.

2  Sullivan?  Do you want to speak to it?

3          MR. SULLIVAN:   Your Honor, I would be happy to

4  at least respond to a couple of the points.

5          THE COURT:  Uh-hum.

6          MR. SULLIVAN:  I would say that I am not

7  prepared necessarily to respond to them all.  I

8  understood based on the government's letter to the Court,

9  and the Court's requested me to participate, was to

10  provide maybe some clarity with regard to at least a

11  piece of the confusion that is being raised by the

12  government and I'm pleased to do that.

13          If there are other requests by the government,

14  I am happy to speak with the government about their other

15  requests to see if we could be as expedient as possible.

16          But the two issues that I thought the

17  government had raised as potential confusion, were

18  contradiction between NXIVM and what we have been

19  presented by some of the defense teams was the one issue,

20  was the issue concerning Jonathan Ware, as to whether or

21  not he represented NXIVM in any regards and your Honor I

22  have -- I don't believe I ever indicated any lawyers that

23  did or did not represent NXIVM in any of the

24  communications or calls with the government.

25          So maybe the government has heard something

9
Proceedings

1   regarding Jonathan Ware but Jonathan Ware is counsel to

2   NXIVM in some respects.  So hopefully that clears up some

3   of the confusion.

4           The other confusion or contradiction raised by

5   the government is this issue concerning whether or not

6   there's a joint defense agreement or any common interest

7   agreement amongst the various defendants in the

8   corporation NXIVM.  And my recollection of the

9   communication, your Honor, regarding that with the

10  government was I represented to the government that I had

11  not come across any written joint defense agreements but

12  I wanted to be clear that it could be that there was

13  common interest agreements between some or several of the

14  defendants in the other company at some point in time.  I

15  just have no discussions with any of the defense

16  attorneys regarding that point.

17          So I don't want the Court to believe that NXIVM

18  is taking the position that there is no common interest

19  agreement.  So I wanted to point out to the government

20  that I had not come across any written joint defense

21  agreements but was not -- I was not -- I had not had any

22  discussions, so that people could be raising common

23  interest agreements between themselves and not NXIVM.

24          So hopefully, your Honor, that helps in terms

25  of clarifying those two points that were raised as it

Proceedings

1  related to me and now NXIVM.

2          THE COURT:  And do you think if you had

3  additional conversations with the government about

4  NXIVM's position, that that would be fruitful?

5          MR. SULLIVAN:  I'm sorry, your Honor.  I

6  apologize.  I am in a public place and I'm getting some

7  background noise.

8          THE COURT:  All right.  So you said you weren't

9  -- there were some issues you weren't prepared to discuss

10  and it sounds like you're not in the best place to have

11  the conversation anyway but do you think if you --

12          MR. SULLIVAN:  Well, it is --

13          THE COURT:  -- had another conversation or

14  other conversations with the government, do you think

15  that could be fruitful as to elaborating on NXIVM's

16  position with regard to some privileges or particular

17  documents or whatever it is that you're referring to?

18          MR. SULLIVAN:  Well, yes, I think that would be

19  very fruitful, your Honor, particularly the government

20  has requested and NXIVM is preparing a list of counsel

21  that have represented NXIVM on several matters and I will

22  tell you, it is not an easy list to put together, your

23  Honor.  There's not one central location in terms of

24  putting this information together but we're in the

25  process of putting that together.

11

Proceedings

1          And that would -- I'm optimistic then we would

2   be able to get at least an initial list for the

3   government by close of business tomorrow regarding

4   attorneys.

5          The other issue that they referenced concerning

6   documents that were taken during the search warrant that

7   has been identified as potentially privileged documents

8   relating to NXIVM and I heard the government say this

9   morning, it's about 10,000.  We're pleased to have a

10  conversation with the government --

11          THE COURT:  No, I think it's more.  I think

12  it's tens of thousands.  There's an S there.

13          MR. SULLIVAN:  Oh.  Well, we're pleased to have

14  a conversation with the government about that.  My only

15  comment to the government regarding that, since we've not

16  had an opportunity to see any of those documents or

17  category of those documents, is that NXIVM was not

18  waiving any of the privileges it may have concerning any

19  of those.

20          So a further discussion with the government

21  would be helpful, at least trying to come up with a plan

22  that would be reasonable under the circumstances.

23          THE COURT:  So when you say you're going to

24  produce a list of attorneys by COB tomorrow, then when do

25  you think your fairly complete list would be ready?  If

Proceedings

1   you're producing something that --

2

3          MR. SULLIVAN:  Well, I think it's going to be

4   fairly complete by tomorrow, your Honor.

5          THE COURT:  Okay.

6          MS. PENZA:  We probably just want to reserve

7   the right to add to it but I think we'll have a fairly

8   complete list by tomorrow.

9          THE COURT:  All right.  The government, did you

10  want to say anything just in response?

11         MS. PENZA:  Nothing, your Honor.

12         THE COURT:  No, okay.  So in terms of a time

13  line for having conversations and then getting back to me

14  if there are issues -- I mean they may end up being

15  intertwined with what we're going to talk about with the

16  other defendants but do you all have a working time line

17  for you to discuss things?

18         MR. SULLIVAN:  Is that to me, your Honor, or

19  just the government?

20         THE COURT:  Yes.  I'm sort of speaking to you

21  and looking at the government, whoever wants to pitch in

22  about this point.  You know, Monday?

23         MR. SULLIVAN:  Well, Monday, your Honor, I'm

24  actually at the deposition all day.  I would say either

25  Tuesday or Wednesday of next week your Honor would work

13

Proceedings

1    for me.

2           And I will say and I think the government would

3    agree, that whenever the government has requested an

4    opportunity to have a communication with me, I've made

5    myself available both during and after regular business

6    hours.

7           THE COURT:  Just wait for the government.  What

8    do you think?

9           MS. PENZA:  Your Honor, we're happy to await

10   the list from Mr. Sullivan.  I will say that it -- I'm a

11   little worried about the pace of matters.  A list is only

12   the preliminary step.  If we can then have a conversation

13   in quick order, we can then report to the Court on

14   outstanding issues.  We expect there will be outstanding

15   issues.

16          THE COURT:  How does next Tuesday work for you

17   to talk to him and then, you know, get back --

18          MS. PENZA:  That's fine.

19          THE COURT:  We'll probably have a global date

20   for this conference but -- all right.  So your plan, Mr.

21   Sullivan, is to talk to the government on Tuesday about

22   as many of these issues as possible?

23          MR. SULLIVAN:  Thank you, your Honor.

24          THE COURT:  Okay.  All right.  On this issue

25   and overlapping with NXIVM, does anybody want to say

14

Proceedings

1   anything here?  Any of the other counsel?  No.  Okay.

2   All right.

3           Then on the plan for how to deal with

4   privilege, you all had a different view that it should

5   not be the attorneys primarily litigating the case and

6   the two rounds of briefing, you should try to just have

7   the attorney dealing with the attorney dealing with the

8   privilege materials be the point person for all of the

9   briefing on the privilege.

10          MS. CASSIDY:  Yes, your Honor, our primary

11  concern is that the government is in possession of

12  thousands and thousands, as they have said, of our

13  client's privileged materials.  The prosecution team or

14  the firewall team and cc'ing the prosecution team is

15  currently making requests of us that require us to

16  disclose information from our clients that goes to the

17  very issues that they are investigating in this case.

18          In our experience, as defense lawyers dealing

19  with these issues, this is very atypical.  Usually the

20  taint team is entirely walled off from the prosecution

21  team and they review the privileged documents and confer

22  with defense counsel about any areas of dispute or

23  questions about the scope of the privilege.

24          And ordinarily, your Honor, I think the

25  firewall teams are very careful teams are very careful to

Proceedings

1   keep their activities entirely separate from the

2   prosecution teams.

3            And here what the government is proposing is

4   very problematic to us.  They're -- you know, as I said,

5   their firewall attorney keeps cc'ing the prosecution

6   teams on emails to us seeking information and the

7   prosecution team is asking for additional information

8   beyond what we've provided, which lists the attorneys and

9   the matters and the dates of representation.

10           The government should not gain the right to

11  discovery from our clients by nature of having seized

12  their privileged materials.  I think this is a serious

13  Fifth Amendment problem and I think any responses that we

14  are giving in response to their questions necessarily

15  requires to get into the substance of the communications

16  and requires to disclose information that goes to exactly

17  what they're investigating in this case.

18           So I am very comfortable having conversations

19  with the firewall attorney in order to try to address

20  documents on a category by category basis and respond to

21  their concerns about the scope of the privilege but it is

22  the involvement of the prosecution team that is of great

23  concern to me.

24           MS. JONES:  Your Honor, may I be heard briefly

25  on this?

16

Proceedings

1          THE COURT:  You can stay seated.

2          MS. JONES:  I am very cognizant of my

3    obligations as a firewall team not to disclose the

4    content of any privileged communications to the trial

5    team.  I have not done that.  I will not do that.

6               However, in this case and has been my

7    experience dealing with privileged documents before too

8    on a prosecution team, it is entirely appropriate for the

9    trial team to know who are the attorneys that are being -

10   - a privilege is being asserted on behalf of, who is

11   asserting the privilege and I would ask what I have been

12   copying the trial team on are requests about plea

13   identify the attorneys you're asserting a claim on,

14   please identify on behalf of whom you're identifying that

15   you're asserting a privilege on and then also I have

16   asked them to identify the scope of the privilege because

17   in this case, the privilege issues are extraordinarily

18   complicated because all of the defendants have been

19   sharing the same attorneys and those attorneys have been

20   handling different matters for different entities.

21              And so on many of the documents there are like

22   -- you know, there could be a host of people who are

23   included on those documents and it's very clear that in

24   some instances, it has nothing to do with whatever the

25   privilege holder would be able to retain privilege for.

Proceedings

1        For example, there is an attorney Arlen Olsen,

2   who represented all of the defendants on different

3   matters, so I would ask them to each identify for me on

4   what matter -- what was the scope of the matter, so we

5   can sort of separate out who is representing who for what

6   purposes.

7        So if there are third-parties who are copied on

8   that, then we can figure out is the privilege there or

9   has the privilege been waived?  For example, for Nancy

10  Salzman, I still don't even know like what matters Mr.

11  Olsen represented her on, although I do know for the

12  other two defendants what the claim scope is.

13       I asked the defendants to give me like just a

14  general, like, representative list and the list came back

15  as represented in this litigation or -- as a matter of

16  fact, I think in order to not talk about this in the

17  abstract, I would like to give your Honor a copy of the

18  chart that they gave me.

19       THE COURT:  All right.  Everybody has a copy of

20  that?

21       MS. JONES:  I think this is, Judge, for Clare

22  Bronfman and this is also a copy of the redacted version

23  that they provided to the trial team.

24       So when they first gave this to me, they asked

25  me not to share this with the trial team.  I did not

18

Proceedings

1   share it with the trial team but when I reviewed this, I

2   did not understand why they were asserting privilege over

3   the scope of the representation and I asked them well, if

4   there are particular matters that you believe should be

5   redacted for privilege purposes, let's discuss that.

6           Ultimately, they ended up giving  the redacted

7   version to the trial team but you can see from the

8   redactions that they redacted a lot of material that I

9   don't understand under what basis the redaction is

10  occurring.  Like why the fact that an attorney

11  represented a particular defendant in a litigation and

12  why that would be privileged.

13          And the reason why I think this is important is

14  to the extent that there are privilege issues that relate

15  to the scope of the privilege, how the privilege is

16  waived, whether or not there is a common interest

17  agreement, that does not depend on any of the content of

18  the documents.

19          The trial team is in a much better position

20  with their knowledge of the facts about what's relevant

21  and what's important to have those rights rather than me

22  arguing over all of these privilege issues where it

23  doesn't matter what the documents are.  The matter is is

24  there a privilege?  What's the scope of the privilege?

25  Is it being properly asserted?  What would waive that?

19

Proceedings

1   And that doesn't depend on the content.

2          And I think that is something that the trial

3   team is in a much better position to handle than me.  I

4   would like to focus on document review and once the scope

5   of the privilege is defined and I have a good

6   understanding as to what it is and who is claiming what,

7   then we can have, you know, a document by document

8   discussions but there are thousands and thousands of

9   documents.

10         So to the extent that there is like a huge

11  category of things where it's like, okay, this is not

12  privileged, and it doesn't matter what the documents say,

13  that that's something for the trial team could handle.

14  So -- yes.

15         THE COURT:  All right.  Do you want to say

16  anything?

17         MS. CASSIDY:  Your Honor, I don't really

18  understand why the prosecution team needs to be involved

19  in this when Ms. Jones could handle this -- these

20  discussions and this litigation.  I think it would be

21  much more efficient if we could have a process where -- I

22  am not saying we need to do this on a document by

23  document basis, if she comes to us with questions about a

24  certain type of document, the inclusion of a third-party

25  on certain things, we will be happy to answer those

20

Proceedings

1    questions.

2          But just as an example, your Honor, to date,

3    the questions that have been asked of us are about

4    various immigration matters involving attorneys that we

5    identified as having privileged communications with Ms.

6    Bronfman.  Some of these immigration matters, one of them

7    is charged as an act -- a racketeering act against Ms.

8    Bronfman.  Others, I believe, are under investigation,

9    that they may charge as part of their superseding

10   indictment.

11         So any disclosure that I am required to give to

12   the prosecution team I believe is in violation of Ms.

13   Bronfman's Fifth Amendment rights and I understand that

14   we have the burden of establishing the privilege but I

15   want to have those conversations with the taint team, so

16   that we can work out if there are any areas of

17   disagreement and we may agree on a lot of matters.  But I

18   do not understand the need for the prosecution team to be

19   involved at this stage.

20         THE COURT:  All right?  Anybody else want to

21   weigh in?

22         MS. GERAGOS:  I would just add that with

23   respect to Mr. Raniere, when the taint team has asked us

24   about certain litigations, we have said with respect to

25   some communications or third-parties on emails that Mr.

Proceedings

1   Raniere has, that those will no longer be privileged.

2          So we are working, I think, expeditiously with

3   respect to some of the documents to say that if they

4   believe that some of the documents are not privileged, we

5   will then agree and we have done that in the past.

6          MS. PENZA:  Your Honor, if I may just be heard

7   briefly.  One example of -- that we're dealing with in

8   terms of like these immigration matters, is that there

9   are very unusual privileges being claimed.

10         So for example, in the redacted chart from Ms.

11  Bronfman, she is asserting privilege over communications

12  between Mariana Fernandez and an attorney.  Mariana

13  Fernandez is Keith -- the mother of Keith Raniere's

14  child.

15         We have reviewed documents, immigration

16  documents, relating to the immigration procedures that

17  Mariana went through.  There is -- the government

18  believes that we are in a position right now to litigate

19  whether there could possibly be any privilege between

20  Clare Bronfman and an attorney over Mariana's immigration

21  issues.

22         THE COURT:  All right.

23         MS. PENZA:  And we are in the place to do that.

24  Ms. Jones should haven't to get up to speed on all of

25  those issues when we are already in the place to do that

22

Proceedings

1    based on our knowledge of the facts of the case.

2           MS. CASSIDY:  Your Honor, this goes exactly to

3    my point, Ms. Mariana Fernandez is one of the Jane Does

4    listed in the indictment.  This is an area that the

5    government is actively investigating against Ms.

6    Bronfman.  I am happy to litigate this with Ms. Jones.

7    We may be able to work something out.  In the immigration

8    context, I believe that there is a doctrine of dual

9    representation.  It's not necessarily true that just

10   because the sponsor of the visa is copied, as well as the

11   potential visa holder on the email, that that destroys

12   the privilege.

13          These are areas that are very fact-specific.

14   There are different types of visas that were considered.

15   There are different lawyers consulted on these matters

16   and it inevitably gets into the content of the documents.

17          Ms. Jones and I can have I think, a very

18   productive dialogue about the areas where we may agree

19   and the areas where we may not agree and that if there is

20   anything to be litigated, we will litigate it but I do

21   not think that I should be required to disclose

22   information about -- that goes exactly to the

23   government's investigation to the prosecution team in

24   order to try to protect documents that I have a basis to

25   believe are privileged.

23

Proceedings

1          THE COURT:  It seems like this is an efficiency

2     question because we have privileged disputes all the time

3     where the other side knows nothing about the documents.

4     So the fact that you could actually have somebody seeing

5     the documents and have the kind of meaningful

6     conversation that you're talking about, actually does not

7     happen very often and often, I am the one who knows what

8     it being said and one side is in the dark.

9               And sometimes it's the disputes are productive

10    and sometimes I just make the decision about but here,

11    you have the opportunity to have an informed colleague,

12    the privilege team, actually know what the document says

13    and have a conversation.

14              So this is really from my perspective, you

15    could do it in the way that you're suggesting as was done

16    in FIFA.  So the person has more context, can make the

17    arguments but there's no doubt, if we do this with the

18    main trial team as the attorneys handling the privilege,

19    that this is going to have to be done in two rounds

20    because if we have somebody who has -- we may be able to

21    deal with many of the issues, like you're saying with

22    your example of the immigration question or there are

23    probably, you know, half a dozen other examples you could

24    give me but there is likely to be some other areas that

25    it would really be much more helpful if the attorney

24

Proceedings

1   actually had seen the documents.

2           So this is really kind of a resource question

3   and how quickly you can do this and segregate out which

4   issues the trial team is well-positioned to deal with and

5   which ones you can't deal with and your colleague will

6   need to deal with.

7           And, you know, it's the issue that's been

8   looming in this case the whole time is you're on a pretty

9   quick calendar.  So I don't actually know what the two

10  rounds of briefing, how much time that took in the FIFA

11  case.  Do you have a sense?  I feel that you would do

12  this seriatim.  I don't want to have to -- you having

13  overlapping briefing, if that's the approach that's

14  taken.

15          MS. PENZA:  Your Honor, I am not sure about the

16  exact time frame.  I know that there was a hearing

17  initially.  The idea -- the reason why the government

18  believes this would be the most efficient means to

19  proceed is just to establish the scope and validity of

20  the privilege before getting into any disputes relating

21  to the documents.

22          It's also important just more broadly that we

23  understand the general scope --

24          THE COURT:  Right, I understand.

25          MS. PENZA:  -- just to be able to segregate out

Proceedings

1   other material that we may have and so we're prepared to

2   move quickly but we do need the information,

3   nonprivileged information in -- the basis for the

4   asserted privilege, so that we can identify which

5   privileges we seek to argue are waived or that the

6   inclusion of a certain individual would result in third-

7   party waiver, in the abstract.

8          And then Ms. Jones, to the extent there are

9   additional disputes relating to actual documents, I think

10  that would be the time to litigate them.

11         THE COURT:  All right.  Anybody else care about

12  the briefing schedule here?  We can do it in two rounds

13  where the trial team, you deal with the issues that you

14  believe you can deal with and then whatever is left, then

15  Ms. Jones and her colleagues can deal with.

16         That being said, there's no waiver by the

17  defendant by not being able to raise material in order to

18  really make clear what their position is.  So if the

19  defendant who is putting in their presentation, if --

20  whatever, an individual defendant or defendants together,

21  says you really need to look at this document and we need

22  to provide the Court ex parte with information about it

23  and then the government can't respond because you can't

24  see it, then you know, it's not creating any problem for

25  the defendants.  What it is really going to do is just

26

Proceedings

1   push that issue over to Ms. Jones' team, I mean, or I

2   will deal with it but you are absolutely setting it up

3   for the government not to have access to information that

4   might help you make a stronger case and pushing it a

5   little bit down the line, which means in order to be able

6   to do this on two separate rounds of briefing, this is

7   going to have to happen fairly quickly.

8           MS. PENZA:  Your Honor, just one point of

9   clarification in terms of what the government was

10  proposing which in line with FIFA is that rather -- it's

11  not -- we're not really proposing two rounds of briefing.

12          THE COURT:  Okay.

13          MS. PENZA:  What we are proposing is that the

14  trial team submit briefing on issues that we believe we

15  can litigate without seeing documents and then the

16  firewall team can submit a separate supplemental briefing

17  under seal from the trial team in order -- and so really

18  in terms of efficiency, we don't expect that there are to

19  be multiple rounds.

20          One issue that I do want to raise with your

21  Honor is that there have been additional -- which we

22  brought up at the last conference, but there have been

23  additional emails obtained from both Keith Raniere and

24  Clare Bronfman.  We are hopeful that this process will

25  cover many of the issues that would be implicated in the

27

Proceedings

1   additional thousands of emails, tens of thousands of

2   emails that we have from those new warrants but I did

3   just want to raise that with your Honor, so that you knew

4   right now the universe in which we're working with is not

5   necessarily all of the emails.

6           THE COURT:  All right.  I am not sure.  Maybe

7   defense counsel, you can comment.  It would seem to me

8   there are going to be some issues and I don't know what

9   they are but even just looking at these two different

10  logs, the redacted and unredacted one, that there are

11  going to be some issues that you believe -- you, the

12  trial team believe you can deal with that defendants want

13  to raise detailed information with me about the

14  particular privilege that they are not comfortable and

15  don't believe they should disclose to you.

16          That's what I was talking about when I say two

17  rounds basically. You think it's okay.  They can respond

18  to some percentage of what you offer but there's going to

19  be part of that that needs to get pushed over to Ms.

20  Jones and is not what you had identified as something

21  that Ms. Jones has said of the government's effort needed

22  to deal with, so --

23          MS. PENZA:  We understand, your Honor.

24          THE COURT:  I guess the reason that I think it

25  may be helpful to -- and we're going to do this -- but to

Transcriptions Plus II, Inc.

Proceedings

1  follow the FIFA model is this is a complex case and it

2  seems to me that the counsel who are the trial team do

3  have the bigger overview.  It's nothing bad about Ms.

4  Jones, I just know you're in the --

5          MS. JONES:  This is not -- I'm not on this

6  team.

7          THE COURT:  -- in the midst of the documents.

8          MS. JONES:  I'm not on the prosecution team.

9          THE COURT:  So for me, having the information

10  put in that context I think would be most helpful for

11  resolving this and then, you know, Judge Garaufis needs

12  to look at it as well and then the same thing.

13          So what are you proposing is your schedule for

14  moving through --

15          MS. CASSIDY:  Your Honor, if I could just --

16          THE COURT:  -- I'm sorry, yes.

17          MS. CASSIDY:  -- speak to the efficiency point

18  that you raised.  I mean I think this will inevitably

19  involve significant ex parte submissions from us on

20  issues that we may actually be able to resolve if we

21  could just engage in discussions with the firewall team

22  alone and avoid the need for litigation on these topics.

23          THE COURT:  I think you're probably correct and

24  I think we should think about that in the schedule.  We

25  have maybe the briefing and build in a bit of time for

29

Proceedings

1   you to identify those issues, try to split them out if

2   you want to have that conversation and take it out of

3   briefing, that's possible.

4           MS. CASSIDY:  I think there are probably

5   significant swaths of these tens of thousands of

6   documents that we can put aside that are clearly

7   privileged and then there are going to be a smaller set

8   of documents that involve attorneys where there may be

9   third-parties copied, there may be more complicated

10  issues of who is the client, that if we have time to have

11  a dialogue about -- I mean, we've answered Ms. Jones'

12  questions to the extent that she's asked them.  We've

13  provided her with a very detailed chart of all of the

14  matters that we could identify.  We haven't gone through

15  -- I am not saying that we've looked at every single one

16  of these documents because we haven't, so there may be

17  additional matters and representations that come up.

18          But if we can have a dialogue about that, we

19  may agree with her.  I mean, we are not going to take a

20  frivolous position on privilege and we don't think it's

21  necessary to litigate such things before your Honor and

22  waste the Court's time and everyone's time.  And if we

23  could narrow the areas of dispute, it may be that we

24  don't need this initial round of briefing in the abstract

25  and if we do have this initial round of briefing in the

30

Proceedings

1  abstract, I think it will inevitably require ex parte

2  submissions to your Honor that maybe we could avoid.

3          THE COURT:  So I think it's probably true there

4  will be the ex parte.  The question I think I am hearing

5  now is the timing of the briefing.  Do you think there's

6  a small window that you could be having a productive

7  conversation and only after that, this briefing should

8  start or --

9          MS. CASSIDY:  I think that's really more a

10  question for the firewall team because I don't know how

11  far they are in their review.  We are answering questions

12  as they arise.

13          MS. JONES:  Your Honor, one of the stumbling

14  blocks that has sort of slowed this process down a little

15  bit is identifying which entity is asserting the

16  privilege.  We had -- I was given an initial draft of

17  documents that listed attorneys and the -- who they were

18  asserting their privilege on behalf of and then the

19  revised more detailed chart, at least from Ms. Bronfman's

20  attorneys, things sort of moved around as to what

21  attorney was asserting -- for example, in one version it

22  was the attorney was representing Keith Raniere and in

23  another version, the attorney was representing a NXIVM

24  and we've been trying to engage with NXIVM counsel about

25  well, who are you asserting the -- what are your

Proceedings

1   privileges that you're asserting because I would say like

2   maybe a good portion, if not the majority of the

3   privileged communications are the privilege belongs to

4   NXIVM.  So it is important to figure out who does the

5   privilege belong to because then we could figure out if

6   the presence of third-parties on that, waives or doesn't

7   waive it.

8           And just having like the very baseline answer

9   of well, whose privilege does this belong to and who can

10  be on that communication and who can't before it was

11  waived, is important and I think that there is still --

12  that's still a little fuzzy, at least for some of the

13  matters and some of the attorneys.

14          THE COURT:  All right.  Well that's supposed to

15  move forward significantly tomorrow when you get the list

16  from Mr. Sullivan and then --

17          MS. JONES:  Well, I already gave Mr. Sullivan a

18  list of the attorneys who Ms. Bronfman and Mr. Raniere

19  have said these attorneys are representing NXIVM on these

20  matters and I have given that list to Mr. Sullivan more

21  than a week ago, so that he could take a look at it and

22  see if that comports with NXIVM's view as to who is

23  representing NXIVM on what matters.

24          THE COURT:  Okay.  So well if you get his list

25  tomorrow, then hopefully --

32

Proceedings

1          MS. JONES:  And that will hopefully move things

2   forward.

3          THE COURT:  -- that's all -- you can tell, so

4   you'll know, so then in terms of the conversation, you'll

5   have that information.  Then how about you all talking --

6   I mean is it -- I don't --

7          MS. CASSIDY:  Yes, I am happy to do that.  I

8   think the problem --

9          THE COURT:  I understand.

10          MS. CASSIDY:  -- from our perspective has been

11   that the prosecution team has been in the loop on those

12   discussions and that is hindering what information we can

13   provide.  So if we can have those discussions with the

14   firewall team, I think that will move things forward

15   significantly.

16          MS. JONES:  Your Honor, if it's NXIVM's

17   privilege that is being asserted, then I don't understand

18   why it's not Mr. Sullivan who is litigating these issues

19   and not counsel for the individual defendants because

20   they can say these documents are privileged and the

21   privilege belongs to NXIVM but it is, I think -- it's --

22   the discussion should be between me and counsel for NXIVM

23   as to whether or not these documents are privileged, not

24   counsel for Ms. Bronfman, counsel for Mr. Raniere,

25   counsel for Salzman for NXIVM-privileged documents.

33

Proceedings

1          MS. CASSIDY:  I don't disagree but it's the

2    company's privilege and that, you know, Mr. Sullivan is

3    going to be the primary point person on those documents.

4          THE COURT:  All right.

5          MS. CASSIDY:  Those are not --

6          THE COURT:  Are you suggesting that there's a

7    class of documents or multiple class of documents, that

8    it would be productive for you to have a conversation

9    with Ms. Jones but not with the trial team involved?

10          MS. CASSIDY:  Yes.

11          THE COURT:  So --

12          MS. JONES:  Okay.

13          THE COURT:  -- why don't you do that like early

14    next week, once you have the -- Mr. Sullivan's

15    information, and see where you are at that point.  So

16    assuming you have that conversation, what are you

17    thinking in terms of the briefing of this with at least

18    the materials that the trial team thinks that you can --

19    you have enough information to be able to discuss.

20          MS. PENZA:  Your Honor, what we're asking for

21    in the first instance is just an unredacted log, similar

22    to what NXIVM has provided us.  It doesn't contain

23    privileged information.  It says with whom defendants are

24    claiming a common interest privilege, who their attorneys

25    are for what dates and what the basis for the privilege

Proceedings

1    is.

2            And to advise us about the inclusion of which

3    parties would not in their view, constitute a waiver.

4    Those are very basic questions that don't involve

5    privileged information.  They don't involve a detailed

6    recitation of facts.  We just need to know that bare

7    minimum in order to proceed in this process but we don't

8    have that because defense counsel has declined to provide

9    that information to us.

10           MS. JONES:  Your Honor, I just handed up the

11   redacted and unredacted chart that I was given by counsel

12   from Keith Raniere.  As you can see from the scope of

13   representation on the unredacted chart, it is very, very

14   bare bones and I don't understand how any of that is

15   privileged.

16           MS. CASSIDY:  Your Honor, this is not a civil

17   case where we are required to create a privilege log.

18   This is a case where the government has in its hands, the

19   privileged documents.  In a criminal case, I am not

20   required to provide any information to the prosecution

21   team.  This is the subject of the investigation, many of

22   these litigations.  It's the subject of some of the

23   charges in the indictment.

24           So I have an obligation, if I want to preserve

25   privilege over these documents to prove that I have a

35

Proceedings

1  privilege but I don't need to provide free discovery to

2  the prosecution team in order to do that.  I can provide

3  information about the scope of the privilege to Ms.

4  Jones. We ordinarily do not provide a privilege log in a

5  criminal case.

6          MS. GERAGOS:  I would just add that in FIFA as

7  well, they did not give -- we don't see from the docket

8  that they gave information to the prosecution team that

9  included the matters of representation.  It was simply

10 what we gave in our redacted charts to the government,

11 which was the firm name, domain name, attorney name and

12 dates of representation.

13         MS. PENZA:  Your Honor, the hearing that was

14 held by the prosecution team in FIFA was to establish the

15 contours of a common interest agreement between an

16 individual defendant and CONMEBOL, one of the

17 organizations at issue.

18         Those types of common interest agreements and

19 third-party waiver are exactly the same kinds of general

20 scope, understanding, validity, privileges that we think

21 we can litigate.  We just need the basic information,

22 nonprivileged information to assess exactly what's being

23 asserted, with whom the defendants are saying the

24 inclusion of this person on my communications with an

25 attorney does not waive the privilege, which is their

Proceedings

1   burden and so to establish that the third-party -- that

2   that waiver didn't happen, they need to explain what that

3   -- who that person is and why.

4            THE COURT:  Yeah, but they don't want to

5   explain it to you.  They are okay with explaining it to

6   Ms. Jones and to me but they're not interested in

7   explaining it to you until there's some sort of decision

8   from the Court on the issue.

9            MS. PENZA:  But even, your Honor, the basics

10  such as this is the function of this person, for example,

11  this person is a NXIVM employee or this person is a

12  person with whom I had a common interest agreement, even

13  that is information that is redacted from the redacted

14  charges.

15           MS. CASSIDY:  Your Honor?

16           MS. PENZA:  Presumably.  I mean there's -- I

17  don't -- it just says a bunch of individuals.  I assume

18  that there's information about what --

19           THE COURT:  Okay.

20           MS. PENZA:  -- the basis of the privilege is.

21           THE COURT:  I'm looking at the one that's the -

22  - from Bronfman redcated and unredcated.

23           MS. JONES:  There's --

24           THE COURT:  I don't think you -- go ahead.

25           MS. JONES:  I think there's much more

Proceedings

1    information on the Clare Bronfman including in the

2    footnotes and I think that is -- there are a lot more

3    documents -- there are a lot more potentially privileged

4    documents that were seized from Ms. Bronfman than there

5    were from Mr. Raniere.

6              THE COURT:  Uh-hum.

7              MS. CASSIDY:  Yes, and your Honor the

8    government is looking at -- it is included in the

9    indictment and it is obvious from the search warrants

10   that what they are looking at with respect to Ms.

11   Bronfman in terms of evidence for trial and potential

12   additional charges against her, relate to some of these

13   very litigations.

14             THE COURT:  Okay.

15             MS. CASSIDY:  I have an absolute Fifth

16   Amendment right not to provide them with information.

17   This is similar to an active production issue.

18             THE COURT:  All right.  So the government, they

19   don't need to give you the information that's the

20   redacted information from the chart.  I mean it's fairly

21   detailed and does touch on the substance of

22   representations and it's -- and it also seems like you

23   have the material, so they don't have to give it to you.

24             All right.  So what do you want to do in terms

25   of what you're proposing with regard to starting to

38

Proceedings

1   resolve these privilege issues?  You're going to get Mr.

2   Sullivan's information.  He and the government are going

3   to talk.  Counsel and Ms. Jones are going to talk.

4           MS. PENZA:  Your Honor, we would ask that you

5   direct defendants to specify to the prosecution team with

6   whom they seek to assert common interest privileges.

7   Those types of privileges for which there would be no

8   third-party waiver.

9           Merely identifying that is not privileged and

10  that's helpful for us and important for us to know

11  because as Ms. Jones explained, attorneys were shared

12  between defendants, between entities and it can get very

13  confusing unless the scope of the representation is made

14  clear.

15          MS. CASSIDY:  Your Honor, I think that joint

16  defense agreements are themselves privileged.  There's

17  case law on this.  I mean, I don't agree.

18          THE COURT:  The agreement is --

19          MS. CASSIDY:  The fact of the agreement --

20          THE COURT:  -- how -- all right.

21          MS. CASSIDY:  -- and the scope of the agreement

22  and it also goes to again, the issues that are being

23  investigated in this case and so I should not be required

24  to provide information that the prosecution team is going

25  to turn around and cite as evidence in this case.

Proceedings

1    MS. PENZA:  Your Honor, establishing the

2    privilege is defendant's burden.  They need not disclose

3    privilege information, obviously but that needs to be

4    actually privileged and much of the information including

5    identifying basic participants, identifying attorneys,

6    identifying with whom communications are privileged, that

7    in and of itself is not privileged.

8         MS. CASSIDY:  And I will provide that

9    information to Ms. Jones.

10        THE COURT:  So your position is that the fact

11   of a joint defense agreement, who the parties are to the

12   agreement, is privileged.

13        MS. CASSIDY:  I believe on the facts of this

14   case, yes.  And your Honor, I have not fully researched

15   this because I don't think we're at that point --

16        THE COURT:  Uh-hum.

17        MS. CASSIDY:  -- I haven't yet, you know, had

18   questions from the firewall team about -- and I don't

19   think there are very many, if any, communications that

20   are even implicated by the common interest privileges in

21   question here.

22        MS. PENZA:  We don't agree, your Honor and

23   we've asked defense counsel to provide that information

24   to us.  We're happy to submit a letter as to why this

25   information is not privileged.

40

Proceedings

1          THE COURT:  Sure.

2          MS. CASSIDY:  Your Honor, they haven't seen the

3    documents.  They don't -- so they don't know how many

4    documents there are that are implicated by the common

5    interest privilege.  I actually don't think it's very

6    many but I could have these discussions with Ms. Jones

7    and maybe we don't need to have this argument.

8          THE COURT:  Okay.  So why don't you try to

9    resolve it by the middle of next week.  If you haven't,

10   you can each put a letter in as to why the facts as to

11   whether there is a joint defense agreement is privileged

12   and we'll go from there.

13         All right.  What about the bigger picture of

14   these other issues?  What time line are you proposing

15   here?

16         MS. PENZA:  Your Honor, the government would

17   propose early January.

18         THE COURT:  For what part of this?

19         MS. PENZA:  Assuming, your Honor, that we're in

20   a position to understand what privileges the defendants

21   seek to assert, we can report to the Court as to whether

22   or not a hearing is necessary to resolve those issues by

23   early January.

24         THE COURT:  That's not going to slow this all

25   down.

41

Proceedings

1          MS. PENZA:  Your Honor, it is difficult to --

2    without having seen -- without understanding the basic

3    information underlying the claimed privileges, it is

4    admittedly difficult to foresee how a briefing or a

5    hearing would go and so it is --

6          THE COURT:  I know but --

7          MS. CASSIDY:  That's my point.

8          THE COURT:  -- now we're back to where we

9    started which is why isn't this with Ms. Jones?  You

10   know, you're telling me that, you know, you understand

11   the big picture privilege questions and can put them in

12   the context of the case with greater ease of Ms. Jones,

13   who has really a slice of the case, not the whole case,

14   and that's exactly the defendants' point as to whether

15   it's more efficient or not.

16         MS. PENZA:  Your Honor, yes, but identifying

17   those areas -- we've identified some areas of dispute.

18         THE COURT:  Okay.

19         MS. PENZA:  We're prepared to move on.  As to

20   the others, it is difficult because we -- defense counsel

21   and the government apparently disagree about whether the

22   underlying information is, in fact, privileged, even to

23   proceed.

24         But assuming we can work those details out, we

25   think early January makes sense for us to move and set

42

Proceedings

1    forth a process by which those issues would be resolved

2    either by briefing or by a hearing.

3              THE COURT:  I think that's going to be way too

4    slow.  I mean I want to know either now or next week what

5    you're proposing in terms of getting this done.  I mean,

6    because you're talking about -- I don't know if anyone

7    needs to reply but two briefs, maybe a hearing, in time

8    for me to make a decision and then however that decision

9    is made, the documents will be produced or not produced,

10   depending on what happens --

11             MS. PENZA:  Your Honor --

12             THE COURT:  -- and you're up against your --

13   all your other briefing.

14             MS. JONES:  Well, we haven't even run terms

15   against Nancy Salzman's material.  That's millions of

16   documents.

17             THE COURT:  Those are the new ones?

18             MS. JONES:  No.

19             THE COURT:  The old ones?

20             MS. JONES:  This is NXIVM where we have been

21   waiting for --

22             THE COURT:  Okay.

23             MS. JONES:  -- NXIVM's attorneys.  So in terms

24   -- like I think this is a reasonable schedule in terms of

25   trying to efficiently deal with as many of these issues

43

Proceedings

1   wholesale as we can, including also the new returns, to

2   the extent we can.

3          So I think that ultimately it will be more

4   efficient to put more time on this end, so that more of

5   those issues can be resolved and again, your Honor, the

6   government believes that initial briefing can include

7   both briefing from the trial team, as well as

8   supplemental briefing from the firewall team.

9          So we don't necessarily think that thee have to

10   proceed seriatim.

11          THE COURT:  Seriatim.  Right.

12          All right, defense counsel, thoughts on the

13   timing?

14          MS. CASSIDY:  I don't object to early January.

15   I think the more discussions that I can have with the

16   firewall team, you know, now will make this process more

17   efficient in the long run but I don't know where she is

18   in her review.

19          MR. SOLOWAY:  Judge, can I say one thing on

20   behalf of Nancy Salzman on this.

21          THE COURT:  Uh-hum.

22          MR. SOLOWAY:  And that is just that, you know,

23   I would like to avoid any unnecessary litigation with

24   respect to privilege, obviously and Nancy Salzman, whose

25   name hasn't really come up a lot here, other than with

44

Proceedings

1   respect to Arlen Olsen who is kind of in a separate

2   category and I am not going to really address right here,

3   but has taken a -- what we consider to be a very

4   straightforward position here is that she neither waives

5   nor asserts a privilege on behalf of NXIVM, even though

6   she was president, but does assert privilege with respect

7   to her personal attorney-client relationships with her

8   lawyers.

9            And we, back in early November -- now we're at

10  December 6th, provided a detailed list of the matters --

11  in response to Ms. Jones' questions of the matters on

12  which our client was represented, the dates, the names of

13  the matters, the docket numbers, that we're asserting

14  personal privilege.

15           THE COURT:  Uh-hum.

16           MR. SOLOWAY:  For example, in 2000, Nancy

17  Salzman was represented by someone named by Leslie Apple

18  as a claimant in a bankruptcy matter that was initiated

19  to obtain a bankruptcy by someone named Tony Natalie

20  (ph.).  Nancy asserted or contested rather that discharge

21  in the bankruptcy court, at least as to her debt.  She

22  was represented individually in that matter with respect

23  to that and there are other matters like that, a discrete

24  piece of litigation involving the loss of a computer on

25  an airplane in which Ms. Salzman initiated litigation

45

Proceedings

1    against I think it was  Continental Airlines, for the

2    value of the computer and the value of the data on the

3    computer.

4          We haven't received any -- you know, we have

5    been expecting that the government will be providing us,

6    you know, with a universe or in some fashion, those

7    documents that fall within, you know, the information

8    we've given them and so that we can, you know, take -- we

9    hope that we can just resolve -- you know, that these --

10   the government will segregate out the tainting, will

11   segregate out these items.  There won't be any disputes

12   about them.

13         That's also true of a major piece of litigation

14   that occurred for more ten years in both New Jersey and

15   the Northern District of New York where Nancy Salzman

16   again has asserted a personal privilege on behalf of a

17   particular lawyer, a particular law firm, which

18   represented her individually in that case and there are

19   parallel NXIVM privileges in that -- and that's the Ross

20   litigation.  Everybody in this room knows that but --

21         Nancy Salzman -- we haven't received anything

22   from the government for us to figure out whether or not

23   the government -- are there any disputes over privilege

24   with respect to these discrete matters.  So I am not sure

25   --

Proceedings

1       You know, the schedule that we're setting for

2  litigation, I mean we're happy to have a schedule but we

3  don't know what the position of the government is, we

4  don't know whether the government -- where the government

5  is in providing us with these items that fall within the

6  information we've given them in response to their

7  question.

8       MS. JONES:  Your Honor, may I speak briefly on

9  this?  The government has provided these materials to

10  Keith Raniere and Clare Bronfman.  They are segregated

11  materials.

12       Mr. Soloway, the first time we had heard about

13  this as an issue was in the letter to your Honor.  We

14  have now worked with Kroll and we will be providing him

15  the segregated materials today.  They have been

16  segregated and have been part of our ongoing review.

17       So there's been no delay in terms of the

18  materials as to which there's been a personal privilege

19  asserted.  Mr. Soloway has all of those materials

20  available to him.  One phone call, if he had called me,

21  we would have sent the materials over.  So --

22       MR. SOLOWAY:  I don't know what that means.

23       MS. JONES:  Waiting until --

24       MR. SOLOWAY:  I'm sorry, I --

25       THE COURT:  One at a time.

47

Proceedings

1            MS. JONES:  -- waiting until writing a letter

2     to your Honor was unnecessary and you would have had the

3     materials.

4            THE COURT:  All right.  You can have that

5     timing question between yourselves.  It's not really

6     affecting what I am dealing with here today.

7            So you're saying you don't know what the

8     government's -- if I understand this, you don't know what

9     the government's position is as to whether they agree

10    with and respect the privilege that you have asserted

11    with regard to these materials?  You have the materials,

12    you just don't know what the government's position is

13    with regard to them using the materials, is that right?

14           MR. SOLOWAY:  The government has the materials

15    is sounds like.

16           THE COURT:  Right.

17           MR. SOLOWAY:  The government has not provided

18    them to me.  The fact that the Court was alerted to the

19    fact in a letter recently that none of the materials have

20    been provided to Nancy Salzman's counsel, is -- that's

21    not my job to call them up and say send them to me.  The

22    information I had from the government was that they were

23    doing Clare Bronfman and Keith Raniere first.

24           THE COURT:  Right.

25           MR. SOLOWAY:  And then they would get to me and

                                                                    48
                            Proceedings

1    I should just wait and they would do that.  So how -- you

2    know, it's not my job to call them up and say hey, have

3    you -- when are you going to send me this stuff?

4              I have been responding to their questions and

5    waiting for them to do what they said they were going to

6    do, so that I can move through this process in a way

7    that's orderly and we've been hoping that we could avoid

8    any -- in the way that we have decided to proceed in this

9    matter on behalf of Nancy, any issues but we --

10             So we will wait for the government.  The

11   government is indicating they have now segregated them.

12   It sounds like they're going to be sending me something

13   and we'll be in a position to have conversations,

14   hopefully, about that when I receive that.

15             MS. JONES:  Your Honor, I just want to be

16   clear, Mr. Soloway has had all of the materials all

17   along.  If there were categories of documents -- there is

18   no specific issue that has not been able to be talked

19   about because of a delay on sending segregated materials.

20             THE COURT:  All right.  Just so I understand

21   what you're looking for is the government's

22   identification or acknowledgment of the privilege that

23   you've asserted.  Is that what it is?

24             MR. SOLOWAY:  There --

25             THE COURT:  And that you want to know if

Proceedings

1    there's a disagreement.

2         MR. SOLOWAY:  -- should be segregated out by

3    the taint team, as I understand it, a universe of

4    materials that is not available to the government, that

5    is potentially privileged communications between my

6    client and an attorney.  That material -- the government

7    has turned over, it's true, all of the discovery and

8    terabytes and terabytes which they describe in some of

9    their letters about millions of million documents.

10        That's not what I am talking about.  I'm

11   talking about the taint team providing me with a

12   segregated universe or body of material over which we

13   have to have discussions as to whether or not there are

14   disagreements as to privilege.  Not that they've given me

15   all of the discovery.  Yes, they have given me but I am

16   not looking through the discovery myself.  I am not like

17   NXIVM which is subpoenaed as Ms. Cassidy indicated, that

18   has to go through all the material and write a privilege

19   log for the government.

20        The government -- we have given the government

21   the information they want.  They have to segregate out,

22   as I understand it, those materials which fall within

23   what we have provided them and see whether or not we have

24   agreement or disputes in this segregated body of

25   material, not available to the trial team and the case

50

Proceedings

1  investigation team.  They're not looking at that material

2  presumably.

3          THE COURT:  Right.  So again, you have

4  identified what you believe are the privileges.

5          MR. SOLOWAY:  Right.

6          THE COURT:  You're waiting for Ms. Jones'

7  team's response to whether they acknowledge that, agree

8  with you, disagree as it applies to the documents that

9  she is reviewing.

10          MR. SOLOWAY:  And provide me the documents.

11          MS. JONES:  Your Honor, I --

12          THE COURT:  All right.  So this really seems

13  like your question.

14          MS. JONES:  Your Honor, I did not realize that

15  there was an issue.  My understanding was that, for

16  example, I have been looking at for Nancy Salzman and the

17  privilege space, we have a laptop, two BlackBerrys and a

18  thumb drive.

19          And so I have like a -- I have a set of

20  documents that have privilege hits on them.  It was my

21  understanding that entire copies of the laptop, the thumb

22  drive, and the BlackBerry privilege and nonprivileged,

23  everything, was provided to defense counsel and it was my

24  understanding that they would be able to -- we would be

25  able to confer about these items.

Proceedings

1          What I think may be helpful in what we're doing

2    now is I did not understand that Mr. Soloway did not have

3    a way to look at this -- to quickly find the same

4    documents because I emailed him and said I don't think

5    these documents are privileged.  Here are the relativity

6    I.D. numbers for these five documents.  Let me know if

7    you disagree.

8          And then he emailed me back saying well, what's

9    the Bates numbers and I am like, well I have a relativity

10   I.D.  Anyways, we'll sort it out.

11              THE COURT:  Okay.

12              MR. SOLOWAY:  Relativity I.D. for what?  I

13   don't --

14              THE COURT:  Okay.

15              MS. JONES:  That's --

16              THE COURT:  There's no point in me hearing this

17   because you all don't even have the fundamentals, so just

18   for the logistics, so talk.  See if you can coordinate

19   and if there is a disagreement -- first you have to

20   identify what the disagreement is and as to which

21   documents and then have the conversation and then if you

22   can't agree, you can let me know.  Okay?

23          So it seems what you're proposing is that in

24   the next three weeks, you're going to try to make

25   significant progress on these privilege issues, these

52

Proceedings

1   conversations, particularly with defense counsel and Ms.

2   Jones and especially with getting the information from

3   NXIVM and speaking with NXIVM about their list.

4         And then really whatever is left over, which

5   sounds like it may be somewhat significant, I am not sure

6   you're all going to agree to that much but maybe you

7   will, then we're going to have briefing or at least a

8   conversation and go from there but my practical question

9   is I understand we're getting to the end of the year

10  holiday season but do you really need the three weeks to

11  do this?

12        MS. CASSIDY:  Well, your Honor, just following

13  up on what Mr. Soloway said.

14        THE COURT:  Uh-hum.

15        MS. CASSIDY:  So there's the second search

16  warrant that was executed on Ms. Bronfman's email and the

17  government has provided me with the entirety of that

18  search warrant return but I don't have a privilege set of

19  documents from that set of emails.

20        THE COURT:  So it's the same logistics issue.

21        MS. CASSIDY:  So it's the same, just --

22        MS. GERAGOS:  I will add that for Mr. Raniere

23  because of technical difficulties on their end, we don't

24  have the full return yet for the second search warrant on

25  Mr. Raniere's Yahoo! account.

53

Proceedings

1      THE COURT:  All right.  Can you please all talk

2  about these technical issues and then --

3      MS. GERAGOS:  I believe they're giving them

4  over and hopefully this week, but I just wanted to

5  explain that.

6      THE COURT:  Okay.  So that leaves you getting

7  materials in the next couple of days.  Still back to the

8  question that still has basically three weeks before

9  you're suggesting we meet again and talk about or at

10  least meet via your written filings and figure out how

11  this is going to go forward.

12      So do you need that much time?

13      MS. HAJJAR:  Your Honor, we're happy to -- if -

14  - particularly if defense counsel thinks it useful, we're

15  happy to have those conversations and see where we can

16  reach agreement.  The one area of dispute that I don't

17  expect will be resolved is this disagreement about

18  whether or not a claim of privilege in the abstract is

19  itself privileged.  I don't expect we'll resolve that.

20  Should your Honor wish for us to submit a brief letter

21  about the law on that issue, we're happy to but it's not

22  -- those basic informations about (indiscernible) one

23  intends to assert are not themselves privileged and I

24  think the case law is quite clear on that.

25      MS. CASSIDY:  I'm not sure I understand what

Proceedings

1   Ms. Hajjar was explaining just now.

2           MS. HAJJAR:  The --

3           THE COURT:  I think this was the point that you

4   all had raised earlier about whether the fact of a joint

5   defense agreement and the parties of a joint defense

6   agreement, its existence in and of itself, is privileged.

7   That's the point you were talking about, right?

8           MS. HAJJAR:  The validity and scope.  Correct,

9   your Honor.

10          THE COURT:  Uh-hum.

11          MS. HAJJAR:  The validity and scope of a

12  privilege.

13          MS. CASSIDY:  Of a joint defense agreement?  Of

14  a joint defense privilege or --

15          MS. HAJJAR:  The --

16          MS. CASSIDY:  -- all privileges?

17          THE COURT:  I think we're talking about joint

18  defense.

19          MS. HAJJAR:  Yes, your Honor, unless there are

20  other privileges or other sort of unique privileges the

21  defense expects to raise but those types of privileges,

22  the character of them, that is not privileged and we

23  would like basic information, the same information that

24  NXIVM has provided us, basic information about whose

25  representing whom, when and whether the inclusion of a

55

Proceedings

1  third-party destroys that privilege.  That's

2  nonprivileged information.

3          MS. CASSIDY:  I thought that your Honor said we

4  do not have to provide any further information beyond the

5  redacted chart that we have already provided to the

6  prosecution team and we will look at the issue of the

7  existence of a joint defense or common interest agreement

8  and if we decide that, you know -- if we agree that that

9  is itself not privileged, we can provide that information

10 but other than that, I do not intend to provide any

11 further information to the prosecution team, other than

12 if, you know, new attorneys come up in, for example, my

13 review of the new search warrant return materials and I

14 intend to have those conversations with Ms. Jones and I

15 understood your Honor to be saying that that was the

16 procedure we could follow.

17         THE COURT:  I did but I was saying about not

18 providing more information was you don't have to provide

19 these charts or the information that the government was

20 requesting and then you raised -- then there's this

21 additional probably slice of that conversation which is

22 the government's position that -- well, it's really your

23 position that even that there is a joint defense

24 arrangement is something that you don't have to identify.

25 So you might not provide all of the information, even

Proceedings

1   though you have provided on the charts, I think is where

2   this goes.

3           All right.  Why don't you -- it seems that the

4   most efficient way right now since you're going to have

5   conversations is for you to talk -- for defense counsel

6   and Ms. Jones to speak, see if you can resolve these

7   questions and if you can't, then it does seem say by the

8   end of next week, you should let me know where you are on

9   that and then it doesn't seem -- it seems like a letter

10  brief on this point from each side would be enough.

11          All right.  So it would be helpful to know if

12  there are significant areas that you think that you are

13  not going to be able to come to an agreement or that you

14  think that it's possible that you would come to an

15  agreement because if there are areas, as Ms. Hajjar is

16  suggesting, that you know now it's unlikely that you're

17  going to come to an agreement, then we should move the

18  process of the briefing ahead, although it doesn't mean

19  no one is going to really enjoy the end of the year but

20  that's what it is when you are on a tight schedule.

21          All right.  Are there other -- so basically,

22  you're going to talk.  Let me know where you are at the

23  end of next week on these issues, at least in terms of a

24  schedule.  All right.

25          Are there other discovery issues?  Things you

57

Proceedings

1  don't have?  Things you're expecting?  Anything?  We've

2  had multiple iterations of this process.  Okay.

3          And, for the government, do you expect you're

4  going to bring this issue about the search warrants up

5  today?  Is that what you expect?  This is your letter of

6  December 4th.

7          MS. PENZA:  With Judge Garaufis?

8          THE COURT:  Yes.

9          MS. PENZA:  Yes, your Honor.

10         THE COURT:  All right.  Is that at 11?

11         MS. PENZA:  Yes.

12         THE COURT:  What time is that conference, at

13  11?  Okay.

14         And then the Curcio issue, assume you're going

15  to talk about that.  Often those hearings, if you are

16  having a hearing, are handled by the magistrate judge.  I

17  don't know what Judge Garaufis would like but just for

18  your information, if we were going to -- if I end up

19  being the person having those, we would probably do it

20  ideally next Wednesday or next Thursday morning or both,

21  depending on the timing and who is available, et cetera.

22  Judge Garaufis may do it, as well.

23         Are there other issues?

24         MR. SOLOWAY:  I just wonder, your Honor, one

25  thing and that is, you know,  if there was a

58

Proceedings

1   representation at a certain point and people went back

2   and forth on it as to what was called the discovery cut-

3   off date by the defense and the discovery --

4             THE COURT:  I've been oft quoted.

5             MR. SOLOWAY:  Yes.

6             THE COURT:  Yes.

7             MR. SOLOWAY:  And I know that your Honor's --

8   and the ruling ended up being that, you know, the

9   government would do something like make their best

10  efforts to produce all of the discovery on or before

11  December 7th.  I am wondering if the new search warrant

12  has changed that and the new -- yeah, new -- the three

13  new search warrants in this (indiscernible).

14            THE COURT:  All right.  I think that's -- fill

15  out what I believe I said or was trying to say was that

16  the government was on notice that they had had a

17  significant amount of time with the documents and would

18  need to be making their best effort to make the

19  productions and it would be your and your colleague's,

20  you know, professional judgment at what point you wanted

21  to make whatever motions you wanted to make related to

22  the trial, if you felt that you didn't have enough of the

23  materials to be able to have a defense and it would be in

24  light of that schedule that you could make those motions

25  but that it was not an absolute deadline but an

59
Proceedings

1    expectation.

2              So against that backdrop, where is the

3    government with regard to the production on the most

4    recent materials?

5              MS. PENZA:  We discussed this with your Honor

6    last time.  All discussions regarding the December 7th

7    date, regardless of characterization, were always based

8    on the documents that were in the government's possession

9    when we were having those conversations.

10             We have only received those returns within the

11   past month, technical getting them uploaded.  As your

12   Honor knows, that is a process.

13             THE COURT:  Uh-hum.

14             MS. PENZA:  We are in the process of searching

15   them and we expect to make productions on a rolling

16   basis.

17             As to Nancy Salzman's materials, once again, I

18   reiterate that we are waiting on NXIVM's attorneys to

19   provide us a list because we are concerned that there are

20   potentially privileged materials that have not been

21   segregated out based on our original understanding that

22   Nancy Salzman, as president of NXIVM, if there were

23   privileges to assert, would have asserted them the same

24   way other defendants who were affiliated with NXIVM did.

25             So now we're in a different place.  We're in a

60

Proceedings

1  holding pattern. When we have that, we will be able to

2  produce some materials and we'll continue to do so on a

3  rolling basis consistent with our obligations.

4        THE COURT:  So if you have that information, as

5  much as you would need it, which hopefully you're getting

6  tomorrow from Mr. Sullivan and whatever follow-up you

7  need next Tuesday, do you have a sense of what the time

8  line is likely to be?

9        MS. PENZA:  Well, there will certainly be a

10 production quickly thereafter of Bates-stamped materials

11 once we can run those terms but our search is ongoing and

12 as your Honor knows, we only received the warrant a

13 little over a month ago.  So our search continues.

14       THE COURT:  So that means?

15       MS. PENZA:  We are not going to give a date as

16 to which we will -- we will produce on a rolling basis.

17 This is only a month ago that we got a search warrant.

18 We have an ongoing investigation, your Honor.

19       THE COURT:  All right.  But you also have trial

20 date, so that's --

21       MS. PENZA:  Right, and so --

22       THE COURT:  There's tension, you know?

23       MS. PENZA:  Of course and our understanding is

24 if there comes a time when defense counsel wants to move

25 regarding evidence at trial, they will be able to do so.

Proceedings

1          THE COURT:  All right.  Other issues?

2          MS. CASSIDY:  Your Honor, just something that

3   Mr. Soloway said made me realize that I don't believe we

4   received with respect to the devices where there may be

5   Nancy Salzman's personal privilege information, I don't

6   believe that the other defendants have received the

7   nonprivileged segment of those devices.

8          MS. PENZA:  We have produced the entirety of

9   Nancy Salzman's materials to all defendants.

10          THE COURT:  All right.

11          MS. PENZA:  That was subject to -- through

12   (indiscernible), that was subject to our earlier motion

13   to be able to produce and then we reached an agreement

14   with defense counsel, so --

15          MS. CASSIDY:  Okay.

16          THE COURT:  So you do have it or you don't have

17   it?

18          MS. CASSIDY:  I take their word for it.  There

19   are a lot of devices but I take their word for it.

20          THE COURT:  Okay.  Let me just check in on the

21   devices that you had to send to the FBI and you were in

22   the cue.  Progress?

23          MS. PENZA:  We don't have an update for you,

24   your Honor.

25          THE COURT:  Okay.  All right.  Anything else?

62

Proceedings

1        All right.  If there is an update that I should

2   know from Judge Garaufis' hearing or whatever the

3   proceeding is, you can let me know.  All right.  Thanks

4   very much.

5        IN UNISON:  Thank you, your Honor.

6            (Matter concluded)

7                -o0o-

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

63

1

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **6TH** day of **December**, 2018.

*Linda Ferrara*

Linda Ferrara

AAERT CET**D 656

Transcriptions Plus II, Inc.