

|  |  |
|---|---|
|  | **U.S. Department of Justice** |
|  | *United States Attorney*<br>*Eastern District of New York* |
| TH/MKP/KMT<br>F. #2017R01840 | *271 Cadman Plaza East*<br>*Brooklyn, New York 11201* |

February 20, 2019

<u>By ECF</u>

The Honorable Vera M. Scanlon
United States Magistrate Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

        Re:    United States v. Keith Raniere, <u>et</u> <u>al.</u>
               Criminal Docket No. 18-204 (S-1) (NGG) (VMS)

Dear Judge Scanlon:

        The government respectfully submits this letter in further support of its motion regarding Nxivm's assertion of attorney-client privilege over written communications with Mr. Ricardo Olmedo of Olmedo Gaxiola & Abogados ("Mr. Olmedo Gaxiola") and Mr. Diego Ruiz Durán of Bufete Ruiz Durán S.C. and formerly of CLG Abogados ("Mr. Durán"). (<u>See</u> ECF Docket Entry Nos. 256, 291.)

        The information provided to the government by counsel for Nxivm, Michael J. Sullivan, Esq., fails to establish the existence of an attorney-client relationship between Nxivm, any of its affiliates, and Mr. Olmedo Gaxiola or Mr. Durán. Indeed, notwithstanding that the government's motion regarding this asserted privilege was filed in December 2018, Mr. Sullivan has, to date, been unable to provide the government with any additional detail regarding the existence or scope of the purported representation. Mr. Sullivan has advised the government that he has not reviewed any written retainer agreements with these attorneys, nor has he contacted Mr. Olmedo Gaxiola or Mr. Durán to attempt to further understand the existence or scope of any attorney-client relationship. Further, Mr. Sullivan has advised the government that he believes that Mr. Durán was in fact retained by Nxivm's Mexican affiliate, Nxivm Mexico, S.A. de C.V. ("Nxivm Mexico"), an entity that he

acknowledges he does not represent.[1] However, based on non-privileged materials in the government's possession, it appears that the defendant Clare Bronfman or the entity Wisdom Systems LLC may have, in fact, retained Mr. Olmedo Gaxiola. For instance, in or about August 2015, Ms. Bronfman instructed that a check be drawn from her private checking account to Mr. Olmedo Gaxiola's firm. The payments were subsequently accounted for as Wisdom Systems LLC legal expenses.

Nxivm has failed to provide any support whatsoever for its claim that an attorney-client relationship in fact existed between Nxivm and Mr. Olmedo Gaxiola or Mr. Durán, even though three months have passed since the government first alerted the Court that it disputed the existence of such an attorney-client relationship. (See ECF Docket Entry No. 243.) Accordingly, the government respectfully requests that the Court direct Nxivm to promptly produce a written retainer agreement or sworn declaration demonstrating the existence of such an attorney-client relationship, or otherwise to conduct a hearing in order to resolve these disputed factual questions. Nor can Nxivm demonstrate that the communications were for the purpose of obtaining or providing legal advice, United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011), since Raniere and Bronfman used Mr. Olmedo Gaxiola and Mr. Durán as conduits through which to send threatening communications to DOS victims.

Even if Nxivm were able to meet its burden to establish that the communications were privileged, the crime-fraud exception would apply to abrogate such a privilege. As set forth in the government's initial motion and accompanying exhibits, see ECF Docket Entry No. 256 and Exhibits 4-8, Raniere and Bronfman used Mr. Olmedo Gaxiola and Mr. Durán to make false, fraudulent, and threatening statements to DOS victims that Raniere and Bronfman feared had disclosed information regarding DOS to The New York Times. These statements included the following:

 i. Mr. Olmedo Gaxiola's September 14, 2017 statement to Jane Doe 9, drafted by Raniere and Bronfman, that Mr. Olmedo Gaxiola is the "chief attorney of a criminal investigation in Mexico of more than 20 individuals tied together in a cooperative destructive network" and that Jane Doe 9 was "currently connected to the criminal investigation." (9/14/17 Olmedo Gaxiola Letter, ECF Docket Entry No. 256, Exhibit 4.) This statement is false and misleading. Mr. Olmedo Gaxiola is a private attorney and was not the chief attorney of any criminal investigation involving Jane Doe 9.

 ii. Mr. Olmedo Gaxiola's September 18, 2017 statement to Jane Doe 9, drafted by Raniere and Bronfman, that "the group with which [Jane Doe 9 is] involved contains

---

[1] Nxivm Mexico has made several public statements distancing itself from related entities in the United States, including a statement in August 2018 terminating its "professional and economic relationship" with Nxivm United States. Moreover, neither Clare Bronfman nor Keith Raniere appear to have any role as an executive or employee of Nxivm Mexico.

       individuals who have already served prison time, others who are currently indicted, and some that face extradition proceedings. The others are under investigation for some quite serious crimes." (11/16/17 Olmedo Gaxiola Letter, ECF Docket Entry No. 256, Exhibit 6.) These statements are false.

iii.    Mr. Durán's October 11, 2017 statement to Jane Doe 8 that the "State's Attorney's Office in Mexico" had "issued directives against them and other individuals," and enclosing a document, drafted by Mr. Durán, claiming that Jane Doe 8 had committed the felony of "extorsion." An identical document was also sent to other DOS victims, including Jane Doe 11. These statements are false.

       These communications, on their face, establish probable cause to believe that Raniere and Bronfman used Mr. Olmedo Gaxiola and Mr. Durán not for the purpose of obtaining legal advice, but with the fraudulent objective to intimidate and harass witnesses and to conceal criminal activity, that is, the DOS-related criminal conduct with which the defendants are charged. As the Second Circuit has observed:

> The rationale for the exclusion [based on the crime-fraud exception] is closely tied to the policies underlying these privileges. Whereas confidentiality of communications and work product facilitates the rendering of sound legal advice, advice in furtherance of a fraudulent or unlawful goal cannot be considered "sound." Rather advice in furtherance of such goals is socially perverse, and the client's communications seeking such advice are not worthy of protection.

In re Grand Jury Subpoena Duces Tecum Dated Sept. 15, 1983, 731 F.2d 1032, 1038 (2d Cir. 1984); see also United States v. Dyer, 722 F.2d 174, 177 (5th Cir. 1983) ("Where a client seeks to use an attorney to further a continuing or future crime or fraud the broader public interest in the administration of justice is being frustrated, not promoted."); see also In re Grand Jury Proceedings (Gregory P. Violette), 183 F.3d 71, 75–76 (1st Cir. 1999) (same).

      For the reasons set forth above, the government respectfully requests that the Court find that Nxivm has failed to meet its burden to establish an attorney-client privilege over written communications with Mr. Olmedo Gaxiola and Mr. Durán and that, in the alternative, it direct Nxivm to promptly produce a written retainer agreement or sworn declaration demonstrating the existence of such an attorney-client relationship. Should the Court find that such a privilege existed, the government respectfully requests that the Court rule that any communications between Mr. Olmedo Gaxiola and Mr. Durán are not privileged under the crime-fraud exception.

      Respectfully submitted,

      RICHARD P. DONOGHUE
      United States Attorney

By:   /s/
      Moira Kim Penza
      Tanya Hajjar
      Mark J. Lesko
      Kevin Trowel
      Assistant U.S. Attorneys
      (718) 254-7000

cc:   Counsel of Record (by ECF)
      Michael J. Sullivan, Esq. (by email)