# Exhibit F

1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

2

3    ------------------------------------X
                              :

4  UNITED STATES OF AMERICA,      :
                              :  18-CR-00204 (NGG)

5                          :
              v.           :

6                          :  225 Cadman Plaza East
  KEITH RANIERE, *also known as*  :  Brooklyn, New York

7  Vanguard,               :
                          :

8               Defendant.   :  February 11, 2019
    ------------------------------------X

9

TRANSCRIPT OF CRIMINAL CAUSE FOR ORAL ARGUMENT

10        BEFORE THE HONORABLE VERA M. SCANLON
           UNITED STATES MAGISTRATE JUDGE

11

APPEARANCES:

12

13  For the Government:        TANYA HAJJAR, ESQ.
                          MOIRA PENZA, ESQ.

14                          SHANNON JONES, ESQ.
                          MARK LESKO, ESQ.

15                          United States Attorneys Office
                          Eastern District of New York

16                          271 Cadman Plaza East
                          Brooklyn, New York 11201

17  For Keith Raniere:         TENY ROSE GERAGOS, ESQ.
                          MARC AGNIFILO, ESQ.

18                          Brafman & Associates
                          767 Third Avenue

19                          New York, New York 10017

20  For Allison Mack:          SEAN STEPHEN BUCKLEY, ESQ.
                          Kore & Kim, LLP

21                          800 Third Avenue
                          New York, New York 10022

22

23  For Kathy Russell:         JUSTINE A. HARRIS, ESQ.
                          Sher Tremonte, LLP

24                          90 Broad Street
                          23rd Floor

25                          New York, New York 10004

(Appearances continue on next page.)

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

6

1    the subject of the first deadline.  While there are still some

2    additional documents, we obviously are receiving documents

3    from our team and we will produce those expeditiously as we do

4    a responsiveness review, but the vast bulk of material has

5    been produced.

6            THE COURT:  What about the bank records that you

7    were having trouble accessing?

8            MS. PENZA:  Those have been produced on our -- we

9    have -- I believe we have recently received some additional

10   bank records.  We intend to produce those in the same course

11   that we have been.  We've been doing them expeditiously, in

12   honor of a rolling basis, all of the bank records that were

13   being discussed previously have all been produced.

14           THE COURT:  And any update on the various devices

15   that you can access that you had to send to, I think, Quantico

16   or --

17           MS. PENZA:  No update, Your Honor.

18           THE COURT:  Because they're just sitting there and

19   the Government shutdown didn't help?

20           MS. PENZA:  Yeah.  I'm sure it did not help, but we

21   have no update on that.

22           THE COURT:  No update.  All right.  Any defendant's

23   particular concerns, discovery?

24           MS. NECHELES:  Susan Necheles.  I'll try to outline

25   a few things.  Your Honor, I think one thing that we have one

1   concern is that there were a number of devices that were

2   seized from -- devices that were owned by or seized by a place

3   belonging to Nancy Salzman.  We were given the entirety of

4   these devices, but my understanding is that the Government was

5   supposed to be searching them and then producing to us the

6   Rule 16, what they have -- what is responsive to the search

7   warrant because without that we can't know what the

8   Government -- what is potentially exhibit at trial.  There's

9   so much volume here that it's just -- no way for us to go

10  through it all and to figure out anything in it.

11          So we still don't have the Rule 16 material or the

12  identified material and I don't know what the time line is on

13  that when the Government intends to produce that.

14          Do you want me to go on or --

15          THE COURT:  Yes, go through it all.

16          MS. NECHELES:  Okay.  A second issue, Your Honor, I

17  think is just a timing issue.  I don't know whether this is an

18  issue that's to bring up before Your Honor or it's an issue of

19  when there will be expert discovery disclose -- or expert

20  disclosure.  We've had discussions with this with the

21  Government.  We have been unable to reach an agreement.  It's

22  our position that the Government should disclose their expert

23  witnesses and that we potentially have expert witnesses.  I

24  believe I may have an expert witness that it is an expert

25  witness that is totally responsive to the Government's case.

1    may then decide I should deal with, but --

2              MS. PENZA:  The Government is happy to put in a

3    letter by the end of this week.

4              THE COURT:  Okay.  All right.  All right.  The other

5    issue was the rule -- the other one of the other issues was

6    the Rule 16 for the Salzman devices.

7              MS. PENZA:  Yes.  So, Your Honor, I believe that

8    defendants are conflating Rule 16 discovery with trial

9    exhibits.  That's not what Rule 16 is meant to do.  So we have

10   provided defense counsel with everything.  They cannot

11   complain about not having received everything.  That has

12   already been done.  We have been also providing Bates stamped

13   responsive materials as we've been going through it.  It's an

14   enormous amount of material, as defense counsel has

15   acknowledged, but they have the same access that we do.  And

16   we are continuing to provide it, but that is -- all of the

17   case law is crystal clear that Rule 16 is not meant for them

18   to have an outline of how we are proving every element at

19   trial.

20             MS. NECHELES:  No, Your Honor, I think that the

21   Government is wrong here.  That's not what we're arguing.

22   We're not asking for the exhibits at this point.  We're asking

23   for something that we're clearly entitled to.  Rule 16 allows

24   the defense to know what evidence the Government has in its

25   possession and the Government should only have in its

21

1   possession what is responsive to the search warrant and so

2   that's what we're asking.  Give us what's responsive to the

3   search warrant and there should be a date by which that

4   happens, by which they have searched the materials and given

5   us what is responsive so that we can prepare for trial based

6   on what is the evidence -- the bulk of evidence and that is

7   all that we are asking for.  It's what we get in every case.

8   What is unusual in this case is that we have the entirety of

9   the computers from someone else.

10          But even if when they search Ms. Bronfman's

11  computers they have to produce the Rule 16 materials by some

12  date certain so that we can prepare for trial knowing what the

13  Government -- what the Government has in its possession and

14  that's what we're asking for here.

15          MR. SOLOWAY:  Your Honor?

16          THE COURT:  Yes.

17          MR. SOLOWAY:  I'm going to try to communicate I

18  think some context here that Your Honor might be -- I'm not

19  sure.  But we entered into an agreement with Government, a

20  stipulation that was drafted by the parties and so ordered by

21  the Court in October of 2018.  We're now in February of 2019.

22  At that time there was and still is a mass -- a very large

23  number of electronic devices that had been seized by the

24  Government months earlier before Nancy Salzman's arrest at her

25  home at 3 Oregon Trail.

22

1           The Government proposed to produce full forensic
2   copies of those materials prior to conducting a full search
3   for materials that were technically or legally within the four
4   corners of the warrant, what was -- what they had probable
5   cause to seize.  They proposed to turn over full forensic
6   copies of everything and Nancy Salzman agreed to that so that
7   we could move the case ahead and everybody would have the
8   materials and we could try the case on an expedited -- what
9   was a relatively expedited schedule.
10          All the defendants have standing to assert the
11  right, I believe, to this Rule 16 material, not just Nancy
12  Salzman because it's seized as part of the case and is going
13  to be used by the Government as case evidence.  But Nancy
14  Salzman entered into the agreement.  And the agreement
15  provided specifically that while we agreed that full forensic
16  copies of the Nancy Salzman devices would be turned over to
17  all defendants that -- and specifically the stipulation reads
18  the Government has identified and will continue to identify
19  material on the Oregon Trail devices that is responsive to the
20  search warrants authorizing the seizure of the Oregon Trail
21  devices and will produce the materials so identified to
22  counsel for the defendants.
23          The material so identified is that material that's
24  within the confines of Rule 68 within the confines
25  specifically of probable cause.  I think we believe, but I

23

1   think that's what Ms. Necheles is asserting here.  And so

2   since we're the party that signed the stipulation, I just

3   wanted to give you that information.

4          THE COURT:  Okay.  This -- I understand the

5   [indiscernible].  We could correctly [indiscernible].  The

6   Government, you're taking the position -- they have the

7   universe of documents so we've done what we have to do.  The

8   fact that we're trying to work with a subset of that is not

9   really -- it doesn't matter.  They have everything.

10          And defendant's position is it's nice that we have

11  everything, but we care about the subset that would have

12  been -- or that, you know, is permitted by the search warrant.

13  So it's sort of a difference between the universe and the

14  galaxy.  And you're taking -- so is this the mismatch or is

15  there something --

16          MS. PENZA:  Yeah, I believe it is -- our position is

17  that we have complied with our Rule 16 --

18          THE COURT:  Because you've given them everything,

19  even --

20          MS. PENZA:  -- obligations.

21          THE COURT:  -- though you haven't identified the

22  subset that you would have been allowed to get based on the

23  search warrant.  So if the stipulation hadn't been entered

24  into and all the materials couldn't have been shared, you

25  would have had to keep going for --

24

1          MS. PENZA:  Well, we had -- I want to be very clear,

2   Your Honor.

3          THE COURT:  Um-hum.

4          MS. PENZA:  We have been producing thousands and

5   thousands and thousands of Bates numbered documents as well.

6          THE COURT:  Okay.  But we're still trying to get to

7   the outer limit of what you are allowed to use based on the

8   search warrant.  That's --

9          MS. PENZA:  Well, allowed to use is a different

10  question, Your Honor.

11         THE COURT:  What's the difference?

12         MS. PENZA:  That's why we keep running into the same

13  problem.  So the defense counsel wants to have a cutoff date

14  for stopping our search and that is just not supported by any

15  case law.  But down the road --

16         THE COURT:  All right.

17         MS. PENZA:  -- if they want to move to suppress at

18  trial, that is their remedy.  It's not that they get to come

19  in and say the search stops.  That's just not the way it

20  works, Your Honor.  Our search is we're operating in good

21  faith.  Our search is continuing and there is no -- there is

22  no basis for that search to be cut off.

23         THE COURT:  Okay.  So this is basically the same

24  argument we've had three times before, right?  This may be the

25  third time we've had it.  And so it's this question of does

25

1  the deadline mean anything, where is the balancing test go and

2  how is that going to be made.  Is this any different than what

3  we've been talking about before?

4          MS. PENZA:  Your Honor, I think the main -- I mean,

5  here part of the difference is they have everything.  They

6  have everything.  They have the same access.  They have the

7  same -- they have vendors.  They can run the same searches.

8  They've now received our enterprise motion.

9          So in terms of the balancing test that would happen,

10  I do believe we're at a very different place because they do

11  have access --

12          THE COURT:  Well, I wasn't making statement about

13  what the outcome of the balancing test would be, just that

14  it -- you know, we've always talked about approaching that

15  time when the balancing test would come in, but I guess the

16  argument, if I understand defense counsel, you're saying, you

17  know, just because we were cooperative we shouldn't be on the

18  short end of the stick because we allowed the Government to

19  share all the information.  That was an accommodation and the

20  Government -- had Nancy Salzman not agreed to share the

21  contents of all her devices with everybody, you would have had

22  to do your search, so the information was produced or not.

23          MS. PENZA:  Well, so, first of all, that's a -- it's

24  a misstatement because Nancy Salzman agreed and then we

25  withdrew our motion.  So whatever is a motion before the

26

1   Court, which Your Honor actually ended up mooting based on the

2   agreement.

3           So the idea that Nancy Salzman agreed and we would

4   have otherwise been in this other world, there's -- we're now

5   in a hypothetical because it -- it is possible that Judge

6   Garaufis or Your Honor could have ordered that turning -- that

7   everything should be turned over and then we would have been

8   in the boat when everybody had access to everything.

9           THE COURT:  What does the text in the stipulation

10  mean?  I mean, the one that counsel -- you have a copy, right,

11  on you?

12          MS. PENZA:  That we would continue our searches,

13  that's just a statement of our obligation.  Of course we're

14  going to -- we certainly in no way intended to change that we

15  had put forth in the motion and I believe everybody understood

16  that.  Our obligations are always the same.  We have an

17  obligation to conduct our searches when we receive materials

18  pursuant to a search warrant in good faith and to comply with

19  the law and that is what we are doing.

20          THE COURT:  And is your thought that you can conduct

21  these searches all the way up and through trial?

22          MS. PENZA:  Potentially, Your Honor.

23          THE COURT:  And not -- know --

24          MS. PENZA:  Absolutely.  And the question would be,

25  could we use certain evidence if defendants are prejudiced by

27

1    it.

2                MS. NECHELES:   Your Honor, could I address it?   I

3    don't think Ms. Penza -- I don't think she's correct on the

4    law.   I think that there's plenty of law out there that says

5    you must do the searches in time and material.   I just

6    finished a trial where the judge set a cutoff date for when

7    the searches would be done and that is commonly done.   It is

8    true that the Government can always -- there's generally -- if

9    there's newly discovered evidence they can use that, but this

10   is not --

11               THE COURT:   That's not what we're talking about.

12               MS. NECHELES:   -- newly discovered.   They had

13   this -- these computers since March of 2018.   They just are

14   not putting as a priority the search which are critical to the

15   defense.   That's not their priority so they don't want to do

16   that with the time we need to be able to know what the

17   universe is.   They want to shift the burden --

18               THE COURT:   Okay.

19               MS. NECHELES:   -- to the defense and to get our job

20   to figure out, out of this massive material, what might the

21   Government use, but that's not how Rule 16 is set up and

22   that's not what the case law is on searches.   The searches are

23   supposed to be done promptly.   This is -- they have the -- and

24   they promised to do that.

25               THE COURT:   Okay.

28

1          MS. PENZA:  Your Honor, we've got a new search
2     warrant --
3          MS. NECHELES:  I don't interrupt Ms. Penza.  I don't
4     appreciate her interrupting me.
5          THE COURT:  All right.  So that goes --
6          MS. NECHELES:  I understand they got a new search
7     warrant, but they still have had that search.  They've had the
8     computers all this time.  They got a new search warrant
9     because they know the law requires them to do this promptly.
10    We have a quick upcoming trial date and we ask that they be
11    given a date by which the Government will have completed its
12    searches and produce the materials to.
13         THE COURT:  All right.  So it seems that the
14    Government's position is they don't have to do that, so this
15    seems like it needs to be teed up for a motion.
16         So you think this is for me or you think -- what is
17    your respective positions as to whether this goes to the trial
18    judge or is tied to discovery and should it be part of, for
19    example, issues you raise in a letter on discovery on Friday
20    or something else?
21         MS. NECHELES:  Your Honor, I think that all of this
22    discovery materials at the heart of what the Court sent to you
23    and that if the Government is unhappy or we're unhappy with
24    what you decide we can always appeal it.  But I think that
25    what Judge Garaufis wanted was for Your Honor to look at both

29

1    the expert, all of these things first, so I would say

2    certainly I think that this is at the heart of what Judge

3    Garaufis has asked you to look at.

4           THE COURT:  And the Government.

5           MS. PENZA:  We don't have a position on this

6    particular motion.  We certainly think things, you know -- you

7    and Judge Garaufis can work it out.

8           THE COURT:  Okay.  So then the second expert piece

9    because you're talking about potentially raising it during

10   trial seems to me that Judge Garaufis should be part of that,

11   but this issue -- so I think it's defendant's -- it's your

12   motion.  So do you want to talk to each other and just let me

13   know what you propose a schedule?  That's fine.  If you can't

14   agree, I'll decide.

15          All right.  Then the other issue -- so let me know

16   by the end of the week what you're proposing -- and then the

17   last issue is the materials that are being withheld.  Is it

18   till six weeks before?

19          MS. PENZA:  Yes, Your Honor.  So in the first

20   instance we would ask that the Court issue an order that

21   defense counsel should not state the name of people they

22   believe to be cooperating witnesses on the record.  We have

23   obviously been -- we've been operating under that and so we

24   would ask that they do that going forward.

25          MS. NECHELES:  Your Honor, I actually do not think