```
 1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                        :
 4   UNITED STATES OF AMERICA,          :
                                        :  18-CR-00204 (NGG)
 5                                      :
                       v.               :
 6                                      :  225 Cadman Plaza East
     KEITH RANIERE, et al.,             :  Brooklyn, New York
 7                                      :
                      Defendants.       :  March 14, 2019
 8   ------------------------------------X

 9
            TRANSCRIPT OF CRIMINAL CAUSE FOR STATUS CONFERENCE
10             BEFORE THE HONORABLE VERA M. SCANLON
                  UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12

13   For the Government:        MOIRA PENZA, ESQ.
                                MARK J. LESKO, ESQ.
14                              SHANNON JONES, ESQ.
                                United States Attorneys Office
15                              Eastern District of New York
                                271 Cadman Plaza East
16                              Brooklyn, New York 11201

17   For the Defendant:         MARC AGNIFILO, ESQ.
                                TENY GERAGOS, ESQ.
18                              DANIELLE SMITH, ESQ.
                                Brafman & Associates
19                              767 Third Avenue
                                New York, New York 10017
20
     For Allison Mack:          WILLIAM F. MCGOVERN, ESQ.
21                              Kore & Kim, LLP
                                800 Third Avenue
22                              New York, New York 10022

23   For Kathy Russell:         AMANDA RAVICH, ESQ.
                                Sher Tremonte, LLP
24                              90 Broad Street
                                23rd Floor
25                              New York, New York 10004


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service.
```

```
 1                                                                      2

 2

 3    APPEARANCES (Continued)

 4
      For Lauren Salzman:          HECTOR DIAZ, ESQ.
 5                                 ANDREA S. TAZIOLI, ESQ.
                                   Quarles & Brady, LLP
 6                                 Two North Central Avenue
                                   Phoenix, Arizona 85004
 7

 8    For Clare Bronfman:          KATHLEEN ELIZABETH CASSIDY, ESQ
                                   Hafetz & Necheles, LLP
 9                                 10 East 40th Street, 48th Floor
                                   New York, New York 10016
10
                                   MARK J. GERAGOS, ESQ.
11                                 Historic Engine Company No. 28
                                   644 South Figueroa Street
12                                 Los Angeles, CA 90071

13
      Court Transcriber:           SHARI RIEMER
14                                 TypeWrite Word Processing Service
                                   211 N. Milton Road
15                                 Saratoga Springs, New York 12866

16

17

18

19

20

21

22

23

24

25
```

3

1    (Proceedings began at 3:37 p.m.)

2              THE COURT:  Hello?

3              MR. DIAZ:  Yes, we can hear you.  This is -- yes,

4    this is Hector Diaz for Ms. Salzman.

5              THE COURT:  All right.  My deputy's going to call

6    the case.

7              THE CLERK:  Criminal Cause for a status conference,

8    Case number 18-CR-204, <u>United States v. Keith Raniere, Allison</u>

9    <u>Mack, Clare Bronfman, Kathy Russell, Lauren Salzman, Nancy</u>

10   <u>Salzman</u>.  Counsel, can you state your name for the record

11   starting with the Government?

12             MS. PENZA:  Moira Kim Penza, Mark Lesko, and Shannon

13   Jones for the United States.  Good afternoon, Your Honor.  I

14   will stay seated per your usual preference.

15             THE COURT:  Yes.  Yes.  Yes, it's easier.  All

16   right.  Yes?

17             MR. AGNIFILO:  Yes, good afternoon, Your Honor.

18   Marc Agnifilo, Teny Geragos, and Danielle Smith for Keith

19   Raniere and we have waived his appearance for today.  Thank

20   you, Judge.

21             THE COURT:  Okay.

22             MS. CASSIDY:  Good afternoon, Your Honor, Kathleen

23   Cassidy and Mark Geragos on behalf of Ms. Bronfman who is

24   seated behind us.

25             THE COURT:  All right.  Good afternoon.

4

1          MR. GERAGOS:  And good afternoon, Your Honor.

2          THE COURT:  Good afternoon.

3          MS. RAVICH:  Amanda Ravich for Kathy Russell and Ms.

4   Russell waives her appearance today.

5          THE COURT:  Okay.  And then on the phone?

6          MR. McGOVERN:  Also Bill McGovern.

7          THE COURT:  I'm sorry.

8          MR. McGOVERN:  That's all right.  Bill McGovern

9   for --

10          MR. DIAZ:  Yeah.

11          THE COURT:  I'm sorry.  Hang on --

12          MR. McGOVERN:  That's all right.

13          THE COURT:  -- one second on the phone.  Sorry, go

14   ahead.

15          MR. McGOVERN:  For Allison Mack and Ms. Mack has

16   waived her appearance today as well.

17          THE COURT:  All right.  And then on the phone?

18          MR. DIAZ:  Thank you, Your Honor.  Hector Diaz and

19   Andrea Tazioli for Lauren Salzman and we waived her

20   appearance.

21          THE COURT:  Okay.  So we had a busy day yesterday.

22   So this was on for two reasons and some developments seemed to

23   probably affect this, so from my perspective I wanted to see

24   where we are with discovery.  That was an issue that was

25   raised by Ms. Salzman's letter and then also by this ongoing

5

1    question of whether there was going to be a superceding

2    indictment on what the discovery is.

3            So that's happened, so really this is for my -- to

4    help me.  It's to make sure where we are with these various

5    motions and how any of the developments of late affect what's

6    going on and then if you have discovery issues.  So maybe it

7    would help for -- I'm just going to go over what I think we

8    still have which is the privilege motions.  So those are in a

9    few parts.

10           There's the Government's motion at 256, Bronfman's

11   opposition 282, Government had a letter at 361.  There's a

12   sealed letter with documents at 363, response at 381, and then

13   NXIVM's letter in response to the questions I had about

14   privilege that's at 382.  Then there is Mr. Raniere's motion.

15   I have just a complete technical administrative question,

16   that's at 269 with an opposition at 300 and then the reply

17   wasn't filed.  I have the paper copy.

18           And then we're dealing with the redactions.  I'm not

19   sure where we are with that.  There's a redaction version

20   at -- let's see.  The Government redacted version is at 415,

21   defendant's at 416, but unless we missed it we don't see the

22   reply.  Then there was Ms. Bronfman's motions which were at

23   271, 72, 73, 74, 300, 309, 310.  We posted the report and

24   recommendation which I think everybody should be able to see

25   now.  That's sealed, but I assume that most, if not all of it,

6

 1    will be made public.  So I asked you within the next week to

 2    let us know if you think anything from that should be sealed.

 3              There's another motion to suppress that Judge

 4    Garaufis is dealing with and then we had the motion at 381

 5    which was a correction of 379, Ms. Salzman's motion to compel.

 6    I'm not really sure what happened there because you had

 7    completely conflicting views as to what the production had

 8    been.  The Government responded there at 394.  Okay.

 9              So still some pending motions that I am dealing

10    with, but since you've had some developments what, if any,

11    affect did those have on what's pending and what happens with

12    discovery on any of these issues, so.

13              MS. PENZA:  I think the -- Your Honor, the

14    primary -- based on what you said I think the clearest thing

15    is that the Government's position is that the motion -- Ms.

16    Salzman's motion at Docket 381 I believe you said was the file

17    corrected should be mooted at this point given that she has

18    now pleaded guilty.

19              THE COURT:  Okay.  So one question is was anybody

20    else interested in the issue she was raising or have a problem

21    along as I don't know?

22              MS. PENZA:  Well, they may have to.  I -- Your

23    Honor --

24              THE COURT:  Well --

25              MS. PENZA:  -- our position would be --

1          THE COURT:  -- I know.

2          MS. PENZA:  -- that they're -- they would not have

3    standing, so --

4          THE COURT:  Right.

5          MS. PENZA:  -- there would have to be something.

6          MS. CASSIDY:  Well, Your Honor, our view is that

7    we're entitled to the Rule 16 discovery just as Ms. Salzman

8    was and so we are -- we can file a motion to revive this if

9    the Government would like, but the issue is still before the

10   court.

11         THE COURT:  So there were two parts to that

12   question.  One -- and I guess there's now the third.  One was

13   just as a question of fact, what had been produced.  There was

14   really two completely different versions.  One was we don't

15   have anything and then the Government's like you have

16   everything, so.  I mean that's --

17         MS. PENZA:  And that is the --

18         THE COURT:  -- so that was what the week was --

19         MS. PENZA:  -- and that is the truth, Your Honor.

20   They got -- they had everything.  I understand that a number

21   of counsel choose not to open the FedEx package that came with

22   the drive.  The drive had been referenced in a discovery

23   letter in January including Bates numbers and the -- where the

24   materials came from, mainly drives from the Oregon Trail house

25   where Nancy Salzman was.  I also had at least direct

1   communication with Mr. Raniere's counsel about the drive when

2   I went back to my emails.  So I don't know what happened, Your

3   Honor, but I sent the tracking numbers for all six drives to

4   defense counsel after -- at their request.

5          So it's certainly concerning to the Government that

6   nobody followed up.  Even if they had thought those numbers

7   were missing it should've been raised with us much sooner and

8   it raises concerns about the discovery process and what they

9   are putting before the court.

10          MS. CASSIDY:  Your Honor, I think I can speak to

11   that issue.  We, at some point apparently received, I believe

12   it was in early December, received a package from a vendor who

13   is not the Government's normal discovery vendor on this case.

14   There was no indication that the package had anything to do

15   with this case and there was no cover letter accompanying the

16   drive.

17          We -- as for my office we thought that it was a

18   drive we were expecting on another case from that vendor and

19   we put it with that case file.  And we did not realize until

20   the issue that the Government identified in its letter in

21   response to Ms. Salzman's motion that there had been this

22   production from 3 Oregon Trail.

23          So we dug through our files, found the drive, and

24   have now identified that we have received this material and

25   we've been able to upload it.  But if it is the entirety of

1   the 3 Oregon Trail materials then the Government can tell us

2   if it's -- if it's everything and the search is complete.

3          MS. PENZA:  Your Honor, you saw the response to our

4   motion.  We do not believe we -- that the search hasn't -- is

5   not complete.  The search is ongoing, but that -- and -- but

6   we also do not believe that Ms. Bronfman has standing to raise

7   those issues.  If she believes she does she should put in a

8   letter to that effect, but it should be very clear on the

9   standing issue.

10         MS. CASSIDY:  On the -- I'm not sure I understand

11  the standing issue.  I have the right to receive the Rule 16

12  material in this case.

13         MS. PENZA:  She has received everything from Nancy

14  Salzman's address and that is the issue we have --

15         THE COURT:  All right.  We've been talking --

16         MS. PENZA:  -- we have talked about.

17         THE COURT:  -- about this for the whole time, so I

18  guess we need your letter.  If anyone is -- does everybody

19  else have the same concern?  And this is this -- I think Ms.

20  Necheles is the first one to articulate this point.  The

21  Government's view has been that when everything's produced

22  there's -- among the other arguments that when everything is

23  produced that's enough.  And obviously, defendant's view in

24  several different places has been you have to tell us what you

25  are claiming is the product of the search warrant and it's not

1    good enough to say that we've given you everything.  Does that

2    -- that's your position?

3              MS. CASSIDY:  That's correct.

4              THE COURT:  All right.

5              MS. CASSIDY:  I believe what the Government is

6    saying is that this drive had the results of the search that

7    they were doing on the 3 Oregon Trail devices.

8              THE COURT:  No, I think this is the agreement,

9    right?

10             MS. PENZA:  This -- Your Honor --

11             THE COURT:  Yeah.

12             MS. PENZA:  -- as we put out in our letter what Bob

13   Soloway in his letter on behalf of Nancy Salzman claimed --

14             THE COURT:  Yeah.

15             MS. PENZA:  -- that there was no evidence that we

16   have done anything other than -- that we -- there was no

17   evidence that we had even begun our search and that all we had

18   done was produce the drives.  The Government in response said,

19   no, we've produced 340,000 Bates numbered pages of discovery

20   or something like that.  And so that was the response.

21             We certainly did not say, in fact, we said the

22   opposite, we did not say that this was the completion of our

23   search.  However, the Government's position is that Rule 16

24   discovery and what is responsive to a search warrant and what

25   are -- what is -- what are trial exhibits, those are three

1  different things.  As to --

2          THE COURT:  All right.  And just clarify --

3          MS. PENZA:  -- what is responsive --

4          THE COURT:  -- what's on that drive just so

5  everyone's on the same page about what every --

6          MS. PENZA:  That is --

7          THE COURT:  This is the product of the agreement

8  that you have with Ms. Salzman.

9          MS. PENZA:  No, it wasn't, Your Honor.

10          THE COURT:  No, what is this?  What's on the drive?

11          MS. PENZA:  I mean, the agreement with Ms. Salzman

12  enabled us to provide everything to all defense counsel.

13          THE COURT:  Okay.

14          MS. PENZA:  So they are now in possession regarding

15  Nancy Salzman's devices.  I'm using that as shorthand --

16          THE COURT:  Right.

17          MS. PENZA:  -- of everything that the Government

18  has.

19          THE COURT:  Is that what's on the drive --

20          MS. PENZA:  No, what is on the drive --

21          THE COURT:  -- the drive?

22          MS. PENZA:  -- is a subset which is --

23          THE COURT:  Okay.

24          MS. PENZA:  -- partial results of the Government's

25  search.

12

1          THE COURT:  Okay.  So do you have -- I don't know

2     who has what.

3          MS. CASSIDY:  So we have -- we have that drive that

4     contains the partial results of the search of --

5          THE COURT:  Okay.

6          MS. CASSIDY:  -- the 3 Oregon Trail devices.  And if

7     the Government, at some point, produces additional materials

8     and we believe it's too late and we were denied rights under

9     Rule 16 then we will move to preclude them from using it at

10    that point.  We do believe that there is a point at which the

11    searching must stop.

12         THE COURT:  Has to stop.  I know.  You have this --

13         MS. CASSIDY:  We --

14         THE COURT:  -- fundamental disagreement.

15         MS. CASSIDY:  Yeah.

16         THE COURT:  Okay.  Does everybody have what the

17    Government says they have produced whether you agree that it's

18    correct or not --

19         MR. AGNIFILO:  We believe --

20         THE COURT:  -- the Government's positions?

21         MR. AGNIFILO:  -- we believe we do.

22         THE COURT:  Anybody else?

23         MR. McGOVERN:  As do we believe --

24         MS. RAVICH:  Yes.

25         MR. McGOVERN:  -- that we have it, yes.

1    THE COURT:  How about on the phone?

2    MR. DIAZ:  Yes, we do, Your Honor.

3    THE COURT:  Okay.  So do you want to raise an issue

4 by letter that's an extension of what Ms. Salzman had raised

5 or --

6    MS. CASSIDY:  Let me take a look at her letter again

7 and see whether there are any issues that are still alive at

8 this point.

9    THE COURT:  Okay.  All right.  Can I just -- on the

10 purely administrative for Mr. Raniere's motion, there

11 were -- there -- am I right, there wasn't -- there isn't a

12 reply that's been filed or --

13    MS. CASSIDY:  You're talking about the motion to

14 suppress, Your Honor?

15    THE COURT:  Yes.

16    MS. CASSIDY:  The reply was filed on -- it's Docket

17 410.

18    THE COURT:  All right.  I had a -- I had the paper

19 copy that was delivered.  Okay.  Is there a redacted version?

20    MS. CASSIDY:  The -- 410 is actually unredacted.

21    THE COURT:  Okay.

22    MS. CASSIDY:  409 -- yeah, 409 is redacted.

23    THE COURT:  Okay.  Okay.  So discovery issues,

24 things -- are things moving along, not moving along?  What

25 does yesterday events -- does it change anything?  That was

14

1   really, I think, Mr. Raniere you're -- for your client, Mr.

2   Raniere, the point about if there's a superceding indictment

3   what does that do to the discovery we had?

4              MR. AGNIFILO:  I mean, at this -- at this point

5   we're -- we have 500 jurors coming on April 8th.  We're going

6   forward with the trial.  And we think we want to know when

7   we're going to have all of the discovery without subcategories

8   and without, sort of, conditions.  I mean, this trial is about

9   to begin.  And I think that's really the answer that we all

10  want to -- want to know.

11             THE COURT:  So for the Government, the discovery and

12  if you think some of this, the answer of what you have to

13  produce, is it tied up with the trial schedule?  If you could

14  make that clear.

15             MS. PENZA:  Your Honor, the Government has, as we

16  represented to Judge Garaufis last time we were before him we

17  have been producing discovery liberally.  We do not believe

18  that there is substantial additional discovery to produce and

19  we are reviewing to make sure that we do produce anything

20  related to the superceding indictment.  In particular, we are

21  producing a number of items related to various visa

22  applicants.  And we are burning those materials right now and

23  we will be able to send them out either this evening or

24  tomorrow.

25             We are also in receipt of additional materials from

15

1  NXIVM.  We will be producing those as well.  There is a -- the

2  drive on which the child pornography that is at issue, the

3  drive from which that was recovered, we did -- we did ask that

4  defense counsel destroy any copies that they had or return

5  them to us.  That has -- because it has child pornography.

6  Once we -- once we were alerted to that fact we are making

7  that drive available to defense counsel for review at the FBI.

8  And I -- and Mr. Raniere's attorneys are coming tomorrow in

9  order to review that.

10         There are a few drives related to the materials that

11  were produced pursuant to the deferred -- the deferred

12  disclosure.  We are -- there were some technical issues with

13  our initial disclosure.  There are some materials that, from a

14  technical standpoint, we have not yet been able to produce,

15  but we expect to be able to do that this upcoming week.  But

16  we have produced what we believe are the majority of the key

17  files from that.

18         So in terms of substantial additional discovery we

19  don't believe that exists.  We, obviously, continue to receive

20  materials as we have been doing we will produce those on a

21  rolling basis.  We've been making productions every couple

22  weeks, I believe.

23         MR. GERAGOS:  Your Honor, if I could respond to

24  that.  The -- there was one mention, at least initially, about

25  the visa applicants and the discovery in connection with them.

1   I was going to actually write a letter tonight, but since

2   they've represented they're going to turn over material in

3   connection with that, based on the superceding I'd like to

4   wait and see what they turn over.

5        I may -- hopefully they're going to produce the

6   universe of documents that I think we need, but -- and hope

7   springs eternal.  I'm just fearful that it's going to be one

8   set of documents and not another subset that I believe exists.

9   If that's the case I'll alert the court or I'll alert counsel

10   first and see if they've got access to them.  I can see where

11   that potentially is going to be a problem based on the

12   superceding.

13        Also, just so the court is aware, and I know you're

14   not handling the severance, I plan on augmenting the severance

15   motion that has already been filed and I believe that there's

16   going to be discovery issues that flow from that as well.  But

17   I won't know and I'll wait until Mr. Raniere's counsel takes a

18   look at -- on their field trip tomorrow with the FBI.

19        THE COURT:  Okay.

20        MS. GERAGOS:  I guess I would just like to respond,

21   Teny Geragos for Keith Raniere, with respect to the deferred

22   disclosure that we raised in our letter last week.  That was a

23   filing -- the Government has had that in their possession

24   since at least December of last year.  They put in a filing to

25   Your Honor December of last year.  Their drives that they have

1   and -- are squarely with relevant to the complaint that was

2   filed in March of last year, to the indictment that was filed

3   in April of last year, to the superceding indictment that was

4   filed in July of last year, and now they're having technical

5   difficulties to be able to produce something three weeks

6   before we have jury selection?

7            It should have been figured out before.  And quite

8   frankly, there's hours and hours of tapes that we should've

9   had long ago.  And I don't know how many more drives are

10  coming, but they should be produced today not any time later

11  in the week.  I brought this issue up to the court several

12  times in writing and in our last court appearance.

13           And I don't -- I don't think that they should be

14  able to continue to give us relevant Rule 16 discovery, you

15  know, next week or later this week when we should be having it

16  now.  It's relevant.  It's -- there's no basis to keep in from

17  us.  Technical difficulties when they've had it in their

18  possession for at least since December, it doesn't make sense.

19  It -- they shouldn't be able to introduce it later.

20           THE COURT:  So what's the issue?

21           MS. PENZA:  Well, that's a different issue.  The

22  introduction later, they want to make a motion, make a motion,

23  but I don't think --

24           THE COURT:  All right.  But what's your explanation

25  given --

18

1          MS. PENZA:  Well --

2          THE COURT:  -- that you asked for -- you asked not

3  to have to --

4          MS. PENZA:  Because it --

5          THE COURT:  Hang on.  Let me finish the question.

6  You asked not to have to produce it until much closer to

7  trial.  That was granted.  Now?

8          MS. PENZA:  The drives were on our drive.  And when

9  we -- and we assumed there would be no -- we obviously don't

10  make early discovery copies to check the -- whether -- we sent

11  out the discovery thinking that it would work.  Unfortunately

12  it did not.  That has caused us to need to get new copies

13  ourselves.  We have those now and so we are working on

14  replicating them.

15          What I can do is make them available at our office

16  not tomorrow, but first thing next week if that -- because

17  we're already going to be at the FBI on Monday on the other

18  device.  And it takes -- we have to have people available in

19  order to actually be with defense counsel.  But I can make it

20  available early next week if they want -- wish to inspect them

21  at our office, but I'm hopeful that we will be able to provide

22  them early next week.

23          MR. GERAGOS:  Well, thank you.  We'll definitely

24  take them up on that, but we definitely will be making a

25  motion as to suppression of this evidence because it should

19

1  not have been withheld from us.  It's squarely within Rule 16

2  and within the indictment -- both indictments.

3          THE COURT:  Okay.  All right.  So it seems like

4  you're having the same discussion that we had last year, which

5  is that -- and many times since, which is that the Government,

6  your belief is that you can continue to search especially

7  since you got the additional warrants in the fall.  And

8  defendant's view is enough is enough.

9          So the question is how's that going to get teed up.

10  Are you making a motion to the district judge?  What's

11  happening now that we're -- I mean, you don't have to commit

12  on your strategy, but if you know.  This has been going on a

13  long time with early December date on the materials that the

14  Government did have as what seemed like a reasonable

15  production date, which then, obviously, the Government got the

16  additional search warrants for which you could be looking for

17  other things in the materials, some materials which you had,

18  some materials which you were looking for from the different

19  service providers, et cetera, so.

20          MR. AGNIFILO:  So what I'd say to Your Honor's

21  questions we'll talk among ourselves.  I think it probably

22  does make the most sense to tee it up in the form of a motion

23  with Judge Garaufis if you think that's the way to go.  I'll

24  follow Your Honor's lead on that.

25          THE COURT:  To the extent you have any argument

1   that's it's Rule 16, yes.  Whether, you know, it comes back to

2   me that's something for --

3              MR. AGNIFILO:  Okay.

4              THE COURT:  -- you and I to -- for us to figure out.

5   But it is in the -- I realize the Government's response is

6   going to be that it falls in one category.  Yours is obviously

7   that it should be looked at as falling into multiple

8   categories some of which should have already been produced.

9   My point in raising it is your point that trial is coming.

10             MR. AGNIFILO:  Right.

11             THE COURT:  So --

12             MR. AGNIFILO:  Yeah.

13             MS. CASSIDY:  Right.

14             THE COURT:  -- you know, you already -- there are

15   already other significant motions pending in particular with

16   Judge Garaufis, so I'm sure he'd prefer a heads-up --

17             MR. AGNIFILO:  Okay.  Well --

18             THE COURT:  -- on that's coming.

19             MS. CASSIDY:  Your Honor, just with respect to the

20   device that the Government said that they had asked us all to

21   return because of the discovery of alleged child pornography

22   on it and they've now said that they are not going to

23   reproduce the rest of the contents of that device to us, that

24   they're going to make it available for us to inspect at the

25   Government's offices, there are tens of thousands of other

1  files on that drive.  And it is not feasible for us to review

2  that at the FBI, so I would ask that they produce the

3  remainder of the files on those drives or that drive to all

4  the defendants so that we can load it into our discovery

5  database and review it like the rest of the documents.

6        MS. PENZA:  Your Honor, we are working on the

7  feasibility of that.  Obviously, we take child pornography

8  extremely seriously providing even if there are remnants of

9  those files to defense counsel would be its own violation of

10  federal law at that point given that we would know about it.

11  So we have to take that -- we have to be very careful about

12  it.

13        Defense counsel had those materials.  If there is

14  something in particular that they are wanting we can try and

15  get them that sooner.  But in terms of -- we will hopefully be

16  able to provide the entirety of the drive with those images

17  removed, but we have to make sure it is a full scrub such that

18  those images do not appear anywhere on the drive and so we are

19  in that process.

20        THE COURT:  That needs -- well, let me get a better

21  handle on what -- what's on this?  Which drive is this?  Which

22  one are we talking about here --

23        MS. CASSIDY:  This --

24        THE COURT:  -- that has these materials the

25  Government's trying to call back?

22

1          MS. CASSIDY:  As far as I'm aware this is a Western

2     Digital Storage device which has been labeled DSCV_00000061.

3     My information, and I'm not sure if this is the entirety of

4     it, but there are at least 34,000 files on this device.  I

5     cannot say that we have been -- looked at all of them.  We

6     certainly did not see anything that caught our attention as

7     problematic before the Government recalled it.  That was news

8     to us.

9          So we did as the Government requested and deleted

10    it, but there are emails.  I believe that this device contains

11    the backup of several computers and there are emails and other

12    documents on that hard drive that we need to be able to

13    search.  I can't identify to them what materials they are that

14    I'm interested in looking at, but if they would like to

15    segregate the images for now and produce the emails to us, I

16    don't know how they can do it, you know, technologically, but

17    we need that material to be able to search.

18          THE COURT:  So does anybody have an idea as to what

19    this 34,000 is besides the claimed child pornography images?

20          MS. PENZA:  Your Honor --

21          THE COURT:  It was copies of what?  I have no idea

22    and you have lots and lots.  You have that way back.

23          MS. PENZA:  -- it's lots of everything.  So we

24    are -- and we are in the process of trying to remove it, Your

25    Honor.  I -- there's not anything else we can say.  This

1   is --

2            THE COURT:  Well, the -- I mean, your answer has to

3   be we're getting -- these are important materials.  They need

4   them.  I mean, you're -- they're going to trial in a couple of

5   weeks.  And while, you know, if this is actually pornography

6   because it's been identified and you want to get a better

7   handle on it than you had, it's not fair to the defendants to

8   not have the materials that they needs, but I don't have any

9   sense of --

10           MS. PENZA:  Sorry, I missed --

11           THE COURT:  -- what these are.

12           MS. PENZA:  I didn't hear what you just -- I missed

13   what you just --

14           THE COURT:  If you -- you produced -- as I

15   understand this you produced the materials to them, you

16   realized belatedly it included child pornography.  You

17   recalled the devices.  These seem to be 34,000 documents, some

18   of which are -- is child pornography and much of which is not.

19   And they're going to trial in a couple of weeks so if there's

20   any way in which this is material that the defendants should

21   have in order to defend the case they need to get it.  And

22   you've got to resolve these technical issues really, really

23   quickly because otherwise how is it fair to them not to have

24   these materials.  If someone could tell me what they are --

25           MS. PENZA:  Your --

24

1            THE COURT:  -- we might have some better, more

2    informed conversation about this.

3            MS. PENZA:  I did bring up my chart on my phone,

4    Your Honor.  I didn't -- I didn't print it out before, but it

5    does have material related to one of their main cooperating

6    witnesses, so we do need it back as soon as possible.

7            MS. CASSIDY:  And, Your Honor, when they recalled

8    the device they represented in the letter that they -- when

9    they asked for it back that they would be reproducing the

10   contents of the drive to us.  If they had said, you know, we

11   want it back and you're going to be able to look at it at FBI

12   headquarters, you know, I would've had something else to say

13   about it before giving them the drive back.

14           They could've identified to us the images that

15   needed to be deleted as opposed to everything.  Instead we

16   went through, we deleted our copy of the drive.  We had our

17   discovery vendor pull everything down and delete it.  And so

18   there are more than 34,000 files I believe.  I think that's

19   what I had --

20           THE COURT:  Files or -- I misspoke then.

21           MS. CASSIDY:  No, I --

22           THE COURT:  34,000 --

23           MS. CASSIDY:  -- no, I believe that there are 34,000

24   that I had my vendor load which were, you know, maybe email

25   files or other files that I could be interested in.  The --

25

1    I'm not even sure.  I didn't load the image files, so I don't

2    even know how many files are on that drive.  But as Ms.

3    Geragos said, this is crucial evidence to the defense that we

4    need to be able to see.

5                 THE COURT:  Can I just understand why is it all as

6    one unit?  I mean, you copied some sort of backup that existed

7    and just -- and produced that whole thing or is this a

8    compilation of materials?

9                 MS. PENZA:  It's a hard drive, Your Honor.

10                THE COURT:  So you copied this hard drive and then

11   provided it to them?

12                MS. PENZA:  Yes.

13                THE COURT:  Why is it technical -- technologically

14   difficult to pull out what I assume you've identified as the

15   files of concern?

16                MS. PENZA:  Because there can be -- I am not a tech

17   expert, but because there can be remnants of those files.  And

18   we do -- like the idea that Ms. Cassidy, if we had said

19   there's child pornography and she said I'm going to keep the

20   drive anyway, I mean, that's kind of a shocking statement.  So

21   we do take it that --

22                THE COURT:  That's not what she said.  She said she

23   would keep the non-child pornography images --

24                MS. PENZA:  But she --

25                THE COURT:  -- that she had copied.  And you're

26

1   saying --

2           MS. PENZA:  -- she's going to go through and look at

3   the -- for the child pornography?  I --

4           THE COURT:  Well, I think the practical answer would

5   have been to say to the Government, which I'm sure she

6   would've thought of, that tell me which of the images that

7   you're concerned about.  I mean, of what you're saying.  You

8   pulled back 34,000 or more --

9           MS. CASSIDY:  At least.

10          THE COURT:  -- documents or files, I'm not sure what

11  the distinction is here, a couple of weeks before trial

12  because you realize there's a problem.  Okay.  Now you have to

13  fix the problem.  So how quickly are they going to get the

14  "cleaned", in quotes, files.

15          MS. PENZA:  I can't give you a specific answer right

16  now, but I will do my best to give the court -- I will give

17  the court an update by tomorrow afternoon if that's

18  acceptable.

19          THE COURT:  Is that practical given your FBI visit?

20          MS. PENZA:  Well, if it's not, I'm happy to write

21  something and say that I need more time.  I was hoping to --

22          THE COURT:  I mean, I --

23          MS. PENZA:  -- I was hoping that that would be, you

24  know -- that the court would be -- realize that the Government

25  is obviously working diligently to do so.  But I don't know

27

1    that there will be a significant difference between -- in

2    terms of my update of like how and when it can happen.  I can

3    try for tomorrow and then otherwise do something early next

4    week if that doesn't work.  But I'm happy to update the court

5    either way by tomorrow afternoon.

6              THE COURT:  All right.  That would be good, but your

7    answer should lean towards we're going to get it to them

8    A.S.A.P.  I mean, they need to prepare for trial.  If you are

9    in a position or defendants in a position to say this is

10   ancillary material, not as serious as some other things that

11   we're concerned about, that might affect how one would look at

12   this.

13             But these are important papers, what do you expect

14   them to do?  I mean they can't keep going to your office or

15    FBI -- wherever it is that this drive is and looking at it.

16   I mean, that's too much for them, too much for you, too much

17   for whoever you're working with.  So the plan should be you're

18   going to get them "cleaned", in quotes, documents as soon as

19   possible.  And that means soon.

20        Okay.  Other issues?  Okay.

21             MS. GERAGOS:  I have one remaining I wouldn't say

22   issue, but I would ask the court to -- I'm not asking for it

23   now, but as we get closer to trial, once they give us their

24   witness list to tell us which documents by Bates number each

25   of their witnesses produced.

28

```
 1            THE COURT:  I have no idea what -- so what happened
 2    with the -- even the production?  I thought we sort of --
 3            MS. GERAGOS:  The --
 4            THE COURT:  -- had a tracking -- I mean, I don't
 5    have those charts with me, but I thought there was an
 6    association of custodian, owner, however --
 7            MS. GERAGOS:  Well, there's --
 8            THE COURT:  -- someone was being described.  And --
 9            MS. GERAGOS:  -- a chart -- well, there's charts
10    with respect to the Oregon Trail and 8 Hale devices, and of
11    course with, you know, the search warrants they executed for
12    the Yahoo and Gmail accounts, but with respect, and I'm not
13    asking for it now, I'm asking for it after we get a witness
14    list, who produced what because the Bates numbers don't
15    reflect who produced what.  They're either VDM NXIVM or their
16    just NXIVM Bates numbers.  So we think we're entitled to that,
17    so I would ask for that in order reflecting that.
18            MS. PENZA:  Your Honor, we will produce 3,500
19    material, Giglio and Jencks Act material.  I'm not sure if
20    there's something specific that Ms. Geragos is concerned about
21    and we can obviously confer about that.  But I'm certainly not
22    going to agree to that right now.  I have never heard of that
23    being done and so, I'm -- and it also would be an incredibly
24    onerous process given how much has been produced at this
25    point.  I don't know -- like given witness -- it just doesn't
```

1   necessarily make sense to me and so maybe it's not -- maybe

2   it's because this is coming up for the first time right now.

3          THE COURT:  Okay.  Why don't you talk about it

4   because I'm not quite sure what you're looking for because I

5   thought --

6          MS. GERAGOS:  Yeah, the --

7          THE COURT:  -- the materials were generally tracked

8   and the sources were generally tracked.  And devices, I don't

9   know if you --

10         MS. GERAGOS:  Sources, meaning devices, are

11   generally tracked.  But if the Government issues a subpoena on

12   a person and that person turns over materials to the U.S.

13   Attorney's Office they're producing it to us with Bates

14   numbers either saying NXIVM or VDM NXIVM.  So there's no -- we

15   don't have any idea who's producing what to the Government.

16   Whereas normally they're produced -- either the Government

17   will tell us in past cases that we've had or it's produced,

18   you know, with the initials of that person.

19         I'm happy to talk with the Government about it and

20   bring it up later in writing, but we believe that we'd be

21   entitled to the source of the documents if the -- if the

22   Government is going to introduce certain documents through

23   witnesses that the -- that witness has provided.

24         THE COURT:  All right.  Why don't you talk because I

25   think it would help if we knew what set you think is not

1   identified.

2          MS. CASSIDY:  Right.  I think, Your Honor, over the

3   past several weeks we received a number of productions from

4   the Government.  And we will get a file and open it up and it

5   has a lot of pictures in it and emails.  And it's not clear to

6   us where this comes from.  There might be pictures -- screen

7   shots of a phone.  I don't know who's phone it is.  I don't

8   know -- the Government has not identified in any way where

9   this material is coming from.

10          So this close to trial we're trying to prepare,

11  obviously, and think about who the witnesses are.  I don't

12  think -- I think this doesn't come up a lot because normally

13  it's clear where it's coming from.  The Government identifies

14  it in some way to the defendants.  And so I don't think

15  there's anything secret about this.  If they're going to want

16  to use it at trial they're going to have to tell us, you know,

17  who the custodian is if they're going to want to put it in.

18  So I -- maybe we can work it out amongst ourselves, but I

19  think that's the issue that Ms. Geragos identified.

20          MS. PENZA:  Your Honor, I think the answer is it

21  depends.  I mean, I don't -- I think a lot of things that

22  are --

23          THE COURT:  I mean --

24          MS. PENZA:  Your reaction to me -- I'm sorry, Your

25  Honor, but I do.  I really think it depends.  I think there

31

1    are things were the authenticity is, you know, if it's an

2    email and the witness is being called to testify and they

3    produced -- they gave us the email, I'm just not even sure

4    what this -- what this exercise is designed to do.

5            If there are things -- if it's a screen shot and

6    we're calling the person who's screen shot it is that will --

7    that seems obvious.  I think I am actually missing what their

8    concern --

9            MR. GERAGOS:  Let me give them a --

10           MS. PENZA:  -- is and so I really --

11           THE COURT:  All right.  Let's try again --

12           MS. PENZA:  -- think we should try and --

13           THE COURT:  -- to make sure we understand.

14           MR. GERAGOS:  The way I --

15           THE COURT:  What's --

16           MR. GERAGOS:  Let me just give an example --

17           THE COURT:  Okay.

18           MR. GERAGOS:  -- because I've started to open this

19    stuff up.  You have no idea where it comes from.  If they call

20    a witness and there is -- there are items in the discovery

21    that we would want to use whether it's for an impeachment,

22    whether it's to authenticate, whether we'd want to admit, we'd

23    have no idea because I've got a universe or a sea of documents

24    that have been produced which is great, but I don't know who

25    to link it to.  I don't know when the witness comes and gets

1   on the stand did this stuff get produced by this witness, did

2   it get produced by somebody else.  And I -- can you imagine

3   coming in and saying, Judge, timeout --

4               THE COURT:  No.

5               MR. GERAGOS:  -- I need two weeks to go comb through

6   all of this so I know whether or not this witness -- this is

7   like a throwback to the days when they used to produce the

8   discover after the direct examination.

9               THE COURT:  That's before my time.

10              MR. GERAGOS:  It's not before my time,

11  unfortunately.

12              THE COURT:  I don't know.

13              MR. GERAGOS:  But then I used to get boxes of

14  discovery after they finished direct.  And they'd throw it on

15  the desk and I'd say I need a continuance for three hours so I

16  can figure out what I've got.

17              THE COURT:  Okay.  So to get back to your example,

18  you're getting, what, screen shots that don't have numbers or

19  you don't know what the number is?

20              MS. CASSIDY:  They have numbers, but we don't know

21  where it came from.

22              THE COURT:  You don't know whose number it is?

23              MS. CASSIDY:  We don't know who took it.  They know

24  who took it.  We don't know who took it.

25              MS. GERAGOS:  There are several screen shots where

33

1    it's clear who they're talking to, but maybe not clear where

2    they're -- where it's coming from.  So there are screen shots

3    were I know -- you know, text message shots where I do know

4    who it's between because I can put two and two together in

5    some instances, but in some instances I can't.

6              MR. AGNIFILO:  The problem -- so the last couple

7    cases we had with the Eastern District, I mean, now in the

8    Schiralli and the Venditto Mangano case, the Bates stamp on

9    the bottom tended to indicate the source.  So, like, if

10   something came from the Town of Oyster Bay it would be TOB and

11   a number, so just to give an example.  And so, it's -- and I'm

12   not saying they have to do it in any particular way, it's they

13   do it however they do it, but --

14             THE COURT:  But you have the information of the

15   source of the doc.

16             MR. AGNIFILO:  You have the -- yeah, you have

17   the --

18             THE COURT:  Right.

19             MR. AGNIFILO:  -- information for the source.  And

20   it -- and it tends to come up a lot, you know, I mean, because

21   things come up during the trial and, you know, there's a

22   sidebar or there's an issue and you try and figure out oh,

23   where did these documents come from.  And rather than someone

24   through the dark, you know, when there's some witness on the

25   stand to be forewarned is to be forearmed in this kind of

1   instance and I'm assuming the Government knows.

2           I mean, I'm not asking them do to -- you know, to go

3   back and investigate, but I assume that they know where these

4   things came from.  So if it's just a matter of telling us what

5   they already know I think we save a lot of aggravation later

6   by knowing now.  I don't know how it's going to be relevant.

7   It might be relevant, it might not be relevant, but it is

8   information we've tended to get just through anecdotally the

9   way that the number is -- appears on the document.

10          THE COURT:  All right.  But you're -- you as the

11  custodian or the person who produced certain records is

12  material that you're entitled to know because you're entitled

13  to be able to challenge the authenticity of documents and

14  understand how they would be used for -- at or on direct or

15  impeachment.  And without it --

16          MR. AGNIFILO:  Right.  Right.  That's right.

17          THE COURT:  -- you can't really work with the

18  document.

19          MR. AGNIFILO:  Correct.

20          THE COURT:  So just so I understand the scale of

21  this you're -- what I had talked to you all about was mostly

22  information that seemed like it was identified because you

23  knew it was from whichever location, Oregon Trail or some

24  other place, and you know whose it was, and so it made sense.

25  And now, like, is this -- this is, what, the last couple of

35

1  productions?  How many -- what are we talking about --

2          MR. AGNIFILO:  So I'm trying to think.

3          THE COURT:  -- a couple of pages, thousands of

4  pages?

5          MR. AGNIFILO:  I'm trying to think of a way to make

6  this sort of situation manageable.  I mean, there's two things

7  that could happen.  We could try to figure out what we don't

8  know and go to them and say hey, we want to know where this

9  stuff comes from and presumably they would know the answer.

10  And that might be the best solution.

11          An easier solution for us would be that they --

12  since they already know the answer already that they just tell

13  us in the first instance.  But let me -- let's talk and we'll

14  talk with them and --

15          THE COURT:  All right.  So why don't you talk.

16          MR. AGNIFILO:  -- see if we can resolve this.

17          THE COURT:  By when do you think you could --

18          MS. PENZA:  Your Honor --

19          THE COURT:  -- know whether there's an issue or not?

20          MS. PENZA:  -- I can respond, though, to that.  I

21  mean, we have produced millions -- over -- like --

22          THE COURT:  Right.

23          MS. PENZA:  -- that is not feasible with the current

24  trial date for us to go through discovery and identify every

25  piece of discovery.  A lot of this --

36

1              THE COURT:  Okay.  Wait.  Wait.  Hang on a second,

2    though.  It doesn't sound like you have the issue for every

3    piece.  It's these -- I'm trying to -- that's why I'm --

4              MR. AGNIFILO:  It's not every piece.

5              THE COURT:  Sorry, let me just --

6              MR. AGNIFILO:  It's not every piece.  And sometimes

7    like --

8              THE COURT:  It's the recent productions that you're

9    saying don't have --

10             MR. AGNIFILO:  It --

11             THE COURT:  -- obvious associations, is that what it

12   is?

13             MR. AGNIFILO:  -- it's not a matter of the recency.

14   It's --

15             THE COURT:  Okay.

16             MR. AGNIFILO:  But it's sporadic.  For the -- very

17   often, yes, something's from 8 Oregon Trail, it's from 8

18   Oregon Trail.  We don't need to be told that again.  So I

19   think what probably might make the most sense to see if we can

20   do it this way, we -- one of the issues that Ms. Cassidy

21   raised is we -- you know, we're working with a discovery

22   program and that's why it's so hard to go to the FBI because

23   we can't incorporate the program.

24             Maybe there's a way of sort of spitting this out.

25   This is stuff I don't know anything about.  This is -- Teny

1  will shake her head one way or the other and say you're nuts,

2  which could possibly happen.  We might be able to --

3            THE COURT:  Isolate --

4            MR. AGNIFILO:  -- zero in on this stuff --

5            THE COURT:  -- what you're concerned about?

6            MR. AGNIFILO:  -- you know, and see this is the

7  stuff we don't know where it's from.  And then say hey, ten

8  percent, five percent we don't know where it's from, can you

9  just tell us where it's from.

10            THE COURT:  Okay.  When could you make that request

11  to the Government so that they can look into it and/or decide

12  what they're -- what they want to do and then if you still

13  have a problem let me know?

14            MS. GERAGOS:  By -- we'll do it by Monday.

15            THE COURT:  All right.  And when you see it you can

16  figure out what your turnaround time.

17            MS. GERAGOS:  Well, do it with using their discovery

18  letters so that it's easily tracked.

19            THE COURT:  All right.  So then I'll leave it to

20  you, defendants, to raise if there's a problem after you talk

21  to the Government.

22            MR. AGNIFILO:  Very good.

23            THE COURT:  Other issues?

24            MS. JONES:  Your Honor, on -- this is Shannon Jones.

25  I just wanted to raise one thing about the privilege review

38

1   process.  When you listed the items that you had you mentioned

2   that you had Ms. Bronfman's February 21st, 2019 letter which

3   related to the items that were in dispute from our first two

4   productions of material that we thought --

5           THE COURT:  Do you have the -- do you have the -- I

6   have it by docket number, not date, in front of me.

7           MS. JONES:  I don't have it by docket --

8           THE COURT:  Okay.

9           MS. JONES:  -- number, which is why I wanted to give

10  you the dates.  Because --

11          THE COURT:  Okay.

12          MS. JONES:  -- for the privilege review materials I

13  have not been filing things on the docket because if -- even

14  if I file it ex parte and under seal because I would be filing

15  it on behalf of the Government I can't ensure that I could say

16  for sure that no one else from the Government team could

17  access it.  And the idea --

18          THE COURT:  Oh.  Uh-huh.

19          MS. JONES:  -- is that they not access it.  So there

20  is the February 21st letter that Ms. Bronfman filed, the

21  Government's initial response of February 27th.  Then they had

22  filed a follow-up letter regarding -- on March 4th regarding

23  just the redaction issues.  The Government had proposed

24  providing a redacted copy of the first two letters to the

25  Government team and hopefully that could be filed on the

1   docket under seal.  And then the Government had a actually a

2   follow-up response to that redaction --

3            THE COURT:  What --

4            MS. JONES:  -- rejection which was dated March 6th,

5   2019, which I don't think you referred to.

6            THE COURT:  Okay.

7            MS. JONES:  So I --

8            THE COURT:  I'll look back again.

9            MS. JONES:  -- brought a paper copy if you'd want

10  it, but I had emailed a copy, but I did not file it on the

11  docket because, again, for the reasons I discussed that I

12  can't -- I can't say that that would mean that it would be

13  only accessible to their --

14           THE COURT:  Right.  I understand.

15           MS. JONES:  -- privilege review team.

16           THE COURT:  If you have an extra copy I'll take it,

17  but -- all right.  So 221, 227, 34, 36?

18           MS. JONES:  Yeah, so here is --

19           THE COURT:  Okay.

20           MS. JONES:  -- the basic letter.

21           THE COURT:  Okay.

22           MS. JONES:  And, Your Honor, the Government --

23           THE COURT:  Yeah.

24           MS. JONES:  -- we also provided on Tuesday, we

25  provided the next list of documents that we have marked as not

1  privileged and we provided that list to defense counsel and

2  asked them to review it and let us know if they have any

3  additional objections so we can keep the process rolling

4  forward.

5          MS. GERAGOS:  Your Honor, I have an issue with that.

6  They produced to us for the first time on Tuesday.  This is

7  the first batch we've received since many weeks ago when we

8  were engaging in this process and we went through the briefing

9  and there were the first three batches that we then moved on

10 any documents that we were not able to agree on.

11         We, on Tuesday, received a batch of more than 5,000

12 documents.  At this point before trial it is very difficult

13 for us to take the time to go through and go back -- have the

14 same back and forth with the team.  Many of these documents

15 are also -- they relate to some of the same issues that are

16 currently before Your Honor on the motion that's fully

17 briefed.  I don't think that it's a good use of their time or

18 our time --

19         THE COURT:  Right.

20         MS. GERAGOS:  -- to spend, you know, these remaining

21 weeks fighting about the same categories of documents which

22 are also apparently not related in any way to the superceding

23 indictment which has now come out.

24         THE COURT:  Related to what was in it before or to

25 the new charges when you say not related?

41

1          MS. GERAGOS:  Either.

2          THE COURT:  Either.

3          MS. GERAGOS:  Not related to either.

4          MS. PENZA:  Your Honor, well, that's not what the

5   privilege review team is doing.  We're not -- we're not

6   gearing up based on whatever the trial team is doing.  We're

7   just doing the -- moving forward with the privilege process.

8   We had been reviewing -- we are reviewing documents.  We're

9   reviewing documents ongoing because it's a lot of stuff to go

10  through.  And if we don't mark something not privileged that

11  appears to be not privileged that means we end up reviewing it

12  again next time we do it.  So we are -- whenever we see

13  something not privileged we marked it not privileged.

14          And we had been sitting on things waiting to see if

15  some of the prior issues were going to resolved.  Then we

16  would know how that was going to be handled.  But we

17  didn't -- at a certain point we're like we've just got to get

18  this out.  We've got to keep moving forward which is why we

19  pushed out that last batch on Tuesday.

20          THE COURT:  You'll hear from them when you hear from

21  them.  I don't -- what relief do you want?  You're just saying

22  you're not going to -- it's not going to be at the top of your

23  list of things to do, right?

24          MS. GERAGOS:  That's correct.

25          THE COURT:  All right.  Well, maybe once the -- we

42

1   finish the privilege decision that might help.

2           MS. GERAGOS:  And -- right.  And at a certain point,

3   I mean, I think Your Honor is --

4           MS. PENZA:  Your Honor, then we need a new process.

5   We need a new process.  They can't just choose now -- first of

6   all, Ms. Bronfman is talking about filing additional severance

7   motions.  So we're operating in this world where other people

8   -- where she may not be going to trial in three weeks, and

9   that is the truth.  And so she shouldn't get to sit on this

10  and such that the Government has still not been able to review

11  these emails.

12          THE COURT:  You can't.  I mean, this is not going to

13  be a successful argument for the Government.  The Government

14  has not produced things quickly relative to the amount of time

15  that you had it.  And it may be a long, slow, deliberate

16  process to go through things, but to say that the defendant's

17  counsel needs to turn something around extremely quickly in

18  the face of trial when the severance motion hasn't been

19  decided and given yesterday's events, as was suggested, we'll

20  have additional material supplemented, it's not a realistic

21  request balancing all of the efforts that everybody is making.

22  So --

23          MS. PENZA:  Well, then, Your Honor, in terms of a

24  ruling regarding what is before the court, because that would

25  be a way for us to turn --

1          THE COURT:  And we'll get to it.  We just dealt with

2    the one motion.  There's another one.  And we'll see what

3    happens.

4          MS. PENZA:  And I understand that, Your Honor, but

5    we -- even the other defendants haven't -- like haven't

6    received those materials.

7          THE COURT:  Yeah.  It all takes time and there are

8    priorities.  So you'll get a decision when you get a decision,

9    but you're not going to be able to force the defendants in the

10   next couple of days to respond to your 5,000 page -- is that

11   what it is, 5,000 documents?

12         MS. PENZA:  No, we gave them an --

13         THE COURT:  I don't know what it is.

14         MS. PENZA:  -- we gave them an Excel sheet and the

15   Excel sheet identifies the Bates number, the date, the two,

16   the -- it basically looks like a privilege log is what it is.

17   It's just generated by identifying if there's file name what

18   the file name is, so it's just a list of documents.  And this

19   is for all defendants.

20         About half of the documents are from devices that

21   were Nancy Salzman was the custodian of and the other -- the

22   other half, I think, are split between Mr. Raniere and Ms.

23   Bronfman.  And that was one of the other reasons why I had

24   wanted to be able to give redacted copies of these motions

25   papers to the Government and presumably if it would be filed

44

1   under seal then at least maybe the other defendants would see

2   it because right now we're having like a one on one dialogue

3   with one defendant about privilege that she's asserting on

4   behalf of NXIVM which impacts all of the defendants here.

5          So I just -- I don't think that if we remove the

6   privilege content as I had suggested in my redactions, which I

7   think were pretty conservative, then at least people know what

8   we're talking about even if they don't -- they're not entitled

9   to access of the content.  But again, most of the privileges

10  asserted are being asserted on behalf of NXIVM by a person who

11  may or may not have standing to make those arguments.

12         MS. GERAGOS:  And NXIVM's counsel has been involved

13  and is aware of the privileges that are being asserted and

14  agreed with them.  And just on the Nancy Salzman point, so now

15  there are documents that are identified as Nancy Salzman

16  documents.  I don't have those documents because those are

17  isolated as privileged material that are -- that is Nancy

18  Salzman's.

19         Nancy Salzman has pled guilty.  That doesn't mean

20  that there is no privilege because the privilege is likely

21  NXIVM's.  So NXIVM's counsel is going to have to review all of

22  the Nancy Salzman documents and determine whether they want to

23  assert a privilege on those just to clarify.

24         MS. PENZA:  Well, NXIVM's not going to trial.  So I

25  don't understand why NXIVM's counsel, who is NXIVM is, again,

1  the privilege holder for, I think, the majority of these

2  documents.  I don't know why that counsel cannot be working on

3  the privilege review because he's not representing a defendant

4  in this case.

5          THE COURT:  I have no idea what he's doing except

6  occasionally being on the phone calls.  Anybody know?  I mean,

7  I don't know where he's looped into your discussions.

8          MS. PENZA:  Your Honor, frankly I think given where

9  we are and given what the Government understands regarding

10  NXIVM, that NXIVM's counsel should be directed to assert how

11  they are not defunct at this point because that's what

12  we -- that is in large part what we're running into.  His

13  counsel --

14          THE COURT:  Okay.

15          MS. PENZA:  -- saying we -- you know, the president

16  of NXIVM just pleaded guilty yesterday, Your Honor.  I don't

17  know what NXIVM is and I think there's a good chance that it

18  is actually defunct and that there is no privilege --

19          THE COURT:  All --

20          MS. PENZA:  --  as to anything.

21          THE COURT:  -- subs and the -- you know --

22          MS. PENZA:  Yes.

23          THE COURT:  -- whatever.  Obviously NXIVM Mexico

24  came up.  So your position is what, there is no corporation?

25          MS. PENZA:  Yes.  I mean, as far as I can tell there

46

1   is none.  I don't -- when I speak to Mike Sullivan about who

2   is making privilege calls it is totally unclear.  After

3   everyone was indicted it was like, hm, I have nobody to speak

4   to.  And then he is saying he doesn't have any money to

5   represent the case if he -- if the -- if the fund is running

6   out.

7           And so when you're hearing that from the attorney

8   for NXIVM that there's no money, there's no people, that seems

9   like a defunct organization at this point.  And then we could

10  really clear the decks on this because most of the privileges

11  are NXIVM's and we could just wipe that clean.

12          THE COURT:  All right.  I didn't know things were at

13  that situation.

14          MS. GERAGOS:  My understanding from Mr. Sullivan is

15  not that he said I have nobody to speak to, but he declined as

16  a matter of privilege to tell Ms. Penza who the client -- who

17  was the representative NXIVM he was speaking too.  He said

18  something completely different.

19          MS. PENZA:  Your Honor, this is one of the points

20  that was discussed in the privilege motion.  There was

21  this -- the -- we -- I talked about in this about who was the

22  privilege holder and what happens when a corporation is no

23  longer in business and what showing the corporation would have

24  to make to assert privilege.

25          And I think just being able to -- for an attorney to

1  walk in and say I'm not going to tell you who the privilege

2  holder is or who's instructing me, I don't -- I don't think

3  you can -- I don't think they meet their burden of showing

4  that they -- that they have a valid privilege by doing that.

5  And to be totally frank, Your Honor, it sounds like it's Ms.

6  Cassidy.  And so that's the situation we find ourselves in.

7            MR. AGNIFILO:  Your Honor?

8            MS. PENZA:  And, so I think NXIVM should have to

9  make the showing.

10           MR. AGNIFILO:  Your Honor, if I -- if I could

11  without --

12           THE COURT:  Okay.

13           MR. AGNIFILO:  -- Mr. Sullivan's a former United

14  States Attorney.  He knows what he's doing.

15           THE COURT:  He's also not here --

16           MR. AGNIFILO:  He's not on the call.

17           THE COURT:  -- so I don't want to go too far down

18  this line.

19           MR. AGNIFILO:  So, yeah, I would like to try and

20  sort of stop this if we could.

21           THE COURT:  And we could order the transcript, but

22  it's -- all right.  But we got the Government's view maybe

23  NXIVM doesn't exist any more in a way that it can assert a

24  privilege.  Did anybody else want to say anything on the

25  record about that?

48

1           MR. AGNIFILO:  No, just that -- I mean, we'll bring

2    Mr. Sullivan into the discussions and I'll have a lot more to

3    say about these things than we do.

4           THE COURT:  Okay.

5           MS. PENZA:  Your Honor,  the Government does have

6    one more issue --

7           THE COURT:  Okay.

8           MS. PENZA:  -- regarding 8 Hale.  Last time we

9    raised our concerns regarding the maintenance of the

10   confidentiality of documents and who is saying that the

11   confidentiality of the -- of the documents at 8 Hale was

12   maintained where no one is asserting a privacy interest in 8

13   Hale.  Anyone who could possibly is not asserting that privacy

14   interest and there has been nothing filed yet.  And these are

15   additionally --

16          THE COURT:  Yeah.

17          MS. PENZA:  -- thousands of documents, Your Honor.

18   So I understand that the -- that the court is not pleased with

19   the Government's pace, but this is something that we asked and

20   then if there is no privilege there that's more, thousands and

21   thousands of documents, many of which I believe given the way

22   this case works it is possible that there could be duplicates

23   on those devices which would eliminate a lot of the privilege

24   review that Ms. Jones is doing on the other devices.

25          MS. CASSIDY:  Your Honor --

49

1          THE COURT:  Anybody else want to say anything about

2    8 Hale?

3          MS. CASSIDY:  -- just to be clear one of the

4    potential places where the privileged documents would be would

5    be on the device that the Government recalled and has not

6    returned to us.

7          THE COURT:  I lost you on that one.  I'm sorry.

8          MS. CASSIDY:  The --

9          THE COURT:  The one that -

10          MS. CASSIDY:  -- 8 Hale -- one of the 8 Hale devices

11    which has more than 34,000 files on it is the device -- the

12    hard drive that the Government --

13          THE COURT:  That's where that hard drive was from?

14    Okay.

15          MS. CASSIDY:  -- took back.

16          THE COURT:  All right.

17          MS. CASSIDY:  So we have not had access to those

18    documents for the last several weeks if there is a privilege

19    argument to be asserted there.

20          THE COURT:  All right.  Well, you'll be getting

21    something back soon, so.

22          MS. PENZA:  It's not about -- but, Your Honor, I

23    just want to be clear, I don't think there's anything to do

24    with the content at this point.  We -- the Government concedes

25    that there -- from my conversations with Ms. Jones that there

50

1    are documents that -- on the 8 Hale devices that that drive,

2    other drives, that would hit on the same type of NXIVM

3    privileged terms --

4             THE COURT:  Right.

5             MS. PENZA:  -- individual privilege terms that we've

6    been talking about.  That is not the issue, Your Honor.  The

7    issue is whether there was -- whether the maintenance of the

8    confidentiality was there such that the privilege still holds.

9             THE COURT:  All right.  All right.  Anything else?

10            MR. AGNIFILO:  Nothing from us, Judge.

11            THE COURT:  All right.  To be clear though, you

12   know, you suggest I'm not happy with the Government's case.  I

13   don't have a view.  What I do have a view about is having

14   enough resources for you to be able to do what you need to do.

15   It seems to me everybody here is working very hard.  But, you

16   know, you've been working hard for, I don't know, you're

17   coming on a year and certainly six months for everybody else,

18   but it's always been, at least since the arrest, that the --

19   mister -- at least some defendants were going to go to trial

20   fairly quickly.

21            So, you know, with all this work everybody should be

22   able to have what they need to put on the case for the

23   Government and put on the defense for the defendants if that's

24   what they want or at least to oppose the Government's case.

25   And there is a lot of pressure in getting it done, so, you

51

1  know, my concern has been that you have enough resources and

2  if you don't that you get them because -- you know, defendants

3  are entitled to a fair trial.

4           All right.  Anything else?  All right.

5           MR. AGNIFILO:  No, thank you, Judge.

6           THE COURT:  Thanks.

7           MR. AGNIFILO:  Thank you, Your Honor.

8           THE COURT:  Have a nice day.

9           MR. GERAGOS:  Thank you.

10           THE COURT:  Thanks.

11  (Proceedings concluded at 4:34 p.m.)

12                         *  *  *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25

52

1          I certify that the foregoing is a court transcript

2     from an electronic sound recording of the proceedings in the

3     above-entitled matter.

4

5                                     _____

6                                     Shari Riemer, C.E.T.**

7     Dated:   March 15, 2019

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25