UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
UNITED STATES OF AMERICA,

    -against-

CLARE BRONFMAN,

                   Defendant.
------------------------------------------------------------------X

**TO BE FILED UNDER SEAL**

**MEMORANDUM & ORDER**

**18-CR-204-3 (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court are the Government privilege review team's (the "PRT's") objections to Magistrate Judge Vera M. Scanlon's orders regarding whether certain documents seized from Clare Bronfman's email account are subject to either the attorney-client or work-product privileges (the "Privilege Orders") (Apr. 4, 2019 Order (Dkts. 502, 542); Apr. 6, 2019 Order (Dkts. 505, 543); Apr. 8, 2019 Order (Dkts. 507, 544)). (Gov't Apr. 18, 2019 Objs. ("Objs.") (Dkt. 552).) The PRT objects to two of Judge Scanlon's findings: (1) that Nxivm is not defunct and may assert attorney-client and work-product privileges (see Apr. 4, 2019 Order at 3), and (2) that certain emails involving or regarding Park Dietz (the "Dietz Documents"), a psychologist hired by Nxivm's counsel, are protected by Nxivm's work-product privilege (see id. at 4-8). (Objs. at 6.)

Despite the PRT's objections, this court AFFIRMS the Privilege Orders for the following reasons.

I.     **BACKGROUND**[1]

The disputed documents were seized from Bronfman's email account pursuant to a court-authorized search warrant. (See Objs. at 3.) In a February 21, 2019 letter, Bronfman submitted

---

[1] The court presumes familiarity with the record in this case and only discusses the aspects of the case relevant to the instant motion.

1

249 documents to Judge Scanlon for in camera review and asked the court to find that the documents are protected from disclosure by either the attorney-client or work-product privileges. (See Bronfman Mot. for Privilege Order (Dkt. 363, 448-9).) The PRT opposed the motion. (Gov't Resp. in Opp'n to Mot. for Privilege Order (Dkt. 448-1).) In three orders filed in early April 2019, Judge Scanlon found that most, but not all, of the 249 documents were privileged and should be withheld from the Government's trial team. (Apr. 4, 2019 Order at 18; Apr. 6, 2019 Order at 25-26; Apr. 8, 2019 Order at 6.)

The PRT now asks this court to set aside the Privilege Orders for two reasons. (Objs.) First, the PRT argues that the record is insufficient to find that (a) Nxivm is not defunct and may assert privileges in this matter or that (b) Bronfman and Michael Sullivan (an attorney who purports to represent Nxivm) may assert privileges on Nxivm's behalf. (Id. at 6, 8-11.) They contend that Nxivm has suspended operations and is not functioning as required by Delaware corporate law, and thus is incapable of authorizing Bronfman or Sullivan to assert privileges on Nxivm's behalf. (Id. at 8-11.)

Second, the PRT insists that the Dietz Documents cannot be protected by Nxivm's work-product privilege. (Id. at 6, 11-14.) Dietz is a psychologist whom Nxivm's counsel, Robert Crockett, hired ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ The Dietz Documents fall into

---

[2] ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

two categories █████████████████████████

████████████████████████████████

████████████████████████████████

████████████████████████████████

███████████████ The PRT objects to Judge Scanlon's findings as to the first category. (Objs. at 11-14 (objecting only to Judge Scanlon's work-product-privilege analysis).)

Both Bronfman and Sullivan have responded in opposition to the PRT's objections. (Clare Bronfman Apr. 25, 2019 Resp. to Gov't Objs. ("Bronfman Resp.") (Dkt. 586); Michael Sullivan Apr. 25, 2019 Resp. to Gov't Objs. ("Sullivan Resp.") (Dkt. 584).) They state that Nxivm is not defunct because it retains the characteristics of a legal corporation, and that Bronfman, as a Nxivm executive-board member, had asserted privilege over the 249 documents in consultation with Sullivan.[3] (Sullivan Resp. at 5-9; Bronfman Resp. at 1-2.) Additionally, they maintain that the Dietz Documents are privileged because Dietz was retained in anticipation of litigation, not to combat negative publicity. (Sullivan Resp. at 9-11; Bronfman Resp. at 2-3.)

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 59 provides that a magistrate judge may decide any non-dispositive matter and a party may object to such a ruling. Fed. R. Crim. P. 59(a). "The district judge must consider timely objections and modify or set aside any part of the order that is contrary to law or clearly erroneous." Id. "A magistrate's ruling is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure, and is clearly erroneous if

---

[3] Sullivan also notes that a quorum of Nxivm's remaining executive board members voted to delegate to him the power to assert or waive any applicable lawful privilege. (Decl. of Michael Sullivan ("Sullivan Decl.") (Dkt. 584-1) ¶ 9.)

the district court is left with the definite and firm conviction that a mistake has been committed." Thai Lao Lignite (Thai.) Co. v. Gov't of the Lao People's Democratic Republic, 924 F. Supp. 2d 508, 512 (S.D.N.Y. 2013) (alterations adopted) (citations and quotation marks omitted) (discussing the civil analogue to Rule 59(a)). "This standard is 'highly deferential,' 'imposes a heavy burden on the objecting party,' and 'only permits reversal where the magistrate judge abused his discretion.'" Milan v. Sprint Corp., No. 16-CV-4451 (DRH) (SIL), 2018 WL 1665690, at *2 (E.D.N.Y. Apr. 6, 2018) (quoting Mitchell v. Century 21 Rustic Realty, 233 F. Supp. 2d 418, 430 (E.D.N.Y. 2002)) (discussing the civil analogue to Rule 59(a)).

### III. DISCUSSION

#### A. Whether Nxivm May Assert Privileges

##### 1. Legal Standard

"The weight of authority[] holds that a dissolved or defunct corporation retains no privilege." S.E.C. v. Carrillo Huettel LLP, No. 13-CV-1735 (GBD) (JCF), 2015 WL 1610282, at *2 (S.D.N.Y. Apr. 8, 2015). In deciding whether Nxivm is defunct, the court looks to "practical business realities rather than technical legal status." See Official Committee of Administrative Claimants ex rel. LTV Steel Co., Inc. v. Moran, 802 F. Supp. 2d 947, 949 (N.D. Ill. 2011). "[A] company does not immediately 'die' simply because it ceases its normal business operations." Id. (citing Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 351-52 (1985)). Similarly, a dissolved corporation may assert privilege during its windup process. Id. (citing Reilly v. Greenwald & Hoffman, LLP, 127 Cal. Rptr. 3d 317, 324 (Cal. App. Dep't Super. Ct. 2011)). "If a corporation lost its privilege as soon as it ceased normal business operations, it would likely be deterred from communicating frankly with its attorneys during the windup

4

process, because any disclosures made would no longer be protected." Id.; see Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998)).

2. Discussion

The PRT is correct that Bronfman, as the party claiming a privilege, had the burden of showing that Nxivm is not defunct and may retain privileges. (See Objs. at 8-11.) See United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011) ("The party asserting the privilege . . . bears the burden of establishing its essential elements." (citation omitted)). Nevertheless, Judge Scanlon's ultimate conclusion was correct because—regardless of whether Bronfman had done so at the time of the Privilege Orders—Bronfman has now met her burden.

Bronfman has shown that Nxivm has an existing executive board that governs its affairs and that, since July 2018, Nxivm has held several board calls with a quorum of its board members to address "operational aspects of the corporation's business, such as approval for use, retention and payment for accounting services, as well as authorization to process and pay for other corporation expenses," and to delegate to Sullivan the power to assert privileges. (Sullivan Decl. ¶¶ 6-9.) As the PRT notes, several Nxivm board members have pleaded guilty in this case, and its president has indicated that she does not intend to participate in Nxivm going forward (Objs. at 8-9); however, these board members have not resigned, and the court is not aware of any provision of law that results in the automatic removal of a board member upon entering a guilty plea to a felony (see Sullivan Decl. ¶ 7.) Additionally, Nxivm has been responding to grand jury subpoenas, paying normal operating costs, maintaining files and storage facilities, and filing tax returns. (Sullivan Decl. ¶¶ 11-12; Sullivan Resp. at 5.) As Judge Scanlon noted, a statement on Nxivm's website indicating that it is "suspending all [] enrollment, curriculum, and events until further notice," likely due to this case, does not mean that Nxivm is defunct. (Apr.

4, 2019 Order at 2-3.) At most, that shows that Nxivm has ceased normal business operations and may still assert privileges.[4] See Moran, 802 F. Supp. 2d at 949 ("[A] company does not immediately 'die' simply because it ceases its normal business operations.").

Sullivan has the power to assert or waive any applicable lawful privilege on behalf of Nxivm. (Sullivan Decl. ¶¶ 9-10.) Bronfman, a Nxivm board member (Sullivan Decl. ¶ 6), may not unilaterally waive privilege over communications she had with Nxivm's counsel. See In re O.P.M. Leasing Servs., Inc., 13 B.R. 64, 68 (S.D.N.Y. 1981) ("[I]t is the corporation and not any individual who is entitled to the attorney-client privilege with power to waive or assert it."). Sullivan has instructed Bronfman to assert privilege over some of these communications. (See Sullivan Decl. ¶ 12.) This was proper.

### B. Whether the Dietz Documents are Privileged

#### 1. Legal Standard

"The attorney-client privilege may cover 'communications made to agents of an attorney . . . hired to assist in the rendition of legal services.'" United States Postal Service v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 161 (E.D.N.Y. 1994) (quoting United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989)). In United States v. Kovel, the Second Circuit held that "the attorney-client privilege can attach to reports of third parties made at the request of the attorney or the client where the purpose of the report was to put in usable form information obtained from the client." Federal Trade Comm'n v. TRW, Inc., 628 F.2d 207, 212 (D.C. Cir. 1980) (characterizing the holding in United States v. Kovel, 296 F.2d 918 (2d Cir. 1961)). "[T]he application of the privilege in Kovel is now recognized as extending to representatives of

---

[4] The court also agrees with Judge Scanlon's observation that it "would be troubling if the Government's prosecution of a company's leadership as the source of a business's difficulties could then be used to find a waiver of the attorney-client or similar privileges." (Objs. at 3.)

the attorney, such as . . . non-testifying experts." Phelps Dodge Refining Corp., 852 F. Supp. at 161 (citations omitted). These experts can be analogized to "a translator who puts the client's information into terms that the attorney can use effectively." Id. (quoting TRW, Inc., 628 F.2d at 212 and characterizing the holding in Kovel, 296 F.2d 918).

Additionally, "[t]he work product privilege establishes a zone of privacy for an attorney's preparation to represent a client in anticipation of litigation." In re Grand Jury Subpoena Dated Oct. 22, 2001, 282 F.3d 156, 160 (2d Cir. 2002) (citing Hickman v. Taylor, 329 U.S. 495, 510-11, (1947); United States v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998)). This privilege extends to "material prepared by agents for the attorney as well as those prepared by the attorney himself," because "attorneys often must rely on the assistance of investigators and other agents in the compilation of materials in preparation for trial." United States v. Nobles, 422 U.S. 225, 238-39 (1975). "Materials need not be prepared solely for a litigation purpose in order to merit protection under the work-product privilege." Strougo v. BEA Assocs., 199 F.R.D. 515, 521 (S.D.N.Y. 2001) (citing Adlman, 68 F.3d at 1201-02)). To prove that a document constitutes work product, "[a]n attorney must show merely that the documents were prepared 'with an eye toward litigation.'" Id. (quoting Adlman, 134 F.3d at 1202).

2.  Discussion

It was within Judge Scanlon's discretion to find that the Dietz Documents—███████████████████████████████████████████████████████████████ ███████—were subject to either the attorney-client or work-product privileges. See Milan, 2018 WL 1665690, at *2 (stating that reversal of a magistrate judge's non-dispositive order is permitted only "where the magistrate judge abused his discretion" (citation omitted)).
████████████████████████████████████████

7

Case 1:18-cr-00204-NGG Document 640 Filed 05/10/19 Page 8 of 10 PageID #: 6595



See Phelps Dodge Refining Corp., 852 F. Supp. at 161 (quoting TRW, Inc., 628 F.2d at 212); see also Kovel, 296 F.3d at 921. As Judge Scanlon observed, ▓▓▓▓▓ ▓▓▓▓▓ (See Apr. 4, 2019 Order at 8-9.)

The Government points to Dietz's correspondence with media outlets, and his release of a report of his findings to the New York Times, as evidence that Dietz was hired for public-relations purposes, not to further Nxivm's litigation strategy. (Objs. at 11-12.) ▓▓▓▓▓ ▓▓▓▓▓ Courts have recognized that attorneys may authorize public-relations work to further a litigation strategy, and that an attorney's communications with a public-relations consultant can thus be privileged. See Pearlstein v. BlackBerry Limited, No. 13-CV-7060 (CM) (KHP), 2019 WL 1259382, at *6 (S.D.N.Y. Mar. 19, 2019) (stating that a lawyer's communications with a public relations consultant may be privileged if the consultant was hired "for the purpose of assisting the lawyer in rendering legal advice or to achieve a legal goal," such as "lessen[ing] pressure on prosecutors to secure an indictment against their client"); In re Grand Jury Subpoenas dated March 24, 2003, 265 F. Supp. 2d 321, 330 (S.D.N.Y. 2003) (holding that a limited disclosure to a public-relations consultant did not result in a waiver of privilege because the purpose of the disclosure was to enable the consultant to advocate for the client in a public forum to help the client avoid indictment).

It was also within Judge Scanlon's discretion to find that Dietz's correspondence with media outlets, and the release of a summary of his findings to the New York Times, did not

8

waive privilege as to the Dietz Documents.[5] (Apr. 4, 2019 Order at 11-13.) As Judge Scanlon observed (id.), a limited disclosure of privileged information to the media does not necessarily result in a subject-matter waiver of privilege as to all related conversations. See In re von Bulow, 828 F.2d 94, 101-03 (2d Cir. 1987) (holding that, where excerpts of privileged conversations between a criminal defendant and his counsel were published, the defendant had not waived privilege as to other conversations with his counsel on the same subject). ▬

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ ▬▬

Indeed, as Bronfman notes (Bronfman Resp. at 3), ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬
▬▬▬▬▬▬▬▬▬▬▬.

In sum, Judge Scanlon's conclusion that the Dietz Documents are privileged was not "contrary to law or clearly erroneous." Fed. R. Crim. P. 59(a). The court thus declines to set it aside.

---

[5] Of course, Nxivm waived privilege as to the report that Dietz submitted to the New York Times. Judge Scanlon's ruling was only about communications between Dietz, Crockett, and Bronfman regarding Dietz's work. (See Apr. 4, 2019 Order at 1-2.)

## IV. CONCLUSION

For the foregoing reasons, the court AFFIRMS Judge Scanlon's (Dkt. 502, 505, 507) Privilege Orders despite the PRT's objections (Dkt. 552).

SO ORDERED.

Dated: Brooklyn, New York
April 26, 2019

/s Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge