

U.S. Department of Justice

United States Attorney
*Eastern District of New York*

KDE:TH
F. #2017R01840

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 18, 2021

<u>By ECF</u>

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: <u>United States v. Nancy Salzman</u>
       <u>Criminal Docket No. 18-204 (S-1) (NGG)</u>

Dear Judge Garaufis:

  The government respectfully submits this letter in advance of the defendant Nancy Salzman's sentencing, which is scheduled for September 8, 2021 at 11 a.m. On March 13, 2019, Nancy Salzman pleaded guilty to Count One of the first superseding indictment (the "Indictment"), charging her with racketeering conspiracy. At the time of the defendant's guilty plea, the government estimated the applicable U.S. Sentencing Guidelines ("U.S.S.G." or "Guidelines") range as 33 to 41 months' imprisonment. For the reasons that follow, the government respectfully requests that the Court impose a sentence at the high end of that range.

  I. <u>Background and Criminal Conduct</u>

  The facts underlying the offense conduct in this case are set forth in the Presentence Investigation Report ("PSR") prepared by the United States Probation Department on June 7, 2021, to which the government has no objection.

  As set forth in the PSR and as acknowledged at her guilty plea, Nancy Salzman was member of the racketeering enterprise led by Keith Raniere and, among other

things, conspired to commit identity theft and conspired to alter records for use in an official proceeding, as alleged in Racketeering Acts 2 and 3 of the Indictment.[1]

### A. Identity Theft and Unlawful Surveillance

Nancy Salzman, along with co-defendants Keith Raniere and Clare Bronfman, participated in the unlawful surveillance and investigation of perceived critics and enemies of Raniere and Nxivm. PSR ¶¶ 47-54. The targets of these efforts included high-ranking politicians, reporters who had published articles critical of Raniere or Nxivm, Nxivm's own lawyers, legal adversaries and their families, an accountant (James Loperfido) who worked for an attorney who had previously done work for Nxivm, and Edgar Bronfman Sr., the father of Clare Bronfman. Id.; Trial Tr. ("Tr.") at 3357 (testimony of Loperfido).

Nancy Salzman helped Nxivm retain private firms, including Interfor and Canaprobe, in order to investigate perceived enemies of Nxivm and Raniere. PSR ¶ 52. Between approximately 2007 and 2009, Canaprobe sent the results of purported "bank sweeps" for bank account and balance information belonging to Nxivm's adversaries. Id.

On March 27, 2018, a search warrant was executed on Nancy Salzman's residence. Law enforcement agents recovered, among other things, a large box containing purported private banking information of many individuals perceived to be Nxivm enemies, including Edgar Bronfman, Joseph O'Hara, Rick Ross, and others. Id.; Tr. at 4997-99 (describing purported banking information for, among other individuals, the author of the October 2003 Forbes article and prominent New York politicians and lobbyists).

### B. Obstruction of Justice

Nancy Salzman also conspired to obstruct justice by altering videotapes that were to be produced in discovery in a federal lawsuit in New Jersey. PSR ¶¶ 56-59. In 2003, Nxivm and affiliated entities filed suit against Stephanie Franco, a former Nxivm student, her parents and Rick Ross. Tr. at 4683-84 (Ross's testimony). The lawsuit alleged copyright infringement and centered on a claim that Franco had violated a non-disclosure agreement by providing Nxivm course materials to Rick Ross, a cult deprogrammer, who published the course materials on his website. Tr. at 910, 1299 (Vicente's testimony); Tr. at 1988-89 (Lauren Salzman's testimony); Tr. at 4700-4703 (Ross's testimony).

In 2008, Franco filed counterclaims against Nxivm alleging that Nancy Salzman had misrepresented the nature and effectiveness of Nxivm's programs and had claimed, among other things, that Nxivm's programs could cure poor eyesight. Franco's attorneys requested the production of certain videotapes in support of their claim that the Nxivm curriculum contained false statements and violated certain state consumer protection

---

[1] The Court is familiar with the factual background and offense conduct in this case, having presided over the six-week trial of co-defendant Keith Raniere. The following factual summary is intended to provide an overview sufficient to situate the government's arguments with respect to Nancy Salzman's sentencing.

2

laws. Id. Nancy Salzman agreed to alter the videotapes to remove certain segments from them without having the videotapes appear altered. Tr. at 745 (Vicente's testimony). Kristin Keefe and Bronfman provided Vicente with instructions for altering the videotapes to remove content, including segments in which Nancy Salzman made unsubstantiated health claims about Nxivm's curriculum. Tr. at 1256. These altered videotapes were then produced in discovery by Nxivm's attorneys with the false claim that they were provided in "unedited fashion." PSR ¶ 58. The suit against Franco and Ross was not dismissed until December 2017. Id.

II.   Applicable Law

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted); see also United States v. Booker, 125 S. Ct. 738, 743 (2005) (although the Guidelines are advisory, district courts are still "require[d] . . . to consider Guidelines ranges" in determining a sentence).

A sentencing court, however, "may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Gall, 552 U.S. at 50. Title 18, United States Code, Section 3553(a) provides that, in imposing sentence, the Court shall consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant; and (2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; and (C) to protect the public from further crimes of the defendant.

Title 18, United States Code, Section 3661 directs the Court to consider all relevant conduct and information about the defendant when sentencing him or her: "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." As a result, "the court is virtually unfettered with respect to the information it may consider." United States v. Alexander, 860 F.2d 508, 513 (2d Cir. 1988).

III.   Sentencing Guidelines

At the time of the Nancy Salzman's guilty plea, the government estimated the applicable Guidelines range as 33 to 41 months' imprisonment. However, the government agrees with the Probation Department's calculation of the Guidelines, as follows:

Conspiracy to Commit Identity Theft (Racketeering Act 2)

Base Offense Level (§§ 2E.1.1, 2B1.1)                                                                    19

3

|  |  |  |
|---|---|---|
| Plus: Aggravating Role (§ 3B1.1(a)) | | +4 |
| Total: | | 23 |

Conspiracy to Alter Records for Use in an Official Proceeding (Racketeering Act 3)

|  |  |
|---|---|
| Base Offense Level (§§ 2E.1.1, 2J1.2) | 19 |
| Plus: Aggravating Role (§ 3B1.1(a)) | +4 |
| Total: | 23 |

Multiple Count Analysis (§§ 3D1.1, 3D1.4)

Highest Adjusted Offense Level: 23

|  | Level | Units |
|---|---|---|
| Group 1: | 23 | 1 unit |
| Group 2: | 23 | 1 unit |
| Total Units | | 2 units |

|  |  |
|---|---|
| Plus: 2 Levels (§ 3D1.4) | +2 |
| Less: Timely Acceptance of Responsibility (§ 3E1.1) | -3 |
| Total: | 22 |

Based on a total offense level of 22 and a criminal history category of I, the applicable Guidelines range is 41 to 51 months' imprisonment.[2]

IV.   Argument

The government respectfully submits that a substantial sentence of incarceration is necessary to satisfy the goals of sentencing in this case. A sentence at the high end of the 33 to 41 month Guidelines range calculated at the time of the defendant's

---

[2] The government's original estimate of the Guidelines at the time of the defendant's guilty plea calculated the defendant's total offense level without the multiple count analysis. The government respectfully submits that the PSR's calculation is correct and should be adopted by the Court.

guilty plea, would be sufficient, but not greater than necessary, to satisfy the goals of sentencing set forth in 18 U.S.C. § 3553(a).

      A.      Nature and Circumstances of the Offense

For well over a decade, Nancy Salzman was a loyal and integral member of the criminal enterprise led by her co-defendant Keith Raniere. She was the President of Nxivm and second-in-command to Raniere until her arrest and, in that role, the defendant exalted Raniere's teachings and ideology and demanded absolute commitment and deference to Raniere. See, e.g., Tr. at 659-660 (Vicente's testimony). Raniere's teachings, which Nancy Salzman helped to create and promote, were designed to maintain power and control over Nxivm members. The defendant instructed Nxivm members that anyone who challenged Raniere or Nxivm, including family members and friends, were "suppressives" and must be avoided.

As reflected in several victim impact statements, the defendant told Nxivm members that they had committed "ethical breaches" which they needed to remedy, often in ways that benefitted the defendant or Raniere. Nxivm members were told that they were in "breach" for, among other things, supposed lack of work ethic, failing to lose weight, exhibiting "pride," "playing the victim," or causing negative publicity for Nxivm or Raniere. Many of the Nxivm teachings promulgated by Nancy Salzman disparaged or humiliated women and blamed victims of abuse. See, e.g., Tr. at 174-75 (Sylvie's testimony); GX 1004; GX 1005. Some of these teachings also questioned the age of consent and suggested children as young as 12 years old were capable of consenting to sex. GX 1005 ("Is the person a child or is the person adult-like? . . . Often when you counsel people who are children, of what you might call abuse, some little children are perfectly happy with it until they find out what happens later in life."). As Camila notes in her victim impact statement, the defendant promoted Raniere's "poisonous and predatory falsehoods to an unsuspecting audience" including the notion that "girls could be ready for sex as soon as they are physically capable to conceive, that women enjoy the out-of-control experience that comes from being raped, and that some women are only able to climax during such horrific events, all the same twisted ideas he used to groom me and abuse me."

Nancy Salzman also encouraged Nxivm members to take expensive Nxivm courses, and incur debt in order to do so. She developed a purportedly therapeutic technique called "Explorations of Meaning" ("EM") which was sometimes used as a means of manipulation and control. The defendant encouraged Nxivm members to take expensive "EMs" to address their purported "issues," generating a significant amount of money. In a victim impact statement, one participant in a purported "cure" for Tourette's Syndrome described the harmful effects of this pseudoscience: "My time with [the defendant] and on the Tourette's Study made me painfully aware of why there are ethics boards and protocols in the field of clinical psychology . . . . Sessions with [the defendant] broke me, and they broke me fast."

5

Nancy Salzman's actions enabled Raniere to maintain his position as the leader of a criminal enterprise and gain access to his victims. When Camila and her family first arrived in Clifton Park at Raniere's invitation, Raniere arranged for Camila to work as a maid in Nancy Salzman's house, which was a distance away from her siblings. See Tr. at 2465-2473 (Daniela's testimony). As recounted in Camila's victim impact statement, the defendant "never showed any concern for what it meant to have a fifteen year old in what would be a foreign country to them, not going to school, without their parents, cleaning her house." The defendant also played a role in Daniela's exploitation, and, as described in Adrian's victim impact statement, assured his family that Raniere was "saving" Daniela "from becoming a psychopath."

For years, Nancy Salzman attempted to investigate and intimidate perceived critics and enemies of Raniere. The targets of these efforts included reporters; vocal critics of Nxivm or Raniere, including Rick Ross and Raniere's ex-girlfriends; former Nxivm members; former Nxivm attorneys; and even federal judges overseeing litigation involving Raniere and Nxivm. See, e.g., Tr. at 4728-29 (testimony of Rick Ross); id. at 4999 (testimony of Special Agent Weniger). These efforts contributed to a climate of fear within the Nxivm community, discouraging individuals from criticizing Raniere or attempting to leave the Nxivm community. The conduct underlying the defendant's conviction warrants a substantial sentence. See 18 U.S.C. § 3553(a)(2)(A), (B).

  B.  <u>History and Characteristics of the Defendant</u>

The government recognizes that Nancy Salzman has renounced her former relationship with Raniere and Nxivm and has expressed "terrible remorse" for the pain her conduct has caused others. PSR ¶¶ 150-51. Although acceptance of responsibility and expression of remorse cannot undo the harm caused to victims in this case, the government respectfully submits that the Court should consider it in imposing sentence.



███

C.         Need to Promote Respect for the Law, Provide Just Punishment and Afford Adequate Deterrence

The need for the sentence to "reflect the seriousness of the offense, to promote respect for the law," and "to afford adequate deterrence to criminal conduct" also weighs in favor of a Guidelines sentence. 18 U.S.C. § 3553(a)(2). The defendant's participation in a long-running racketeering conspiracy involving identity theft schemes and obstruction of justice warrants the imposition of a significant sentence. Nancy Salzman, Raniere and Bronfman used the legal system to seek retribution against individuals who left Nxivm or spoke critically of Raniere or Nxivm, and filed civil lawsuits (and, at times, criminal charges) in order to threaten Raniere's detractors, including the lawsuit underlying Racketeering Act 3.

Victim impact statements, which have been submitted to the Court under separate cover, detail the destructive impact of Nancy Salzman's crimes. These statements reflect that victims suffered, both personally and financially, as a result of the defendant's actions. Victims describe being manipulated by the defendant, isolated from their family members, saddled with debt as a result of Nxivm and ESP courses, and psychologically abused.

Nancy Salzman's participation in altering material to be produced in a civil lawsuit also warrants a substantial penalty. Obstruction of justice is a crime that erodes the public's confidence in the system of law. A meaningful sentence of incarceration will deliver a much needed message that similar conduct will have serious consequences.

---



3 ███

V.    Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence at the high end of the Guidelines range estimated by the government at the time of the defendant's guilty plea.

Respectfully submitted,

JACQUELYN M. KASULIS
Acting United States Attorney

By:   /s/
Tanya Hajjar
Assistant U.S. Attorney
(718) 254-7000

cc:    Counsel of Record (by ECF and email)
United States Probation Officer Jennifer G. Fisher (by email)