# ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP

Attorneys at Law
100 Lafayette Street, Suite 501
New York, NY 10013

Franklin A. Rothman  
Jeremy Schneider  
Robert A. Soloway  
David Stern  

Rachel Perillo

Tel: (212) 571-5500  
Fax: (212) 571-5507

September 27, 2021

BY ECF

Hon. Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

                Re: United States v. Nancy Salzman
                  Ind No.: 18 Cr. 204 (NGG)

Dear Judge Garaufis:

      I am one of the attorneys for Nancy Salzman in the above referenced matter.  I write in response to the Court's order of September 20, 2021 which directs the defendant to explain her legal justification for redacting sections of her sentencing memorandum, as well as the entirety of her exhibits which are comprised of supporting letters (exhibits A, B, C, and G) and medical information (exhibits D, E, and F).

      Generally, the defense redactions are based upon the privacy rights of the innocent third parties who have come forward to support Ms. Salzman, but who wish their support to remain outside the public domain to prevent injury to their commercial interests and livelihoods, and to also avoid vexatious publicity and public scorn if their statements become public.  We seek to maintain the sealing of both the content of the letters submitted, and the identities of the authors. Should the Court, however, deny our application for complete redaction of the exhibits, we submit under cover of a separate *sealed letter* to be filed contemporaneously with the instant filing, as Exhibit 1, redacted versions of each supporting letter with highlighting to enable the Court to visualize those sections we seek to redact for the purpose only of protecting the identity of each writer, if not the content.  Exhibit G to our submission we respectfully submit should remain entirely under seal, because any portion of its content will reveal the identity of the letter writer.

      In support of continued sealing, we rely upon judicial principles which endorse the protection of privacy rights of innocent third parties who came forward in support of Ms. Salzman, but who would suffer avoidable injury were their statements and identities revealed.  Founded on such

principles, we urge that the three categories of letters presented -- family members, close friends, and Nxivm associates -- are all subject to complete sealing.

Applicable Law

The Supreme Court has recognized "a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978). And we do not dispute that Ms. Salzman's sentence submission is a judicial document presumptively "subject to public inspection." *United States v. Amodeo*, 71 F.3d 1044, 1046 (2d Cir. 1995). The Second Circuit has noted, however, that, "[c]ourts have given various descriptions of the weight to be given to the presumption of access, ranging from an especially strong presumption requiring extraordinary circumstances to justify restrictions, to merely one of the interests that may bow before good reasons to deny the requested access." *Amodeo*, 71 F.3d at 1046 [internal citations and quotation marks omitted].

In *Amodeo*, *supra,* a factually and procedurally complex matter, the Second Circuit considered a request by the press to review a report completed in connection with a judicial proceeding. The report was not issued in the context of a criminal proceeding, but the general rules for determination of when access to judicial records should be granted or denied furnish guidance here, and they counsel against release of the currently sealed portions of Ms. Salzman's sentencing memorandum. Such portions relate personal medical information of the defendant and others, and summarize some content of the letters submitted by supporters, as well as identifying them by name.

The submission's purpose was to assist the Court in determining the appropriate sentence to impose pursuant to 18 U.S.C. § 3553(a). As noted, supporters of Ms. Salzman, if their support is made public, will likely suffer injury. A criminal defendant facing sentencing should not be placed in the position of having to choose between providing the sentencing court with less than complete information about relevant sentencing factors, or forfeiting the important privacy rights of innocent third parties who desire to provide the Court with information in their possession about the defendant's history and characteristics:

> In determining the weight to be accorded an assertion of a right of privacy, courts should first consider the degree to which the subject matter is traditionally considered private rather than public. Financial records of a wholly owned business, family affairs, illnesses, embarrassing conduct with no public ramifications, and similar matters will weigh more heavily against access than conduct affecting a substantial portion of the public.

*Id*. at 1051.

As to Ms. Salzman's privacy rights in her own medical conditions, this is information traditionally considered private. While her need for medical care has been publically discussed in general as a § 3553 factor, medical details have been kept private through redaction. Such details in no way affect any portion of the public, much less a substantial portion. Some indication of

society's traditional respect for personal privacy in one's medical records is evidenced by the HIPPA laws, which require the explicit permission of the patient before his or her medical records can be revealed. The same interests are invoked by Ms. Salzman on behalf of the third parties whose medical conditions have been liberally discussed in her sentencing submission, including particularly her close family members.

Regarding the fully redacted letters presented in Ms. Salzman's filed submission, they should remain as submitted and fully protected from the public. The Second Circuit has held that "[t]he privacy interests of innocent third parties ... should weigh heavily in a court's balancing equation." *Application of Newsday, Inc*., 895 F.2d 74, 79–80 (2d Cir. 1990) (quoting, *United States v. Biaggi*, 828 F.2d 110, 116 (2d Cir.1987), cert. denied, 485 U.S. 977 (1988). Such interests, while not always fitting comfortably under the rubric "privacy," are a common law exception to the presumption of access. Courts have long declined to allow unlimited public access to public records. Indeed venerable rules pronounce long-recognized limitations:

> [I]t is clearly within the rule to hold that no one has a right to examine or obtain copies of public records from mere curiosity, or for the purpose of creating public scandal. To publish broadcast the painful, and sometimes disgusting, details of a divorce case, not only fails to serve any useful purpose in the community, but, on the other hand, directly tends to the demoralization and corruption thereof, by catering to a morbid craving for that which is sensational and impure. The judicial records of the state should always be accessible to the people for all proper purposes, under reasonable restrictions as to the time and mode of examining the same; but they should not be used to gratify private spite or promote public scandal. And, in the absence of any statute regulating this matter, there can be no doubt as to the power of the court to prevent such improper use of its records.

*In re Caswell's Request*, 18 R.I. 835, 29 A. 259 (1893).

In this case, many of those who wrote letters on behalf of Ms. Salzman did so fearfully, not because of any reluctance whatsoever to support her, but because of the scandalous, hurtful uses to which their sentiments, if made public, would likely be put. As this Court is aware, the *Frank Report* weaponizes statements made in support of the Nxivm defendants, and exists for virtually no purpose other than to damage the reputation and fortunes of remaining "loyalists." Revealing the identities and supportive views memorialized in letters to the Court will add little to the record that has not already been stated publicly by the Court and counsel, and will potentially result in harm to those whose aim was to furnish the Court with firsthand information about Ms. Salzman to facilitate a fully informed sentencing proceeding.

Revealing the content of the letters and names of such individuals will likely have a chilling effect on those who wish to assist other defendants and courts in future high-profile cases.

## CONCLUSION

For all of the foregoing reasons, it is respectfully requested that the redactions now in place with respect to the defense sentencing submission and exhibits remain as they are at this time, and that no public disclosures other than those already made be ordered by this Honorable Court.

Sincerely,

*Robert A. Soloway*

Robert A. Soloway

cc: AUSA Tanya Hajjar
    (by ECF)
RAS:sc