UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

    -against-

KEITH RAINIERE, et al.,

    Defendants.

**MEMORANDUM & ORDER**
**18-CR-204 (S-1) (NGG) (VMS)**

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Nancy Saltzman pleaded guilty to one count of racketeering conspiracy and was sentenced to 42 months imprisonment to be followed by three years of supervised release. (*See* J. (Dkt. 1121).) Prior to sentencing, Saltzman filed a partially redacted sentencing memorandum, with annexed exhibits under seal,[1] in support of her request for a downward variance from the applicable sentencing guidelines range. (*See* Def.'s Sentencing Mem. & Exs. (Dkt. 1107).) After sentencing, nonparty newspaper the Albany *Times Union* submitted a letter to the court seeking public disclosure of her sentencing submission, subject to reasonably tailored redactions. (*See* Albany *Times Union* Letter (Ex. A).) Saltzman asked the court to permit the redacted and sealed information to remain nonpublic, or, in the alternative, to adopt proposed, more limited redactions to the sentencing exhibits, which she filed separately under seal for the court's review. (Order (Dkt. 1117); Def.'s Letter (Dkt. 1118); Def.'s Proposed Redactions (Dkt. 1119-1).)

---

[1] The exhibits were in fact filed publicly but were entirely redacted. Because an entirely redacted document may as well be a sealed document, the court refers to the entirely redacted exhibits as sealed exhibits.

1

For the reasons stated below, the *Times Union*'s application is GRANTED. Saltzman is DIRECTED to file the sentencing memorandum and exhibits publicly on the docket, with the exception of references to medical conditions, which will remain redacted.[2]

## I. BACKGROUND

On March 13, 2019, Saltzman pleaded guilty to one count of the superseding indictment for racketeering conspiracy. (Minute Entry (Dkt. 474); Superseding Indictment (S-1) (Dkt. 50).) On September 7, 2021, she filed a partially redacted sentencing memorandum, along with sealed Exhibits A through G, seeking a noncustodial sentence of home confinement to be followed by supervised release. (Def.'s Sentencing Mem. & Exs. at 12.) After nonparty newspaper the Albany *Times Union* submitted a letter to the court contesting the scope of the withheld content, Saltzman filed a letter arguing that the relevant material should not be publicly disclosed because it contains references to medical and personally identifying information. (*See* Albany *Times Union* Letter; Def.'s Letter.) In the alternative, she asks the court to maintain the redactions on the sentencing memorandum; to adopt her more limited proposed redactions to Exhibits A through F; and to permit Exhibit G to remain under seal. (Def.'s Letter.) Saltzman explains that Exhibits A, B, C, and G contain supportive letters, and contends that disclosure of their identities that could harm the authors and have a chilling effect in future litigation. (*Id.*) She asserts that Exhibits D, E, and F contain traditionally protected medical information. (*Id.*) She also argues

---

[2] Saltzman's letter does not identify, and the court is unaware of any, information that falls within the scope of Fed. R. Crim. P. 49.1(a), which protects certain portions of social security numbers, taxpayer-identification numbers, birth dates, names of individuals known to be minors, financial-account numbers, and home addresses from public disclosure. To the extent there is any such information in her sentencing submission, it may be redacted as well.

that, even if the court disagrees with her request to maintain sealing over the exhibits, Exhibit G should still remain entirely under seal because revealing any portion of its contents would allow the public to identify and target the author. (*Id.*)

## II. LEGAL STANDARD

"[C]ourts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).[3] This right "appl[ies] in both civil and criminal cases, and stem[s] from the right of the public to hold accountable, and have confidence in, the judiciary." *United States v. Tangorra*, 542 F. Supp. 2d 233, 235 (E.D.N.Y. 2008). Nonparties, including news media interested in obtaining and publishing that information, are among those who may seek to enforce this right. *See Nixon*, 435 U.S. at 597-98. "It is uncontested . . . that the right . . . is not absolute." *Id.* at 598.

This public right of open access arises from both the common law and the First Amendment, and courts have established distinct—but overlapping—analytical frameworks for each doctrine, discussed below.

### A. The Common Law Framework

The Second Circuit has set out a three-step inquiry to determine whether nonpublic records and documents should be unsealed under the common law doctrine of open access. *See Mirlis v. Greer*, 952 F.3d 51, 59 (2d Cir. 2020). First, to determine whether a presumption of open access attaches, the court evaluates whether "the documents at issue are indeed judicial documents." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). Second, the court considers the "weight of

---

[3] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

3

that presumption." *Id.* Third, the court balances that presumption against countervailing interests, such as "the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." *Id.* at 120. If the presumption of open access outweighs the relevant competing interests, then the information may be publicly disclosed. *Id.*

### B. The First Amendment Framework

The First Amendment provides a "qualified . . . right of access" to court proceedings, including sentencing proceedings. *United States v. Alcantara*, 396 F.3d 189, 196, 199 (2d Cir. 2005). This right of access "permits the public to participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." *Globe Newspaper Co. v. Superior Ct.*, 457 U.S. 596, 606 (1982). It is intended to balance "the public's right of access against the privacy and fair trial interests of defendants, witnesses and third parties." *United States v. Gerena*, 869 F.2d 82, 85 (2d Cir. 1989).

The Second Circuit has "articulated two different approaches for determining whether the public and the press should receive First Amendment protection in their attempts to access certain judicial documents." *Lugosch*, 435 F.3d at 120. Under the first approach—called the "experience and logic" analysis—the court "consider[s] both whether the documents have historically been open to the press and general public and whether public access plays a significant positive role in the functioning of the particular process in question." *Id.* Under the second approach, the court "considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.* Under both approaches, the court may seal documents if "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.*

4

## III. DISCUSSION

### A. Common Law Analysis

It is uncontested that a party's sentencing submission is a judicial document. (*See* Def.'s Letter at 2-3.); *see also Mirlis*, 952 F.3d at 59 ("[A] judicial document is one that has been placed before the court by the parties and that is relevant to the performance of the judicial function and useful in the judicial process."). Sentencing memoranda and their accompanying exhibits generally qualify as judicial documents because they are submitted by defendants – as the letters are here – with the "express purpose [] to influence the court's decisionmaking." *United States v. Munir*, 953 F. Supp. 2d 470, 477 (E.D.N.Y. 2013).

Saltzman argues that the presumption of public access that attaches to her sentencing submission is outweighed by her own and by third parties' compelling privacy concerns. (Def.'s Letter at 2-3.) She contends that disclosure will have a chilling effect on individuals who wish to speak in support of defendants in other high-profile prosecutions and that her supporters will be targeted if their identities are publicly known. (*Id.*) She also argues that references to her own and others' medical conditions should be redacted in accordance with the court's traditional treatment of such materials. (*Id.*)

The court agrees that references to medical conditions will be redacted, but declines to withhold the remaining content of her sentencing submission from the public eye. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"). The presumption is strongest where, as here, the documents at issue have been "used to determine litigants' substantive rights." *Lugosch*, 435 F.3d at 121. The materials expressly relied on by defendants are submitted as part

and parcel of their legal arguments for a particular sentence to influence the court's sentencing decision.[4] *See Munir*, 953 F. Supp. 2d at 475, 477 (explaining that the presumption is at its most compelling "when judicial documents directly affect adjudication, including a court's sentencing decision").

The competing concerns identified by Saltzman do not outweigh the heavy presumption of open access applicable here. In *Amodeo II*, the Second Circuit recognized that courts may consider whether disclosure "is likely to impair in a material way the performance of Article III functions" and to weigh the "privacy interests of those resisting disclosure," among other factors, when deciding whether to seal judicial documents. 71 F.3d at 1050. Saltzman argues that disclosure would have a "chilling effect on those who wish to assist other defendants and courts in future high-profile cases." (Saltzman Letter at 3.) The court is not persuaded. This is not a case in which a party seeks to seal identities of cooperating witnesses, where unsealing would present a public safety risk and could discourage witnesses from cooperating in other cases. *See Amodeo II*, 71 F.3d at 1050. She submitted her supporters' letters as exhibits to her own memorandum, incorporating them into her legal arguments. *Cf. United States v. Gotti*, 322 F. Supp. 2d 230, 250 (E.D.N.Y. 2004) (sealing independently submitted sentencing letters that were not part of defendant's sentencing submissions).

Saltzman also argues that significant privacy interests are at stake because the authors of supportive letters may face retribution if their identities are publicly known, given the public attention

---

[4] Motions to compel disclosure of presentence reports, as opposed to the parties' sentencing submissions, are viewed differently given the distinct function performed by the probation department as "neutral information gatherers for the sentencing judge." *United States v. Cortes*, 922 F.2d 123, 126 (2d Cir. 1990); *see also Munir*, 953 F. Supp. 2d at 475, 477 (explaining and applying that distinction).

that has been paid to this case. Specifically, she asserts that "[r]evealing the identities and supportive views memorialized in letters to the court will add little to the record that has not already been stated publicly by the Court and counsel, and will potentially result in harm to those whose aim was to furnish the Court with firsthand information about Saltzman to facilitate a fully informed sentencing proceeding." (Def.'s Letter at 3.) It is true that "[t]he privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation." *Amodeo II*, 71 F.3d at 1050. Accordingly, "courts have the power to [e]nsure that their records are not 'used to gratify private spite or promote public scandal,' and have 'refused to permit their files to serve as reservoirs of libelous statements for press consumption.'" *Id.* at 1051 (quoting *Nixon*, 435 U.S. at 598). The court should "consider the degree to which the subject matter is traditionally considered private rather than public," and personal matters that lack "public ramifications . . . will weigh more heavily against access than conduct affecting a substantial portion of the public." *Id.* "The nature and degree of injury must also be weighed." *Id.*

The court understands that Saltzman's supporters may have a genuine interest in assisting sentencing while remaining out of the public eye themselves. The content at issue, however, does not involve traditionally private matters. *See Amodeo II*, 71 F.3d at 1050 (identifying "[f]inancial records . . . , family affairs, illnesses, [and] embarrassing conduct with no public ramifications" as historically private matters). Nor does the potential newsworthiness of the letters' content or of the authors' relationships with Saltzman establish that publication would inappropriately "gratify private spite or promote public scandal . . . [or] libel[]." *Nixon*, 435 U.S. at 598. Accordingly, the court holds that the privacy interests identified by Saltzman, while important, do not outweigh the presumption of open access to materials submitted by the defendant in support of her sentencing arguments.

## B. The First Amendment Right to Access

Disclosure is also appropriate under the First Amendment analyses. As an initial matter, the historical principle of open access to criminal matters and its important democratic functions are well established. *See, e.g.*, *Munir*, 953 F. Supp. 2d at 475; *Tangorra*, 542 F. Supp. 2d at 235 (Open access to criminal proceedings, including sentencings, allows the public to "hold accountable, and have confidence in, the judiciary."). This fundamental principle of criminal law is highlighted by Congress's directive that sentencing proceedings must be held in "open court." *See* 18 U.S.C. § 3553(c). Relatedly, the documents relied on in sentencing arguments are an essential corollary to the sentencing proceedings, and the court views access to such documents the same way that access to the proceedings themselves are viewed, absent compelling competing concerns. Further, for the reasons explained *supra*, Saltzman has not shown that such countervailing concerns are pertinent here. Accordingly, the public has a right to access nonmedical information relied upon in her sentencing submission.

## IV. CONCLUSION

For the reasons stated above, Saltzman is DIRECTED to file a public version of her sentencing memorandum and supporting exhibits, with the exception of references to medical conditions, which will remain redacted, by Wednesday, October 6, 2021, at 12 pm.

SO ORDERED.

Dated: Brooklyn, New York
October 4, 2021

/s/ Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge