

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| TH | *271 Cadman Plaza East* |
| F. #2017R01840 | *Brooklyn, New York 11201* |

March 15, 2024

By ECF

The Honorable Nicholas G. Garaufis
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

>     Re:    United States v. Clare Bronfman
>            Criminal Docket No. 18-204 (S-2) (NGG)

Dear Judge Garaufis:

The government respectfully submits this letter in response to the defendant Clare Bronfman's motion for a sentence reduction based on Amendment 821 to the United States Sentencing Guidelines and 18 U.S.C. § 3582(c)(2) (the "Motion"). ECF Docket Entry No. 1236. As relevant here, Amendment 821 provides a two-point offense level reduction for certain so-called "zero-point offenders," i.e., defendants who have no criminal history points under Chapter Four, Part A, of the Guidelines. See U.S.S.G. § 4C1.1 (listing qualification requirements for a two-point reduction for zero-point offenders).

The Court should deny Bronfman's request because (1) Bronfman is ineligible for a sentence reduction since, as part of her crimes, she "personally cause[d] substantial financial hardship," see § 4C1.1(a)(6), and (2) even if she were eligible, a sentence reduction is not warranted by consideration of the factors set forth in 18 U.S.C. § 3553(a).

I.    Relevant Factual Background

On April 19, 2019, Clare Bronfman pleaded guilty to both counts of a two-count Superseding Information. Count One charged that between October 2015 and January 2018, the defendant, together with others, conspired to conceal, harbor and shield from detection one or more aliens for financial gain, in violation of 8 U.S.C. §§ 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i). Revised Presentence Investigation Report dated October 6, 2020 ("PSR") ¶¶ 1-2. Count Two charged that between November 2016 and March 2018, the defendant, together with others, unlawfully transferred and used a means of

identification of another person with the intent to commit and in connection with attempted tax evasion, in violation of 18 U.S.C. §§ 1028(a)(7), 1028(b)(1)(D), and 1028(c)(3)(A).  Id.

The Court is familiar with the factual background and offense conduct in this case.  In brief, Clare Bronfman funded and promoted the criminal enterprise led by her co-defendant Keith Raniere.  Among the ways she did so included recruiting individuals, often women with no legal status in the United States, into Nxivm-affiliated organizations.  Although Bronfman claimed to aware "scholarships" or present employment letters that stated the prevailing wage of a professional position, Bronfman did not provide her victims with a living wage.  Instead, she obtained a labor force of desperate individuals dependent on her and on Raniere for their continued legal status in the United States.

At Bronfman's sentencing on September 30, 2020, the Court calculated Bronfman's adjusted Guidelines level as 16 and her Criminal History Category as I.  The Court heard from nine victims of Bronfman's offenses and related conduct before imposing sentence.  The Court provided the basis for its sentence in a detailed 27-page sentencing memorandum.  Sentencing Mem., ECF Docket Entry No. 936.  The Court explained that a sentence within the applicable Guidelines would not be reasonable since the "crimes of conviction standing alone do not fully encompass the larger pattern and misdeeds" perpetrated by the defendant and that the case was "not about an isolated incident of credit card fraud or a run-of-the-mill case of harboring of illegal aliens for financial gain." Sentencing Mem. at 5.  In addressing the nature and circumstances of Bronfman's offenses, the Court described Bronfman's conduct as to Count One as "particularly egregious":

> Ms. Bronfman helped Jane Doe 12 to obtain a visa by representing that she would make $3,600 per month as a "management consultant" for the Nxivm-affiliated fitness company Exo/Eso.  Instead, Jane Doe 12 was barely compensated for her work.  Her email correspondence with Ms. Bronfman shows that she repeatedly made Ms. Bronfman aware that Ms. Bronfman's failure to deliver on the terms of the employment agreement had left her in dire financial straits.  In November 2015, for example, Jane Doe 12 emailed Ms. Bronfman that "[w]ith no money involved" it was "very difficult [for her] to support" herself and to "keep up the pace with no income and with the uncertainty of not knowing how I will live each day."  The following month, in December 2015, Jane Doe 12 emailed Ms. Bronfman that because Exo/Eso was not paying her the contractually specified wage she was owed, she needed to find another source of income "to support myself here."

Sentencing Mem. at 9 (internal citations omitted).  The Court also noted that Bronfman did not dispute that she failed to honor the terms of the employment agreement and failed to provide Jane Doe 12 with adequate or consistent compensation.  Id. at 10.

The Court also found that Bronfman's conduct was "part of a pattern" that involved other victims. Id. at 10-11. Bronfman "made promises to immigrants that she did not keep, exacted labor that she did not pay for, and took advantage of these individuals' financial straits and immigration statuses, in a manner that exacerbated both their financial and emotional vulnerabilities and made them more reliant on her and the Nxivm community, sometimes with very harmful consequences." Id.

With respect to Count Two, the Court noted that Bronfman's payment of $135,000 in bills charged to the credit card of a deceased individual who had been an associate of hers and Raniere's, and the $736,856 in disbursements taken from her account, were "consistent with a pattern of facts suggesting that Raniere attempted to minimize money that was in his name." Id. at 12. The Court explained that this crime was also "committed within a larger context of more serious crimes and alarming behavior . . . and was consistent with the hallmarks and aims of that behavior." Id.

The Court also considered Bronfman's history and characteristics, including that she "repeatedly and consistently leveraged her wealth and social status as a means of intimidating, controlling and punishing individuals whom Raniere perceived as his adversaries, particularly NXIVM's detractors and critics." Id. at 13. The Court found that Bronfman worked "hand-in-hand with Raniere to intimidate and silence victims of Raniere's brutal campaign of sexual abuse and exploitation." Id. at 19.

The Court concluded that a "substantial upward variance [was] appropriate" in this case. Id. at 26. The Court summarized its lengthy statement of reasons as follows:

> I find that the nature and circumstances of Ms. Bronfman's offense exacted a harm not reflected in the Guidelines and placed her conduct outside the ordinary realm of those offenses. I also find that a fair appreciation of her history and characteristics—including her repeated attempts to leverage her wealth and status as a sword against Raniere's enemies and her decision, as she became aware of DOS, to remain steadfast in her support of Raniere—lead to the conclusion that a sentence greater than the upper limits of the Guidelines is warranted.

Id. The Court imposed a sentence of 81 months' imprisonment, a fine of $500,000, restitution of $96,605.25 as to Jane Doe 12, agreed-upon forfeiture of $6 million, a special assessment of $200 and three years of supervised release on each count, to run concurrently.

On February 22, 2024, Bronfman filed the instant motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2).

## II. Bronfman Does Not Qualify as a Zero-Point Offender

As a preliminary matter, Bronfman is ineligible for a reduction in her sentence pursuant to Amendment 821, because she fails to satisfy the criteria that "the defendant did not personally cause substantial financial hardship." U.S.S.G. § 4C1.1(a)(6). Section 4C1.1(a)(6) specifies that "[i]n determining whether the defendant's acts or omissions resulted in 'substantial financial hardship' to a victim, the court shall consider, among other things, the non-exhaustive list of factors provided in Application Note 4(F) of the Commentary to § 2B1.1 (Theft, Property Destruction, and Fraud)." Application Note 4(F) of the Commentary to § 2B1.1 states that in "determining whether the offense resulted in substantial financial hardship to a victim, the court shall consider, among other factors, whether the offense resulted in the victim—(i) becoming insolvent; (ii) filing for bankruptcy under the Bankruptcy Code (title 11, United States Code); (iii) suffering substantial loss of a retirement, education, or other savings or investment fund; (iv) making substantial changes to his or her employment, such as postponing his or her retirement plans; (v) making substantial changes to his or her living arrangements, such as relocating to a less expensive home; and (vi) suffering substantial harm to his or her ability to obtain credit."

Here, the Court has already found that Bronfman's actions in committing Count One of the Superseding Indictment resulted in "substantial financial hardship" to her victims, including by the victims "becoming insolvent," "making substantial changes to [their] employment" and "making substantial changes to [their] living arrangements." Although Bronfman purported to hire individuals, including Jane Doe 12, as management consultants with salaries in the amount of $3,600 per month, Bronfman never intended to pay and did not pay the salary listed in the letters of employment she provided. As the Court found and as Jane Doe 12's email correspondence with Bronfman reflects, Bronfman's actions left Jane Doe 12 in "dire financial straits" with "no income" and without knowing how she would be able to "live each day." Sentencing Mem. at 9.

By failing to pay the amounts specified in her employment letters, Bronfman put her victims, including Jane Doe 12, in a desperate financial position and required them to take on additional work, often uncompensated. In one email to Bronfman, Jane Doe 12 pleaded with Bronfman to pay her commissions she had earned through one Nxivm-affiliated company, indicating that she was in poor health and "need[ed] to see a doctor" and that the "money [was] very urgent for [her.]" Gov't Sentencing Mem., ECF Docket Entry No. 922, at 40.

Because Bronfman's actions "personally caused substantial financial hardship" to her victims, she is not eligible for a sentence reduction.

## III. Bronfman's Sentence Should Not Be Reduced

Even if Bronfman were eligible for a sentence reduction, no sentence reduction is warranted by consideration of the Section 3553(a) factors. At sentencing, the Court gave serious and thoughtful consideration to the Section 3553(a) factors and the appropriate sentence in this case. After weighing those factors, the Court held that a

substantial upward variance was appropriate and that a sentence of 81 months' imprisonment reflected the severity of Bronfman's actions.

Nothing has changed that warrants a reduction in that sentence. Bronfman's sentence of 81 months' imprisonment was based on the Court's view that the nature of circumstances of her offenses exacted "a harm not reflected in the Guidelines and placed her conduct outside the ordinary realm for these offenses." Sentencing Mem. at 26. The Court also considered the many victim impact statements submitted in advance of Bronfman's sentencing, as well as the victim statements made during her sentencing. These impact statements made clear that Bronfman's conduct had severe and devastating effects on her victims, and highlighted, in particular, the effects of Bronfman's financial coercion.[1] A reduced sentence is particularly inappropriate given the length of time that Bronfman will actually serve in Bureau of Prisons ("BOP") custody. With earned time credits under the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018) (the "FSA"), Bronfman is currently set to be released on June 29, 2025, and is eligible for transfer to home confinement as early as December of this year.[2] The BOP has also advised that it is possible Bronfman may be referred to a residential reentry center prior to December 2024. Accordingly, even if Bronfman were eligible for a sentence reduction based on Amendment 821, which she is not, the Section 3553(a) factors weigh against any sentence reduction.

---

[1] The government also received a victim statement in connection with Bronfman's motion for a sentence reduction, which it will provide to the Court and counsel under separate cover.

[2] Consideration of good time credit and earned time credit are appropriate considerations under Section 3553(a). See, e.g., United States v. Tocco, 135 F.3d 116, 131 (2d Cir. 1998) (holding that a district court may consider "maximum good-time credit in its calculation of a defendant's sentence," in connection with 18 U.S.C. § 34, which required a jury recommendation for a life sentence).

IV. Conclusion

For the foregoing reasons, the government respectfully submits that the defendant's motion should be denied.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/ Tanya Hajjar
Tanya Hajjar
Assistant U.S. Attorney
(718) 254-6109

cc: Counsel of Record (by ECF)